**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MARJORIE M. GILLESPIE, ET AL., | |
| Plaintiffs, | CIVIL ACTION NO. 3:15-CV-0950 |
| v. | (JUDGE CAPUTO) |
| LORI DRING AND NANCY ASARO, | |
| Defendants. | |

**MEMORANDUM**

Presently before the Court is a Motion to Dismiss Plaintiffs' Complaint filed by Defendants Lori Dring and Nancy Asaro ("Defendants") (Doc. 6). Plaintiffs seek to enforce a Settlement Agreement entered into by the two parties to resolve a previous action, which requires Defendants to convey an easement right to Plaintiffs over a parcel known as the West Shore Strip. Defendants argue that they have no obligation to Plaintiffs under the Agreement because certain conditions precedent to their obligation have not yet been satisfied. Plaintiffs also seek an order declaring that they have the easement right based on their status as bona fide purchasers and in the alternative, by virtue of adverse possession. Because this Court finds that there were no conditions precedent to Defendants' obligation to Plaintiffs under the Settlement Agreement, the motion to dismiss Count I will be denied. However, because this Court finds that Plaintiffs cannot establish that they were bona fide purchasers and because Plaintiffs have failed to adequately allege a claim for a prescriptive easement, Defendants' motion to dismiss the remaining claims will be granted. Plaintiffs shall have twenty-one (21) days from the date of entry of this Memorandum to file an Amended Complaint to properly plead their claim for a prescriptive easement against Defendants. Otherwise, the claim will be dismissed with prejudice.

**I. Background**

The facts as set forth in the Complaint are as follows:

Plaintiffs and their predecessors in title identify themselves as the owners of real property on the western shore of Lake Ariel and Mud Pond, a body of water in Lake Township, Lackawanna County, Pennsylvania ("Lake Ariel"). Plaintiffs, hereinafter referred to as the "West Shore Property Owners," are all citizens of states other than New Jersey. Defendants Lori Dring and Nancy Asaro are citizens of New Jersey. This matter has its genesis in prior litigation adjudicated by this Court, *Ariel Land Owners, Inc. v. Lori Dring & Nancy Asaro*, No. 3:01-CV-0294 (M.D. Pa.) (the "Prior Action"). The plaintiff in that litigation was a Pennsylvania business corporation known as Ariel Land Owners ("ALO"). Dring and Asaro were the defendants and the West Shore Property Owners were the counterclaim defendants. Before the completion of trial in the Prior Action, the parties resolved some of their issues through a Settlement Agreement that imposed requirements on all of the parties involved. (*See* Doc. 6-1, Defs.' Ex. A, Settlement Agreement.)

In the Prior Action, ALO sought a determination that ALO owned certain land, including land covered by the waters of Lake Ariel. Defendants Lori Dring and Nancy Asaro filed an Answer and Counterclaim, followed by a Third Amended Counterclaim. Count V of the Third Amended Counterclaim was asserted against ALO and the West Shore Property Owners.[1] Defendants alleged that since they own a narrow strip of land between the land of the cottagers along the western shore and the waters of Lake Ariel (the "West Shore Strip"), the West Shore Property Owners (and ALO) have no right to cross this strip to reach the waters of Lake Ariel or to use this strip of land for boat houses, docks, or other

---

[1] A similar action was filed in this Court by John P. Diefenderfer and Heidi B. Diefenderfer, asserting similar claims against Defendants Lori Dring and Nancy Asaro. *See Diefenderfer v. Dring & Asaro*, No. 3:15-CV-0500 (M.D. Pa.).

2

purposes. The claims against the West Shore Property Owners were resolved in the context of the prior federal litigation pursuant to the terms of the Settlement Agreement. Other issues were resolved at trial, which commenced on August 14, 2006, and was completed on August 29, 2006.

Section 6 of the Settlement Agreement is a "mutual release" provision, which requires both Plaintiffs and Defendants in this action to release each other from any and all claims arising out of or relating to the Prior Action and the West Shore Strip:

> 6. The Property Owners [Plaintiffs] on the one hand; and Dring/Asaro on the other hand, do hereby release the other party and such party's predecessors in title, successors and assigns from any and all claims arising out of or relating to the Lawsuit and the Western Shore Strip including but not limited to claims for compensatory damages, punitive damages, trespass, attorneys fees, or costs of court.

(Doc. 6-1, Defs.' Ex. A, Settlement Agreement § 6.)

However, Plaintiffs claim that Defendants breached the Settlement Agreement by failing to provide Plaintiffs an easement right over a portion of the West Shore Strip designated as the "North Strip" pursuant to Section 3 of the 2006 Settlement Agreement. Section 3 of the Settlement Agreement reads, in relevant part, as follows:

> 3. Dring/Asaro agree to execute and deliver to ALO a quit claim deed of all of their right, title and interest in and to the North Strip, *subject to a permanent easement to be granted in favor of the Property Owners [Plaintiffs]* for access over the North Strip and to maintain docks and/or boathouses on the North Strip. This permanent easement is not intended to grant the Property Owners [Plaintiffs] any rights in or over any lands owned by ALO, or any interest in Lake Ariel owned by ALO.

(*Id.* § 3 (emphasis added).)

Two other provisions of the Settlement Agreement are also worth noting. First, Section 5 of the Settlement Agreement provides that ALO shall execute and deliver four (4) lake rights and a permanent easement to Defendants in recordable form. Section 5 reads, in relevant part, as follows:

> 5. ALO shall execute and deliver to Dring/Asaro instruments of conveyance, in recordable form, which transfer to Dring/Asaro the following:

3

> (a) Four (4) lake rights which will permit Dring/Asaro to construct and maintain four (4) docks along and into the water at the shore line of the Swingle Tract located within Mud Pond to be used for the launching and docketing of watercraft, however these lake rights will not permit Motorized Boats (as hereafter defined) to be operated on Mud Pond or in the channel, or trolling motors to be operated in the channel.
>
> (b) A permanent easement over the water and a parcel of land at the eastern shore of Lake Ariel, at the end of Cardinal Lane (the "Dock Area") described as a rectangular shape of approximately thirty (30') feet in width along the shoreline, and two hundred (200') feet in depth above the shoreline.

(*Id.* § 5.) Second, Section 15 provides for a mutual exchange of all deeds referenced in the Settlement Agreement:

> 15. All Deeds and other instruments referred to herein shall be exchanged by the parties at a mutually convenience [sic] time within 30 days after obtaining the subdivision approval set forth in Section 2 hereof.

(*Id.* § 15.)

Count I of Plaintiffs' Complaint seeks damages and specific enforcement of the Settlement Agreement, including an order directing Defendants to grant Plaintiffs the easement right outlined in Section 3 of the Settlement Agreement. Count II seeks the same relief pursuant to a promissory estoppel theory. Count III seeks declaratory relief in the form of an order declaring that Plaintiffs have an easement right to use the West Shore Strip pursuant to their deeds from their predecessors in title, their leases from the owners of Lake Ariel, and their status as bona fide purchasers. Count IV seeks declaratory relief in the form of an order declaring that Plaintiffs have a prescriptive easement over the West Shore Strip by virtue of the doctrine of adverse possession.

This Court has jurisdiction under 28 U.S.C. § 1332(a), diversity of citizenship. Therefore, this Court will apply the law of Pennsylvania. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, the Court's role is limited to

4

determining if a plaintiff is entitled to offer evidence in support of their claims. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000). The Court does not consider whether a plaintiff will ultimately prevail. *See id*. A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement required by Rule 8(a)(2) must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555. However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id*. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). As such, "[t]he touchstone of the pleading standard is plausability." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

The inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for

5

more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

In deciding a motion to dismiss, the Court should consider the complaint, exhibits attached to the complaint, and matters of public record. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Pension Benefit Guar.*, 998 F.2d at 1196. The Court need not assume that the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions.'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

### III. Discussion

Defendants advance a series of arguments seeking dismissal of the Complaint in its entirety. For the reasons that follow, Defendants' motion to dismiss will be granted in part and denied in part.

**A.  Count I - Specific Performance of the Settlement Agreement**

Count I of the Complaint seeks specific enforcement of the Settlement Agreement, including an order directing Defendants to grant Plaintiffs the easement right referenced in Section 3 of the Settlement Agreement. Section 3 provides, in relevant part, as follows:

> 3. Dring/Asaro agree to execute and deliver to ALO a quit claim deed of all of their right, title and interest in and to the North Strip, *subject to a permanent easement to be granted in favor of the Property Owners [Plaintiffs] for access over the North Strip and to maintain docks and/or boathouses on the North Strip*. . . .

(Doc. 6-1, Defs.' Ex. A, Settlement Agreement, § 3 (emphasis added).)

6

Defendants argue that Plaintiffs have not alleged the satisfaction of conditions precedent to Defendants' obligation under this provision.  Specifically, Defendants argue that their obligation to execute and deliver to ALO a quitclaim deed subject to an easement for Plaintiffs is *conditioned* upon ALO's obligation to execute and deliver to Defendants instruments of conveyance transferring certain lake rights and easements to Defendants, as set forth in Section 5 of the Settlement Agreement, which provides, in relevant part, as follows:

> 5. ALO shall execute and deliver to Dring/Asaro instruments of conveyance, in recordable form, which transfer to Dring/Asaro the following:
>
> (a) Four (4) lake rights which will permit Dring/Asaro to construct and maintain four (4) docks along and into the water at the shore line of the Swingle Tract located within Mud Pond . . .
>
> (b) A permanent easement over the water and a parcel of land at the eastern shore of Lake Ariel, at the end of Cardinal Lane (the "Dock Area") . . .

(*Id.* § 5.)  In support of this argument, Defendants cite to Section 15 of the Settlement Agreement, which provides for the mutual exchange of all deeds referenced in the Settlement Agreement:

> 15. All Deeds and other instruments referred to herein shall be exchanged by the parties at a mutually convenience [sic] time within 30 days after obtaining the subdivision approval set forth in Section 2 hereof.

(*Id*. § 15.)  Defendants argue that Section 15's requirement that all deeds be exchanged by the parties at a mutually convenient time shows that ALO's obligation to convey certain rights to Defendants was a condition precedent to Defendants' obligation to Plaintiffs, and since ALO never conveyed certain deeds to Defendants, then Defendants need not convey any deed to ALO subject to an easement for Plaintiffs.  Defendants argue that because Plaintiffs failed to allege the satisfaction of the conditions in Section 5, they have failed to allege facts sufficient to demonstrate any obligation by Defendants

7

to Plaintiffs pursuant to Section 3.

A condition is defined as an "act or event which must occur before a duty of performance under an existing contract becomes absolute." *Castle v. Cohen*, 840 F.2d 173, 177 (3d Cir. 1988) (citation and internal quotation marks omitted). If a contract contains a condition precedent, then the condition precedent must occur before a duty to perform under the contract arises. *Acme Markets, Inc. v. Fed. Armored Exp., Inc.*, 437 Pa. Super. 41, 46 (1994). Although the parties to a contract need not utilize any particular words to create a condition precedent, an act or event designated in a contract will not be construed as constituting one unless that clearly appears to have been the parties' intention. *Id.* at 47; *see also Castle*, 840 F.2d at 177 (explaining that under Pennsylvania law, a condition precedent must be expressed in clear language or it will be construed as a promise) (citing *Mellon Bank, N.A. v. Aetna Bus. Credit, Inc.*, 619 F.2d 1001, 1016 (3d Cir. 1980)); *Shook of W. Va., Inc. v. York City Sewer Auth.*, 756 F. Supp. 848, 851, 854 (M.D. Pa. 1991) ("[L]anguage in a contract not clearly identified as a condition precedent is presumed not to be one. . . . an act or event in a contract must not be construed as a condition precedent unless it is expressly made so or unless it clearly appears to have been the intention of the parties.") (citing *Mellon Bank N.A.*, 619 F.2d at 1016). Because the failure to comply with a condition precedent works a forfeiture, such conditions are disfavored. *Castle*, 840 F.2d at 177 (citing Restatement (Second) of Contracts § 227 comment b (1981)).

Here, there is no clear language indicating that there is a condition precedent that must be satisfied in order for Defendants to convey a quitclaim deed to ALO subject to an easement in favor of Plaintiffs. It is unclear as to whether the requirement that ALO convey certain lake rights and easements to Defendants as set forth in the Settlement Agreement is a condition precedent to Defendants' obligations to convey to ALO a quitclaim deed to the North Strip subject to a permanent easement to be granted in favor of Plaintiffs. First, there is no language in Section 3 that makes clear that Defendants'

8

obligation to provide an easement for Plaintiffs is contingent upon any of ALO's obligations to Defendants in the Settlement Agreement. Although Section 15 of the Settlement Agreement requiring the mutual exchange of all deeds *could* be construed to mean that Defendants' obligation to convey rights to ALO subject to an easement for Plaintiffs is conditioned upon ALO's obligation to convey certain rights to Defendants, it is not *clear* that was the intent of the parties. There is no language in Section 15 clearly noting that any exchange is conditioned upon any other exchange. Nor is there any language anywhere else in the Settlement Agreement explaining that Defendants' obligation under Section 3 is conditioned upon ALO's obligation to Defendants in Section 5. To be sure, Section 15 could reasonably be read as simply making clear that the exchange of deeds must take place "within 30 days after obtaining the subdivision approval set forth in Section 2." (Doc. 4-2, Pls.' Ex. B, Settlement Agreement § 15.) Section 15 could also reasonably be read as simply making clear that each time an exchange of deeds takes place, it must take place at a mutually convenient time for all parties. Therefore, because it is not clear that Defendants' obligation to Plaintiffs in Section 3 is conditioned upon ALO satisfying its obligation to Defendants in Section 5, ALO's satisfaction of its obligations to Defendants will not be construed as a condition precedent to Defendants' obligations to Plaintiffs. *See Castle*, 840 F.2d at 177.

Plaintiffs also argue that even if Defendants' obligation to Plaintiffs under Section 3 of the Settlement Agreement was conditioned upon ALO's obligation to Defendants under Section 5, the satisfaction of that condition may be excused when the non-occurrence of the condition precedent would cause a disproportionate forfeiture. *See Acme Markets, Inc. v. Fed. Armored Exp., Inc.*, 437 Pa. Super. 41, 48 (1994) (explaining that to the extent that the non-occurrence of a condition precedent would cause a disproportionate forfeiture, a court may excuse the non-occurrence of a condition, unless its occurrence was a material part of the agreed exchange). However, because this Court finds that ALO's obligation to Defendants under Section 5 was not a condition precedent to Defendants' obligation to Plaintiffs under Section 3, this Court need not

9

address this argument.

Defendants further argue that they are excused from performing under the Settlement Agreement because there has been a material breach of the Settlement Agreement which excuses them from further performance or liability. *See Berkowitz v. Mayflower Secs., Inc.*, 455 Pa. 531, 534-35 (1974) (explaining that the plaintiff's material breach of the contract relieved the defendant from any duty thereunder). Defendants argue that the failure of ALO to perform under Section 5 of the Agreement, which requires ALO to convey certain lake rights and easements to Defendants, excuses any obligation that Defendants might otherwise have to convey to ALO a quitclaim deed subject to a permanent easement in favor of Plaintiffs. However, Plaintiffs have fully performed under the Agreement by releasing Defendants from any and all claims arising out of or relating to the Prior Action and the West Shore Strip. (*See* Doc. 6-1, Defs.' Ex. A, Settlement Agreement § 6.) There has been no material breach of the agreement by *Plaintiffs* that would excuse Defendants from performance to them. The only material breach Defendants have suggested was by ALO, not Plaintiffs. Therefore, Defendants are not excused from performing their obligation to Plaintiffs under Section 3 of the Settlement Agreement.

Because there were no conditions precedent to Defendants' obligation to Plaintiffs under the Settlement Agreement and because there has been no material breach of the Settlement Agreement by Plaintiffs, Defendants' motion to dismiss Count I will be denied.

**B.     Count II - Promissory Estoppel and Detrimental Reliance**

Count II seeks the same relief as Count I but is pled in the alternative, pursuant to a promissory estoppel theory. A cause of action under promissory estoppel arises when a party relies to his detriment on the intentional or negligent representations of another party, so that in order to prevent the relying party from being harmed, the inducing party is estopped from showing that the facts are not as the relying party understood them to be. *Carlson v. Arnot-Ogden Mem'l Hosp.*, 918 F.2d 411, 416 (3d Cir. 1990); *Constar,*

*Inc. v. Nat'l Distrib. Ctrs.*, 101 F. Supp. 2d 319, 323 (E.D. Pa. 2000) (citing *Thomas v. E.B. Jermyn Lodge No. 2*, 693 A.2d 974, 977 (Pa. Super. 1997)). To maintain an action for promissory estoppel, the plaintiff must show that: (1) the promissor made a promise that (s)he should have reasonably expected to induce action or forbearance on the part of the promisee; (2) the promisee actually took action or refrained from taking action in reliance on the promise; and (3) injustice can be avoided only by enforcing the promise. *Crouse v. Cyclops Indus.*, 506 Pa. 394, 403 (2000). Under Pennsylvania law, a promissory estoppel claim can only exist in the absence of an enforceable contract. *Iverson Baking Co. v. Weston Foods, Ltd.*, 874 F. Supp. 96, 102 (E.D. Pa. 1995); *see also MDNet, Inc. v. Pharmacia Corp.*, 147 F. App'x 239, 244 (3d Cir. 2005) ("Promissory estoppel is applied to enforce a promise not supported by consideration where there is no binding contract.") (citing *Bethlehem Steel Corp. v. Litton Indus., Inc.*, 507 Pa. 88, 110-11 (1985))*; Carlson v. Arnot-Ogden Mem'l Hosp.*, 918 F.2d at 416 (explaining that promissory estoppel is invoked in situations "where the formal requirements of contract formation have not been satisfied" and finding that relief under the promissory estoppel claim was unwarranted in light of the court's finding that the parties formed an enforceable contract); *Kump v. State Farm Fire & Casualty Co.*, No. 3:12-CV-72, 2012 WL 1123897, at *3 (M.D. Pa. Apr. 4, 2012) (explaining that "where an enforceable contract exists, courts have found that applying the doctrine of promissory estoppel would be inappropriate" and therefore dismissing promissory estoppel claim because the dispute was limited only to the contractual obligations of the two parties); *Tucci v. CP Kelco ApS,* No. 02-1765, 2002 WL 31261054, at *6 & *6 n.1 (E.D. Pa. Oct. 10, 2002) (dismissing promissory estoppel claim even though it was pled in the alternative to the breach of contract claim because a valid contract existed between the two parties); *Constar*, 101 F. Supp. 2d at 323 (dismissing promissory estoppel claim because the defendants admitted that the parties entered into an express contract and did not claim that it was unenforceable); *Hedden v. Lupinsky*, 405 Pa. 609, 612 (Pa. 1962) (explaining that the plaintiffs' promissory estoppel claim was without merit because the question of

the defendant's liability could be decided properly and finally on contractual principles).

Although promissory estoppel is inapplicable in the face of an express contract, it may be pled in the alternative to a breach of contract claim. *Kump*, 2012 WL 1123897, at *3. However, here, dismissal of Plaintiffs' promissory estoppel claim is appropriate because both parties acknowledge that a valid contract (*i.e.*, the Settlement Agreement) was in effect between them. Plaintiffs base the entirety of their promissory estoppel claim on obligations outlined in the Settlement Agreement and Defendants do not dispute the validity of this Agreement. *See Constar*, 101 F. Supp. 2d 319, 323 (E.D. Pa. 2000) (dismissing promissory estoppel claim in part because the defendant admitted that the parties entered into an express contract and did not claim that it was enforceable). Rather, Defendants simply argue that their obligation under the Agreement has not yet arisen and in the alternative, that there has been a material breach of the Agreement that excuses their performance. Therefore, there is no dispute over whether a valid contract exists and this dispute may be resolved on traditional contractual principles. Defendants' motion to dismiss Count II of the Complaint will be granted.

## C. Count III - Plaintiffs as Bona Fide Purchasers

Count III seeks declaratory relief in the form of an Order declaring that Plaintiffs have easement rights to use the West Shore Strip pursuant to their deeds based on their status as bona fide purchasers. Defendants' motion to dismiss this claim will be granted because Plaintiffs have failed to demonstrate that they were bona fide purchasers.

To be deemed a bona fide purchaser, one must have no notice of the outstanding rights of others. *Poffenberger v. Goldstein*, 776 A.2d 1037, 1042 (Pa. Cmwlth. 2001) (citation omitted). However, the recording of a deed serves to provide public notice in whom the title resides. *Id.* (citation omitted). Even Plaintiffs' brief in opposition to Defendants' motion to dismiss acknowledges the creation of the West Shore Strip by deeds recorded in Wayne County during the period from December 13, 1859, through

January 21, 1862. Plaintiffs' Complaint contains no allegations that they or their predecessors in interest obtained their rights prior to 1862 and accordingly, they were on notice of the reservation of the West Shore Strip and therefore, cannot be deemed bona fide purchasers. Defendants' motion to dismiss Count III will be granted.

D. **Count IV - Prescriptive Easement**

Count IV seeks declaratory relief in the form of an order declaring that Plaintiffs have a prescriptive easement over the West Shore Strip by virtue of the doctrine of adverse possession. A prescriptive easement "is a right to use another's property which is not inconsistent with the owner's rights and which is acquired by a use that is open, notorious, and uninterrupted for a period of 21 years." *McNaughton Props., L.P. v. Barr*, 981 A.2d 222, 225 n.2 (Pa. Super. 2009); *see also McCormick v. Camp Pocono Ridge, Inc. II*, 781 F. Supp. 328, 332 (M.D. Pa. 1991) ("An easement by prescription arises by adverse, open, continuous, notorious and uninterrupted use of land for a period of twenty-one years."). The burden of proving a prescriptive easement is on the party seeking to enforce it, *Keefer v. Jones*, 467 Pa. Super. 544, 548 (1976), and clear and positive evidence is required to prove an easement by prescription, *Adshead v. Sprung*, 248 Pa. Super. 253, 256 (1977). A finding of adverse possession is an extraordinary remedy. *Recreation Land Corp. v. Hartzfeld*, 947 A.2d 771, 774 (Pa. Super. 2008).

In order to satisfy the continuous possession for twenty-one (21) years requirement, a landowner may "tack" the period of use by her predecessor in title on to her own period. *McCormick*, 781 F. Supp. at 332. "Tacking" is only permissible, however, where privity exists between the adverse possessors. *Id.* "Privity" denotes merely a "succession of relationship to the same thing." *Lednak v. Swatsworth*, 33 Pa. D. & C. 3d 535, 537 (Pa. Com. Pl. 1984). The successive occupants must claim through their predecessors, and not independently, to make the holding continuous for the required period. *Id.* at 537-38. An adverse possession begun and continued for a time must be transferred to a successor in some lawful manner in order to be available to the successor. *Id.* (citing *Gerhart v. Hilsenbeck*, 164 Pa. Super. 85, 89 (1949)).

13

Here, there is only one allegation in the Complaint that supports Plaintiffs' claim for a prescriptive easement. This allegation, in its entirety, reads as follows:

> 50. The West Shore Property Owners, and their predecessors in title as the result of tacking, have occupied and possessed the West Shore Strip allegedly conveyed to Dring and Asaro pursuant to the Quitclaim Deeds in an open, notorious, visible, hostile and continuous manner, including but limited to use for access to the Lake, a beach, boathouse, dock and related facilities, for a period in excess of 21 years and therefore hold an easement by prescription by virtue of the doctrine of adverse possession.

(Doc. 1, Compl. ¶ 50.) This conclusory allegation fails to adequately plead a claim for a prescriptive easement. Plaintiffs have failed to allege any specific facts demonstrating their open, notorious, visible, hostile, and continuous use of the property in question. They have also failed to allege any specific facts demonstrating how their predecessors in title have used the property. Although detailed factual allegations are not required, *see Twombly*, 550 U.S. at 555, mere conclusory statements will not survive a motion to dismiss, *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Although legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). Here, the Complaint does not include *any factual* allegations to support their conclusory allegation that Plaintiffs and their predecessors in title have "occupied and possessed the West Shore Strip . . . in an open, notorious, visible, hostile and continuous manner." (*See* Doc. 1, Compl. ¶ 50.) This fails to give Defendants "fair notice" of the grounds upon which Plaintiffs' claim for a prescriptive easements rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Therefore, Defendants' motion to dismiss this claim will be granted. However, Plaintiffs shall have twenty-one (21) days from the date of entry of this Memorandum to file an Amended Complaint to properly plead their claim for a prescriptive easement. Otherwise, the claim will be dismissed with prejudice.

### III. Conclusion

For the above stated reasons, the motion to dismiss filed by Defendants Lori Dring and Nancy Asaro will be granted in part and denied in part.

An appropriate order follows.

October 6, 2015  /s/ A. Richard Caputo
Date  A. Richard Caputo
 United States District Judge