IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARJORIE M. GILLESPIE<br>2321 Blaine Drive<br>Chevy Chase, MD 20815 | CASE NO: 3:15-CV-00950 |
| | JUDGE A. RICHARD CAPUTO |
| THOMAS J. GILLESPIE, JR.<br>2321 Blaine Drive<br>Chevy Chase, MD 20815<br>Gillespie, Thomas J., Jr. Revocable<br>Trust; Marjorie M. Gillespie Revocable<br>Trust | (Electronically Filed) |
| | JURY TRIAL DEMANDED |
| MARIE BURGE<br>1616 Farr Street<br>Scranton, PA 18504 | |
| JOHN T. NALEVANKO<br>107 Front Street<br>Elmhurst Twp., PA 18444 | |
| KATHRYN D. NALEVANKO<br>107 Front Street<br>Elmhurst Twp., PA 18444 | |
| JAMES KEEGAN<br>1032 Dogwood Road<br>Warminster, PA 18974 | |
| JOSEPH KEEGAN<br>19 Thorne Lane<br>Port Jefferson, NY 11561 | |
| MICHAEL KEEGAN<br>103 Ohio Avenue<br>Long Beach, NY 11561 | |

1

PATRICK KEEGAN
925 Clearview Road
Moscow, PA 18444

ROBERT KEEGAN
710 Clover Lane
Moscow, PA 18444

ANTHONY LABORANTI, JR.
257 State Route 590
Elmhurst Twp., PA 18444

CAROL A. LABORANTI
257 State Route 590
Elmhurst Twp., PA 18444

WILLIAM J. HINZ, Trustee for
Barbara Hinz, Jacob Hinz and
Jacqueline Shaw
122 Pond View Lane
Seaford, DE 19973

TERRENCE DEMPSEY, Trustee for
Terry Dempsey, Joan Dempsey, Jeffrey
Dempsey, Christine Kisel and Jennifer
O'Shea
P.O. Box 143
Lake Ariel, PA 18436

JEFFREY DEMPSEY
3727 Brockton Drive
Cincinnati, OH 45251

CHRISTINE WEST
7351 Buena Vista
Cleves, OH 45002

JENNIFER O'SHEA
5559 Lake Michigan
Fairfield, OH 45014

JOAN DEMPSEY, Trustee for Terry
Dempsey, Joane Dempsey, Jeffrey
Dempsey, Christine Kisel and Jennifer
O'Shea
P.O. Box 143
Lake Ariel, PA 18436

FRANK R. PENATER
824 North 24th Street
Allentown, PA 18104

SHARON D. PENATER
824 North 24th Street
Allentown, PA 18104

MARK J. ALBERT
6 William Drive
Scranton, PA 18505

DAWN H. ALBERT
6 William Drive
Scranton, PA 18505

KATHLEEN DEMPSEY
316 West Drinker Street
Dunmore, PA 18512

GERARD P. DEMPSEY
1701 Electric Street
Dunmore, PA 18512

ROBERT N. DEMPSEY
2206 Jefferson Avenue
Dunmore, PA 18512

ROBERT M. KARUZIE, SR.
1513 Dawson Street
Avoca, PA 18641

FREDERICK MITCHELL
500 North Webster Avenue #611
Scranton, PA 18510

GREG POTOCHNICK
106 Constitution Drive
Moscow, PA 18444

ALLAN L. TADDER
222 Laurel Hollow Drive
Nokomis, FL 34275

JUDITH TADDER
222 Laurel Hollow Drive
Nokomis, FL 34275

PETER DiCENSO
1226 Ingleside Avenue
McLean, VA 22101

LEE CONABOY DiCENSO
1226 Ingleside Avenue
McLean, VA 22101

LOUIS CROCE
137 Stratford Avenue
Garden City, NY 11530

LORI ANN GIAMMARUSCO
1173 Sylvia Road
Seaford, NY 11783

CATHY LOUISE WALKER
2070 Maple Street
Baldwin, NY 11510

WILLIAM T. TAYLOR, Executor of
the Estate of Robert Taylor
298 Bryn Mawr Avenue
Lansdowne, PA 19050

JEFFREY BARONE
421 Foote Street
Dunmore, PA 18512

MARILEE BARONE
421 Foote Street
Dunmore, PA 18512

DAVID NATHAN McILNAY
245 N. 26th Street
Camp Hill, PA 17011

STEPHEN CRESSWELL McILNAY
450 Ardmore Lane
York, PA 17402

DANIEL D. CAPOZZI
104 Park Drive
Clarks Green, PA 18411

CHRISTOPHER S. CAPOZZI
P.O. Box 5
Waverly, PA 18471

MARK W. CAPOZZI
1026 Woodlawn Street
Scranton, PA 18509

PETER M. CAPOZZI
111 Hilltop Road
Waverly, PA 18471

ELIZABETH A. HEALEY
406 Gordon Drive
Clarks Summit, PA 18411

MARY SARAH MASTRI
304 Elizabeth Street
Elmhurst Twp., PA 18444

H. SARA MASTRI
304 Elizabeth Street
Elmhurst Twp., PA 18444

RONALD SMITH
P.O. Box 122
238 West Shore Drive
Lake Ariel, PA 18436

ALLAN D. BIRNEY
4625 Mill Road
Coopersburg, PA 18036

LYNN W. BIRNEY
4625 Mill Road
Coopersburg, PA 18036

GCR LAKE ARIEL LLC
c/o J. Conrad Bosley
13 Leslie Drive
Scranton, PA 18510

GEORGE W. WHITEHOUSE
2872 Sheffield Drive
Emmaus, PA 18049

JESSICA FAUX
23686 Kingston Creek Road
California, MD 20619

CECELIA ALTIER
23686 Kingston Creek Road
California, MD 20619

BRIAN JAMES GREGORY
237 Saddle Lake Road
Tunkhannock, PA 18657

SCOTT GREGORY
231 Saddle Lake Road
Tunkhannock, PA 18657

MICHAEL S. KWIATEK
105 Maple Avenue
Lake Ariel, PA 18436

SUSAN H. KWIATEK
105 Maple Avenue
Lake Ariel, PA 18436

HENRY LEMPICKY
125 Jennifer Drive
N. Abington Twp., PA 18414

CYNTHIA LEMPICKY
125 Jennifer Drive
N. Abington Twp., PA 18414

RICHARD J. REDLING
P.O. Box 321
Lake Ariel, PA 18436

JOAN C. REDLING
P.O. Box 321
Lake Ariel, PA 18436

MONA H. BARBER
P.O. Box 266
Lake Ariel, PA 18436

JOHN J. ELTRINGHAM
391 Burgoyne Drive
New Cumberland, PA 17070

SANDRA L. ELTRINGHAM
391 Burgoyne Drive
New Cumberland, PA 17070

ROBERT M. GILROY
515 Jadwin Street
Scranton, PA 18509

JEAN ANN GILROY
515 Jadwin Street
Scranton, PA 18509

MICHAEL MERRICK
125 Edgewood Drive
Old Forge, PA 18518

WILLIAM EAGAN, Trustee of the
Kelly Family Trust
1659 N. Washington Avenue
Scranton, PA 18509

MARY ELIZABETH EMMEL,
Trustee of the Kelly Family Trust
781 Willard Drive
Jefferson Twp., PA 18436

WILLIAM EAGAN
806 River Street
Scranton, PA 18505

THOMAS P. JACKOVICS
150 Nellen Avenue, Suite 250
Corte Madera, CA 94925

JUDIT M. JACKOVICS
150 Nellen Avenue, Suite 250
Corte Madera, CA 94925

MARGARET KELLY, Trustee for
Edward, Elizabeth, Thomas and Frank
Kelly
212 Fairview Road
Clarks Summit, PA 18411

FLORENCE KELLY
3130 Wisconsin Avenue N.W.
Apartment 221
Washington, DC 20016

LAKE ARIEL FAMILY
PARTNERSHIP, LP
c/o Bill Schautz
902 Buckboard Way
Lansdale, PA 19446

MATTHEW DRACE
P.O. Box 633
Lake Ariel, PA 18436

JONATHAN S. CHERNES
P.O. Box 633
Lake Ariel, PA 18436

RICHARD E. MERRITT
502 Dyckman Street
Peekskill, NY  10566-4636

LISA MERRITT
118 Cedar Street
Lexington, MA 02421

SUSANNAH MERRITT
4710 42nd Street
Seattle, WA 98118-1630

CAROL STOODLEY-RICHARDS
8201 S.W. 148th Drive
Palmetto, FL 33158

ANN STOODLEY-TEETS
3020 Nashotka Road
Madison Twp., PA 18444

KATHERINE STOODLEY-HOPKINS
1004 Sleepy Hollow Road
Clarks Summit, PA 18411

MARY ELLEN STOODLEY-
KENNEDY
936 E. 36th Street
Erie, PA 16504

JAMES L. RICHARDS
7663 Harrier Hill Road
Signal Mt., TN 37377

GRACE E. MERRITT
19 Bruinswick Avenue
West Harford, CT 06107

AMY MERRITT EASTON
85 Revolutionary Road
Concord, MA 01742

CYNTHIA MERRITT FISCHER
P.O. Box 96
Wiscasset, ME 04578

STEPHEN D. MERRITT
52 Bellvale Street
Malden, MA 02148

MARTHA MERRITT-SHUGRUE,
Trustee of the Stoodley Merrit
Revocable Trust
6 Walcott Street
Maynard, MA 01754

RICHARD GAYLORD
P.O. Box 13
Lake Ariel, PA 18436

MICHAEL KRAWCZYK
9602 Shannon Lane
Manassas, VA 20110

DEBORAH KRAWCZYK
9602 Shannon Lane
Manassas, VA 20110

WILLIAM A. ALBRIGHT
P.O. Box 256
Lake Ariel, PA 18436

WILLIAM W. ALBRIGHT
P.O. Box 256
Lake Ariel, PA 18436

HAI Y. WANG
6436 Eichler Circle
Coopersburg, PA 18036

CHAUN ZHANG
6436 Eichler Circle
Coopersburg, PA 18036

TIMOTHY CLAUSS
1341 Lake Ariel Highway
Lake Ariel, PA 18436

ROSANNE CLAUSS
1341 Lake Ariel Highway
Lake Ariel, PA 18436

DAVID D. CLAUSS
1304 Lake Ariel Highway
Lake Ariel, PA 18436

REGINA M. CLAUSS
1304 Lake Ariel Highway
Lake Ariel, PA 18436

STEVEN KOWALCZYK
2976 Lake Ariel Highway
Lake Ariel, PA 18436

KAREN BARILLO
2976 Lake Ariel Highway
Lake Ariel, PA 18436

MICHAEL MALAKIN
1310 Lake Ariel Highway
Lake Ariel, PA 18436

BARBARA GUTT
2135 Kriebel Road
Lansdale, PA 19446

THEODORE E. MALAKIN
1320 Lake Ariel Highway
Lake Ariel, PA 18436

LINDA J. MALAKIN
1320 Lake Ariel Highway
Lake Ariel, PA 18436

ERIK J. GUTT
2135 Kriebel Road
Lansdale, PA 19446

MATTHEW M. GUTT
400 Haverford Avenue
Narbeth, PA 19072

GENEVIEVE G. SAYLOR
Conwyn Arms, Apartment #114
830 W. Montgomery Avenue
Bryn Mawr, PA 19010

PETER A. LOMBARDI
406 Monocacy Trail
Spring Grove, PA 17362

ROBERT J. CLAUSS
800 Forest Avenue
Apartment 11A
Westfield, NJ 07090

HELEN B. SCOTT
c/o Jim Scott
58 Quinton Road
Scott Twp., PA 18447

DALE QUAYLE
2009 North Victoria Drive
Santa Ana, CA 92706

MARGARET QUAYLE
2009 North Victoria Drive
Santa Ana, CA 92706

CHRISTIAN WOEHRLE
P.O. Box 507
Lake Ariel, PA 18436
                                                    Plaintiffs

vs.

LORI DRING
29 Sleepy Hollow Drive
Oak Ridge, NJ 07438-9352
and
NANCY ASARO
28 Trenton Terrace
Wayne, NJ 07470-6337
                                                    Defendants

## AMENDED COMPLAINT

### COUNT I

1.  The Plaintiffs, as identified in the caption of this Amended Complaint, are all adult and competent individuals and citizens, residents, and domiciliaries of states other than New Jersey.

2.  The Plaintiffs and or their predecessors in title are the owners of real property on the western shore of Lake Ariel and Mud Pond, a body of

water in Lake Township, Lackawanna County, Pennsylvania (hereinafter referred to as the "Lake" or "Lake Ariel").

3.    The Plaintiffs are referred to in this complaint as the "West Shore Property Owners."

4.    Defendant Lori Dring is an adult and competent individual and a citizen, resident and domiciliary of the State of New Jersey with a domicile at 29 Sleepy Hollow Drive, Oakridge, New Jersey 07438-9352 ("Dring").

5.    Defendant Nancy Asaro is an adult and competent individual and a citizen, resident and domiciliary of the State of New Jersey with a domicile at 28 Trenton Terrace, Wayne, New Jersey 07470-6337 ("Asaro").

6.    Jurisdiction in this matter is based on diversity of citizenship and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

7.    This matter has its genesis in prior litigation in the United States District Court for the Middle District of Pennsylvania docketed at 3:01-CV-0294.  The Plaintiff in that litigation was a Pennsylvania business corporation known as Ariel Land Owners ("ALO").  Dring and Asaro were the Defendants and the West Shore Property Owners were the counterclaim Defendants in the prior litigation.  The prior litigation involved a dispute between the parties concerning the ownership and use of the Lake.

8.    The specific issues in the prior litigation were as follows:

        1.   Did ALO have legal title to Lake Ariel?

        2.   Did Dring and Asaro have legal title to a strip of land, known as the West Shore Strip, along the west shore of the Lake between the natural margin of the Lake and the highest flow of the Lake, i.e.1425.9 feet above sea level?

3. If the answer to question 2 is yes, did the West Shore Property Owners have a prescriptive easement to continue to use the West Shore Strip for docks, boathouses, and recreation?

4. If the answer to question 2 is yes, did ALO have a right to maintain the water level of the Lake at a level of 1425.9 feet covering the West Shore Strip?

5. Did Dring and Asaro have the right to use the Lake by virtue of ownership of property on the Lake, or ownership of property under the Lake?

6. Did Dring and Asaro obtain a prescriptive easement to use the Lake from Swingle?

7. Are Lake Ariel and Mud Pond separate bodies of water?

9. Before the prior litigation went to trial, the Court resolved issue #5 in a Summary Judgment Order.  Specifically, the Court concluded that Dring and Asaro did not have the right to use Lake Ariel and Mud Pond by virtue of ownership of property on or under the Lake.

10. The trial of the prior litigation began on August 14, 2006.  The trial was completed on August 29, 2006.  Prior to completion of trial, on August 28, 2006, issues 3 and 4 were resolved by a Settlement Agreement which imposed requirements on all the parties involved, Dring and Asaro as Defendants, ALO as Plaintiff, and the West Shore Property Owners as Counterclaim Defendants.

11. ALO's obligations to Dring and Asaro under the Settlement Agreement were as follows:

a. ALO was required to provide Dring and Asaro with four (4) lake rights which will permit Dring/Asaro to construct and maintain four (4) docks along and into the water at the shore line of the Swingle Tract to be used for the launching and docking of watercraft, however these lake rights will not permit Motorized Boats (as hereafter defind) to be operated on Mud Pond or in the channel,

16

or trolling motors to be operated in the channel.

     b.    ALO was required to provide Dring and Asaro with a permanent easement over the water and a parcel of land at the eastern shore of Lake Ariel, at the end of Cardinal Lane (the "Dock Area") described as a rectangular shape of approximately thirty (30') feet in width along the shoreline, and two hundred (200') feet in depth above the shoreline.

     c.    The specifics of the easement ALO agreed to provide Dring and Asaro were as follows:  The easement shall permit Dring/Asaro to construct and maintain a dock of a size and configuration to accommodate launching and individual slips for dockage of four (4) Motorized Boats up to 21 feet in length, for use only on Lake Ariel.  Three of the docks shall be used only in conjunction with three lake rights granted under subsection (a) hereof, and at the option of Dring/Asaro, one dock may be used in conjunction with the lake right owned by Joseph and Elaine Asaro in the event they surrender their current dock location on West Shore Drive to ALO.  The easement shall also permit the parking of four automobiles on Cardinal Lane; access to and use of the launching ramp at the Beach Area; and storage of removable dock sections on Cardinal Lane.  The size and configuration of the dock shall be subject to the approval of ALO, in accordance with customary policies and procedures of ALO uniformly applied to applications for similar structures.  Dring/Asaro agree that automobiles shall be parked on the side of Cardinal Lane, and dock sections stored at the bottom of Cardinal Lane by the dock, so as to avoid blocking access along Cardinal Lane.

12.    Dring and Asaro's obligations to ALO under the Settlement Agreement were as follows: Dring and Asaro were required to subdivide the West Shore Strip into two (2) sections, the North Strip and the South Strip.  The North Strip extended in a southerly direction along the West Shore Strip to the southerly property line of the Marjorie Gillespie property.  Dring and Asaro were required to obtain subdivision approval from Lake Township for this subdivision.  Dring and Asaro were required to convey ownership of the North Strip to ALO, subject to the easement granted to the West Shore Property

Owners.  Dring and Asaro were required to grant ALO an easement to maintain the water level of Lake Ariel to an elevation of 1425.9 feet.

13.    Dring and Asaro's obligations to the West Shore Property Owners under the Settlement Agreement were as follows: Dring and Asaro were required to grant the West Shore Property Owners a permanent easement over the North Strip for access to Lake Ariel and to maintain docks or boathouses on the North Strip.  Dring and Asaro were required to, and did in fact, release all claims against West Shore Property Owners with prejudice.

14.    The West Shore Property Owners obligations to Dring and Asaro under the Settlement Agreement were to release all claims against Dring and Asaro.

15.    Paragraph 15 of the Settlement Agreement of August 2006 established the following time frame for the exchange of the deeds and other instruments necessary to fully perform the Agreement:

15.  All Deeds and other instrument referred to herein shall be exchanged by the parties at a mutually convenient time within 30 days after obtaining the subdivision approval set forth in Section 2 hereof

16.    This litigation arises out of the Settlement Agreement and the fact that it has not been fully performed by the parties.

17.    Subsequent to the Settlement Agreement and pursuant to its terms, Dring and Asaro, in January 2007, applied to the Lake County Planning Commission and the Wayne County Planning Commission for permission to subdivide the West Shore Strip and to convey the northerly part of the West Shore Strip to ALO.

18.    In conjunction with the application filed with the two Planning Commissions, Dring and Asaro submitted a survey of the West Shore Strip prepared by William Schoenegel.  The survey was dated January 2, 2007.

19.     On January 19, 2007, the Wayne County Planning Commission submitted written comments to the Lake County Planning Commission concerning Dring and Asaro's application pointing out some deficiencies in Dring and Asaro's subdivision application.

20.     As of August 2007, the Wayne County Planning Commission had not acted on Dring and Asaro's application to subdivide the West Shore Strip.

21.     In August 2007, paragraph 15 of the Settlement Agreement was amended to read as follows:

15.     The application for subdivision approval referred to in Section 2 hereof shall be made within sixty (60) days after a final, non-appealable decision is entered in the lawsuit.  All deeds and other instruments referred to herein shall be exchanged by the parties at a mutually convenient time within thirty (30) days after obtaining subdivision approval.

22.     Subsequently, issues 1, 2, 6, and 7 set forth in paragraph 8 of this Complaint were resolved by the Trial Court in its Opinion on August 15, 2008.  The Trial Court's Opinion was affirmed by the United States Court of Appeals for the Third Circuit on March 15, 2010.

23.     As of the summer of 2003, The Wayne County Planning Commission had still not approved Dring and Asaro's application to subdivide the West Shore Strip.  Nonetheless, at that time Dring and Asaro submitted to ALO a proposed drawing of the dock it wished to construct in Lake Ariel in Cardinal Lane area.

24.     In November 2013, ALO informed Dring and Asaro that its proposed dock was not in compliance with the provisions of the Settlement Agreement and not acceptable to ALO.

25.     As of June 3, 2014, the Wayne County Planning Commission had still not approved Dring and Asaro's application to subdivide the West Shore Strip.  On or about that date, Dring and Asaro submitted to the

19

two (2) Planning Commissions an amended survey of the West Shore Strip prepared by William Schoenegel.

26.     As of July 15, 2014, the Wayne County Planning Commission had still not approved Dring and Asaro's application to subdivide the West Shore Strip.  On that date, however, Dring and Asaro's counsel wrote to counsel for ALO and the West Shore Property Owners and in said letter made the following erroneous representation:  "The purpose of this letter is to advise you that the Western Shore Strip has been subdivided, and Dring/Asaro are ready, willing, and able to deliver the quit claim deed (subject to a permanent easement in favor of the Property Owners) which is referred to in paragraph 3 of the Settlement Agreement, and the quit claim deed to create the easement in accordance with paragraph 4 of the Settlement Agreement."

27.     In October 2014, Dring and Asaro's counsel informed counsel for ALO and the West Shore Property Owners that he was mistaken in July 2014 when he informed them that Dring and Asaro had obtained approval of their subdivision application to subdivide the West Shore Strip.  Rather, Dring and Asaro's counsel stated that they had determined that subdivision approval for the West Shore Strip was not necessary.

28.     At that time, Dring and Asaro's counsel unilaterally scheduled a closing for performance of the Settlement Agreement for November 18, 2014 in Wilkes Barre, Pennsylvania.

29.     In response to the unilateral scheduling of the closing, ALO, through its counsel, informed Dring and Asaro, through their counsel that ALO would not be participating in the closing scheduled by Dring and Asaro because Dring and Asaro had not fully performed its obligations to ALO under said Agreement.  Specifically, ALO informed Dring and Asaro that they had failed to obtain subdivision approval for the northerly part of the West Shore Strip, and that the size and configuration of the dock proposed by Dring and Asaro was not in accordance with policies and procedures of ALO both of which conditions were required of Dring and Asaro under the terms of the Settlement Agreement.

20

30.     The West Shore Property Owners also responded in early November 2014 to the unilateral scheduling of the closing.  The West Shore Property Owners, through their counsel, informed Dring and Asaro that the West Shore Property Owners had fully performed their obligations to Dring and Asaro under the terms of the Settlement Agreement by releasing Dring and Asaro from all claims and that, therefore, the West Shore Property Owners expected Dring and Asaro to perform their obligations to them under the terms of the Settlement Agreement by transferring to them the permanent easement for access to the northerly portion of the West Shore Strip.

31.     Dring and Asaro refused to transfer said easement to the West Shore Property Owners on the grounds that they were excused from doing so because ALO had not performed its obligations to Dring and Asaro under the Agreement.

32.     Dring and Asaro's refusal to transfer the easement to the West Shore Property Owners constituted a breach of the Settlement Agreement for the following reasons:

     a.     The West Shore Property Owners had fully performed their obligations under the Settlement Agreement.

     b.     The Settlement Agreement required Dring and Asaro to transfer the easement to the West Shore Property Owners.

     c.     The obligations of ALO to Dring and Asaro were independent of the obligation of Dring and Asaro to transfer the easement to the West Shore Property Owners.

     d.     The right of the West Shore Property Owners to an easement from Dring and Asaro was not dependent on ALO's performance of its obligations.

     e.     The West Shore Property Owners did not control ALO and did not have the right or ability to require ALO to perform its obligations to Dring and Asaro

21

f.   The Settlement Agreement did not provide that Dring and Asaro could refuse to transfer the easement to the West Shore Property Owners if ALO did not perform its obligations to Dring and Asaro.

33.   The West Shore Property Owners are parties to or successors in interest to the parties to the Settlement Agreement and are, therefore, legally entitled to enforce its terms against Dring and Asaro.

34.   The West Shore Property Owners have sustained damages as a result of Dring and Asaro's failure to transfer the easement to them as required by the Settlement Agreement. Said damages include, but are not limited to, diminution in the value of their properties and the loss of the ability to sell their properties.

35.   The West Shore Property Owners are entitled to counsel fees from Dring and Asaro in this matter pursuant to paragraph 14 of the Settlement Agreement.

WHEREFORE, Plaintiffs request that the Court grant them the following relief:

a.   An Order requiring Dring and Asaro to transfer to them an easement over the West Shore Strip as required by the Settlement Agreement;

b.   An award of damages resulting from Dring and Asaro's actions;

c.   An Order requiring Dring and Asaro to pay counsel fees and other costs of this matter.

## COUNT II

36.   The West Shore property Owners re-allege each and every allegation set forth in Count I of this Amended Complaint and incorporate them herein by reference thereto.

37.  As more specifically averred below, the West Shore Property Owners, and their predecessors in title as the result of tacking have occupied and possessed the West Shore Strip allegedly conveyed to Dring and Asaro pursuant to the Quitclaim Deed in an open, notorious, visible, hostile and continuous manner, including but not limited to use for access to the Lake, a beach, boathouse, dock and related facilities, for a period in excess of 21 years and therefor hold an easement by prescription by virtue of the doctrine of adverse possession.

38.  Plaintiffs, Marjorie Gillespie ("Gillespie") inherited the property at 300 West Shore Drive (hereinafter "Gillespie Property") in February 2001 at the time of her mother's death.

39.  The Gillespie Property has been in the family since its initial purchase in 1948.  Since 1948 and continuing to date, the members of the owning family have continuously traversed the West Shore Strip to access the Lake for warm weather recreational purposes, including boating, fishing and swimming.  Since 1948 and continuing to date, the members of the owning family have occasionally traversed the West Shore Strip to access the Lake for winter recreational purposes such as ice skating.

40.  In 1948, a dock and retaining wall were constructed across the West Shore Strip in front of the Gillespie Property and were continuously used and maintained until 2013 at which time both were replaced and have been continuously used and maintained since that date.

41.  Plaintiff, Marie Burge ("Burge"), owns a property on West Shore Drive which includes a wooden dock across the West Shore Strip which Burge and/or her predecessors in interest have continuously used and maintained to access the Lake for recreational purposes for a period of time dating from 1980 to present.

42.  Plaintiffs, John T. and Kathryn D. Nalevanko ("Nalevanko") purchased the property at 296 West Shore Drive (hereinafter the "Nalevanko Property") on September 28, 2000.  Nalevanko purchased the Nalevanko Property from the previous owner who acquired it in 1930.

43.   The owners of the Nalevanko Property continuously traversed the West Shore Strip to access the Lake for warm water recreational activities on the Lake, including swimming, fishing and boating, since 1930 and continuing to present.  Additionally, Nalevanko has traversed the West Shore Strip to access the Lake continuously from 2000 to present for winter recreational activities, including fishing and ice skating.

44.   A dock is constructed across the West Shore Strip in front of the Nalevanko Property and has been continuously maintained and used by the owners since 1960 until 2004.  In 2004, after damage to the original 1960s dock, Nalavenko built an L shaped dock with a deck and retaining wall across the West Shore Strip and has continuously used and maintained it since that date to present.

45.   Plaintiffs, James Keegan, Joseph Keegan, Michael Keegan, Patrick Keegan,  and Robert Keegan, acquired 294 West Shore Drive (hereinafter "Keegan Property") on October 28, 1996 from the Keegan Family, who acquired the Keegan Property on October 5, 1969.

46.   The Keegan Property has been owned by the Keegan Family for a period of 46 years.  For the entirety of that time period, the Keegan Family traversed the West Shore Strip into Lake Ariel in order to use the Lake waters for: (a) warm weather recreational purposes, including boating, fishing and swimming; and (b) cold weather recreational purposes, including ice fishing, skating, and snowmobiling.

47.   The Keegan Family constructed a free standing dock and boat dockage in front of the Keegan Property and over the West Shore Strip in 1976 and those improvements have been used by the Keegan Family since 1976 and remain in use to date.

48.   Plaintiffs, Anthony and Carol Laboranti ("Laboranti"), acquired their property at 292 West Shore Drive in September of 1968 (hereinafter the "Laboranti Property").

24

49.   During their 47 year period of ownership, Laboranti has continuously traversed the West Shore Strip for both summer and winter recreational activities on the Lake.

50.   In 1980, Laboranti installed a new cantilevered dock with steel beams, a new retaining wall and steps all of which are in place over the West Shore Strip and all of which have been continuously used by Laboranti to access the Lake since the date of installation to present.

51.   Plaintiff, William J. Hinz, Trustee for Barbara Hinz, Jacob Hinz and Jacqueline Shaw, has owned the property at 291 West Shore Drive (hereinafter the "Hinz Property") since July 24, 1976.

52.   The Hinz Property has been in the Hinz Family for 39 years, during which time the Hinz Family continuously traversed the West Shore Strip to use the Lake for warm weather and winter weather recreational activities.

53.   The Hinz Family constructed a boathouse and docks across the West Shore Strip to the Lake approximately 40 years ago.  The boathouse was removed in 1981 but the Hinz Family has continuously used the remaining improvements to access the Lake since their construction to date.

54.   Plaintiffs, Terrence Dempsey, Trustee, Jeffrey Dempsey, Christine West, Jennifer O'Shea and Joan Dempsey, Trustee ("Dempsey") have owned a property on West Shore Drive (hereinafter "Dempsey Property") since August 2000.  Prior to that date the Dempsey Property had been owned by the Dempsey Family since September 1929.

55.   Dempsey and their familial predecessors in title, continuously traversed the West Shore Strip to access the Lake for warm weather and winter recreational activities since 1929 and continue to do so to present.

56.   In June 2001, Dempsey constructed a lake wall, deck, landscape wall and dock across the West Shore Strip in front of the Dempsey Property.  These improvements have been continuously maintained

25

and used by Dempsey since 2001 and replace prior deck structures across the West Shore Strip which had been in place for the duration of the Dempsey Family ownership of the Dempsey Property.

57.    Plaintiffs, Frank R. Penater and Sharon D. Penater ("Penater") are the owners of 278 West Shore Drive (hereinafter "278") and 288 West Shore Drive (hereinafter "288").

58.    Penater acquired 278 in 1998 and since that date has continuously traversed the West Shore Strip to access the Lake for warm weather and winter recreational activities.  Paulette and Mark Robbins, and/or all prior owners of 278, continuously traversed the West Shore Strip in this same manner for the course of their ownership of 278 which commenced at a date prior to 1980.

59.    Upon the Penater 1998 purchase of 278, there existed a dock across the West Shore Strip which had been continuously used and maintained since a date prior to 1980 until present, with repairs being made by Penater in 2013.  In 2003, Penatar also build a second large dock across the West Shore Strip and has maintained that improvements and used it for Lake access continuously since 2003.

60.    Penater acquired 288 from the Millers in 2008 and since that date has continuously traversed the West Shore Strip to access the Lake for warm weather and winter recreational activities.  The Millers and/or their predecessors in interest traversed the West Shore Strip in the same manner since a date prior to 1980 and continuing to the Penater purchase.

61.    Penater has maintained and used the cantilever dock and wooden dock which are constructed across the West Shore Strip in front of 288 since their 2008 purchase.  The existing cantilever dock and wooden dock were constructed across the West Shore Strip during ownership by the Millers and/or their predecessors in interest and were used and maintained by the prior owners during their periods of ownership from a date prior to 1980 and continuing until purchase by Penater.

62.    Plaintiffs, Mark J. and Dawn H. Albert ("Albert"), own a property on West Shore Drive which includes a wooden dock across the West

26

Shore Strip which Albert and/or their predecessors in interest have continuously used and maintained to access the Lake for recreational purposes for a period of time dating from 1980 to present.

63.   Plaintiffs, Kathleen Dempsey, Gerard P. Dempsey and Robert N. Dempsey ("Dempsey"),own a property on West Shore Drive which includes a dock across the West Shore Strip which Dempsey and/or their predecessors in interest have continuously used and maintained to access the Lake for recreational purposes for a period of time dating from 1980 to present.

64.   Plaintiff, Robert M. Karuzie, Sr. ("Karuzie"), owns a property on West Shore Drive which includes a wooden dock across the West Shore Strip which Karuzie and/or his predecessors in interest have continuously used and maintained to access the Lake for recreational purposes for a period of time dating from 1980 to present.

65.   Plaintiff, Frederick Mitchell ("Mitchell"), purchased the property at 276 West Shore Drive (hereinafter the "Mitchell Property") in 1967.

66.   Since 1967 and continuing to date, Mitchell has maintained and used a dock which crosses the West Shore Strip in front of the Mitchell Property.

67.   Since 1967 and continuing to date, Mitchell has continuously traversed the West Shore Strip to access the Lake for warm weather and winter recreational activities, including boating, fishing, swimming, ice skating, and walking in the winter.

68.   Plaintiff, Greg Potochnick ("Potochnick"), purchased the property at 272 West Shore Drive (hereinafter the "Potochnick Property") approximately 60 years ago.

69.   The Potochnick Property has been owned by the Potochnick family for approximately 60 years and during their ownership they have continuously traversed the West Shore Strip for both summer and winter recreational activities on the Lake.

27

70.   Potochnick constructed a dock over the West Shore Strip to the Lake
      30 years ago, replacing prior improvements, and has used the same
      continuously from that date to present.  Potochnick also installed a
      Versa Lock Stone Retaining Wall across the West Shore Strip
      approximately 6 years ago.

71.   Plaintiffs, Allan L. and Judith Tadder ("Tadder"), own a property on
      West Shore Drive which includes a wooden and concrete dock across
      the West Shore Strip which Tadder and/or their predecessors in
      interest have continuously used and maintained to access the Lake for
      recreational purposes for a period of time from 1980 to present.

72.   Plaintiffs, Peter DiCenso and Lee Conaboy DiCenso ("DiCenso"),
      acquired the property at 266 West Shore Drive (hereinafter "DiCenso
      Property") on August 15, 1997.  Prior to their acquisition of the
      DiCenso Property, it had been owned by their family.  The DiCenso
      family has owned the DiCenso Property for 62 years, having first
      acquired it in 1953.

73.   The owners of the DiCenso Property have continuously traversed the
      West Shore Strip for warm water and winter use of the Lake since
      1953 and DiCenso has continued to do the same since acquiring the
      DiCenso Property.

74.   There has been a dock constructed across the West Shore Strip in
      front of the DiCenso Property which has been continuously
      maintained and used by the DiCenso Family and DiCenso for the last
      60 years.  The original dock was constructed in the mid-1950s,
      replaced in the early 1970s and the present dock, gazebo and stone
      bulkhead were constructed in 1997.

75.   Plaintiffs, Louis Croce, Lori Ann Giammarusco, and Cathy Louise
      Walker ("Croce"), own a property on West Shore Drive which
      includes a concrete dock across the West Shore Strip which Croce
      and/or their predecessors in interest have continuously used and
      maintained to access the Lake for recreational purposes for a period of
      time dating from 1980 to present.

28

76.   Plaintiff, William Taylor, executor of the estate of Robert Taylor
      ("Taylor"), owns a property on West Shore Drive and either Taylor or
      his predecessors in interest have traversed the West Shore Strip to
      access the Lake for a period dating back to 1980 to present.

77.   Plaintiffs, Jeffrey and Marilee Barone ("Barone"), own a property on
      West Shore Drive which includes a concrete and wooden dock across
      the West Shore Strip which Barone and/or their predecessors in
      interest have continuously used and maintained to access the Lake for
      recreational purposes for a period of time dating from 1980 to present.

78.   Plaintiffs, David Nathan McIlnay and Stephen Cresswell McIlnay,
      ("McIlnays"), are the owners of property at 246 West Shore Drive
      (hereinafter "McIlnay Property") which was purchased by the
      McIlnay family on August 13, 1929.

79.   For a period of 86 years, the McIlnays and their predecessors in
      interest have continuously crossed, traversed and utilized the West
      Shore Strip during both warm and winter weather for the purposes of
      accessing the Lake to swim, fish, sail, boat, water ski, snorkel and
      skate.

80.   In 1929, a house, garage, boathouse, dock and substantial water front
      improvements, including cement lake bank retention walls were
      constructed across the West Shore Strip and the same have been used
      from the date of construction to present. Most recently, in 2014, the
      dock and boathouse were torn down and a new larger dock was
      constructed as well as a foundation for a larger boathouse.

81.   Plaintiffs, Daniel D. Capozzi, Christopher S. Capozzi, Mark W.
      Capozzi, Peter M. Capozzi, and Elizabeth A. Healey ("Capozzi"),
      own the property at 242 West Shore Drive (hereinafter "the Capozzi
      Property") and the Capozzi family has owned the Capozzi Property
      since 1948.

82.   During their 67 years of ownership, and continuously in that time
      period, Capozzi and/or the Capozzi Family have traversed the West
      Shore Strip in order to engage in winter and warm weather
      recreational activities on the Lake.

29

83. In the 1930s, the Capozzi Family built a boathouse and dock across the West Shore Strip to access the Lake water and they continuously used those improvements to access the Lake from the date of their construction to present.  During their period of ownership, Capozzi and/or the Capozzi Family have built and replaced many decks, the last of which was constructed in the 1970s.

84. Plaintiff, H. Sara Mastri and Mary Sarah Mastri ("Mastri"), purchased the property at 232 West Shore Drive (hereinafter "Mastri Property") in August, 1986.

85. Mastri has continuously traversed the West Shore Strip to access the Lake for warm weather and winter recreational activities since 1986 and this use is consistent with the continuous use of her predecessors in interest to access the Lake for warm weather and winter recreational activities by traversing the West Shore Strip from a date prior to 1980.

86. Mastri built and has continuously used and maintained a dock across the West Shore Strip in 1987, which such dock was an improvement on a dock which had been located across the West Shore Strip since a date prior to 1980.

87. Plaintiff, Ronald Smith ("Smith"), owns a property on West Shore Drive which includes a concrete and wooden dock across the West Shore Strip which Smith and/or his predecessors in interest have continuously used and maintained to access the Lake for recreational purposes for a period of time dating from 1980 to present.

88. Plaintiffs, Allan D. and Lynn W. Birney ("Birney"), own a property on West Shore Drive which includes a concrete and wooden dock across the West Shore Strip which Birney and/or their predecessors in interest have continuously used and maintained to access the Lake for recreational purposes for a period of time dating from 1980 to present.

89. Plaintiff, GCR Lake Ariel, LLC ("GCR"), purchased the property at 228 West Shore Drive (hereinafter the "GCR Property") on January 9, 2013 from J. Conrad Bosley, Helen R. Bosley Dewey, Richard R.

Eynon and George F. Eynon, who purchased the GCR Property from Frieda M. Ries on September 30, 1985, Frieda M. Ries having acquired the property from her parents George C. and Elizabeth Reis on April 17, 1950.  George and Elizabeth Reis originally acquired the GCR Property on May 13, 1924.

90.   The partners of GCR are all direct descendants of George C. Ries, the original owner of the GCR Property and the GCR Property has been in the family since 1924.

91.   The partners of GCR and their familial predecessors in title have continuously traversed the West Shore Strip to access the lake for warm water recreational uses since 1924 and for the same period of time have continuously traversed the West Shore Strip in the winter for the purposes of ice skating and sledding.

92.   The GCR Property includes a dock and a concrete retaining wall across the West Shore Strip.  Both were constructed between 1924-1928 and have remained in place and continuously used to access the Lake since the date of their construction to present.

93.   Plaintiff, George W. Whitehouse ("Whitehouse"), purchased the property at 226 West Shore Drive (hereinafter "Whitehouse Property") on July 26, 1968.

94.   Whitehouse, his children, grandchildren, and great grandchildren have continuously traversed the West Shore Strip to access the Lake for boating, fishing, swimming, snorkeling, skating and sledding for the past 47 years.

95.   Whitehouse has constructed a cantilevered deck across the West Shore Strip which replaced the original deck in place upon his purchase of the Whitehouse Property.  He has also constructed two piers, a wooden ramp, and wooden steps to replace the original steps which were built in the 1920s.  These improvements have been maintained and used by Whitehouse since his ownership of the Whitehouse Property to present.

31

96.     Plaintiff, Jessica Faux inherited the property at 222 West Shore Drive (hereinafter "Faux Property"), along with her two brothers, Plaintiffs Brian James Gregory and Scott Gregory, on June 13, 2002 upon their grandmother's death.  The Faux Property was transferred to Jessica Faux and her husband, Timothy Faux ("Faux") on August 17, 2015. The Faux Property has been in the family of Jessica Faux since August 14, 1954 when it was conveyed to Jessica Faux's grandparents, Patrick and Cecelia Altier.

97.     Faux and her familial predecessors in interest have traversed the West Shore Strip continuously since 1954 to access the Lake for warm weather and winter recreational activities from 1954 to present.

98.     An original dock was constructed across the Faux Property at a date prior to 1971 and has been continuously maintained and used by the Faux Property owners since that date to present, including improvements in the early 2000s.

99.     Plaintiffs, Michael S. and Susan H. Kwiatek ("Kwiatek") own multiple properties on West Shore Drive each of which includes a wooden dock across the West Shore Strip which Kwiatek and/or their predecessors in interest have continuously used and maintained to access the Lake for recreational purposes for a period of time dating from 1980 to present.

100.    Plaintiffs, Henry Lempicky and Cynthia Lempicky ("Lempickys"), purchased their property at 210 West Shore Drive (hereinafter "the Lempicky Property") on May 11, 1984.

101.    During their 31 years of ownership, the Lempickys have continuously traversed the West Shore Strip seasonally for swimming, boating and ice skating.  This use is consistent with the use of the Lempickys' predecessors in interest, who continuously traversed the West Shore Strip to access the Lake for warm weather and winter recreational purposes from a date prior to 1980.  The Lempickys constructed a cantilevered dock across the West Shore Strip in 1998 and have continuously used and maintained it since that date to present.  The improvement replaced an existing dock which crossed the West Shore Strip and had been continuously maintained and used by the

32

Lempickys and/or their predecessors in interest from a date prior to 1980.

102.   Plaintiffs, Richard J. and Joan C. Redling ("Redling") purchased the property at 209 West Shore Drive (hereinafter "Redling Property") in 1981 and have continuously traversed the West Shore Strip since that date to present to access the Lake for boating, fishing and swimming. Their use is consistent with the use of their predecessors in interest who continuously traversed the West Shore Strip to access the Lake for warm weather and winter recreational activities from a date prior to 1980.

103.   Redling constructed a 2 story boat house, a dock and a stone wall across the West Shore Strip running in front of the Redling Property 34 years ago and have continuously used and maintained those improvements and paid taxes on those improvements from 1981 to present.  That construction replaced an existing dock which was in place and continuously used and maintained since a date prior to 1980.

104.   Plaintiff, Mona Barber ("Barber"), purchased the property at 200 West Shore Drive (hereinafter the "Barber Property") in 1989.

105.   Since 1989 and continuing to present, Barber has continuously traversed the West Shore Strip to access the Lake for summer and winter sporting activities.  This use is consistent with that of her predecessors in interest who continuously traversed the West Shore Strip to access the Lake for warm weather and winter recreational activities from a date prior to 1980 until Barber's purchase of the Barber Property.

106.   In 1990 Barber constructed a dock crossing the West Shore Strip in front of the Barber Property.  Barber has continuously maintained and used that deck from 1990 to present.

107.   Plaintiffs, John J. Eltringham and Sandra L. Eltringham ("Eltringham") own the property at 200 West Shore Drive (hereinafter the "Eltringham Property") and purchased the same in 2000.

33

108.  Since 1922, the date upon which The Ariel Club originally purchased the Eltringham Property, the owners of the Eltringham Property have maintained continuous and constant Lake rights, and in order to enjoy these Lake rights have continuously traversed the West Shore Strip to access the Lake for warm weather and winter recreational use.

109.  The Eltringham Property includes a dock which crosses over the West Shore Strip.  The dock has been in existence and use since 1922 and the old dock was removed with a new dock installed in 2000. The docks have been continuously maintained and used from 1922 to present.

110.  Plaintiffs, Robert M. and Jean Ann Gilroy ("Gilroy"), own a property on West Shore Drive which has been owned by the Gilroy Family since 1953.  It includes a concrete and wooden dock across the West Shore Strip which Gilroy and/or their familial predecessors in interest have continuously used and maintained to access the Lake for recreational purposes for a period of time dating back from 1953 to present.

111.  Plaintiff, Michael Merrick ("Merrick"), owns a property on West Shore Drive which includes a concrete and wooden dock across the West Shore Strip which Merrick and/or his predecessors in interest have continuously used and maintained to access the Lake for recreational purposes for a period of time dating from 1980 to present.

112.  Plaintiffs, William Eagan and Mary Elizabeth Emmel, co-trustees of the Kally Family Trust ("Kelly Family Trust"), have owned the property at 186 West Shore Drive (hereinafter the "Kelly Property") since 1946.

113.  The owners of the Kelly Property have continuously traversed the West Shore Strip to access the waters of the Lake for warm weather and winter recreational use since 1946 and continuing to present.

114.  Since 1947 a dock has been constructed across the West Shore Strip in front of the Kelly Property and has been continuously maintained and used by the Kelly Family Trust since 1947 to present.

34

115.  Since 1962 a boathouse and concrete deck have been constructed across the West Shore Strip in front of the Kelly Property and have been continuously maintained and used by the Kelly Family Trust since 1962 to present.

116.  William Eagen ("Eagen") has owned the property at 186 Rear West Shore Drive (hereinafter "Eagan Property") since December 2002.

117.  For approximately 50 years, Eagan has personally continuously traversed the West Shore Strip to use the Lake for boating, fishing, swimming, skiing, ice skating, ice hockey, snowmobiling, fishing and tubing.  His predecessors in interest used the West Shore Strip for the same purposes during this same period ending with his purchase of the Egan Property in 2002.

118.  Plaintiffs, Margaret Kellly as trustee and Florence Kelly ("Kelly"), acquired their property in 2000 and 2005 respectively.  The Kelly Property has been in the Kelly family for 127 years.

119.  Kelly and their familial predecessors in interest continuously traversed the West Shore Strip to access the lake for warm weather during the entirety of the 127 period of ownership and continuing to present.

120.  During the Kelly Family period of ownership there has been a dock across the West Shore Strip in front of their property and the same has been continuously maintained and used, with most recent improvements made 15 years ago.

121.  Plaintiffs, Thomas P. Jackovics and Judit M. Jackovics ("Jackovics"), purchased 176 West Shore Drive (hereinafter the "Jackovics Property") on September 2, 2002.  Prior to that purchase, the Jackovics Property had been owned and used by the Jackovics family since 1909 when it was acquired by Michael Jackovics.

122.  Since 1909 and continuing to present, Jackovicz and/or the members of the Jackovics family continuously traversed the West Shore Strip to access the Lake for warm weather and winter recreational activity.

123. In 1920, a dock was constructed over the West Shore Strip in front of the Jackovics Property and it has been continuously used and maintained by Jackovics and/or the members of the Jackovics Family who owned the Jackovics Property from 1920 to present.

124. Plaintiff, Lake Ariel Family Partnership ("the Partnership"), purchased the property at 215 West Shore Drive (hereinafter "the Partnership Property") in May 2004.

125. The partners in the Partnership are William Schautz and his two (2) brothers.  In 2004, they purchased the Partnership Property from their mother.  The Partnership Property has been in the Schautz family for four (4) generations and has been owned exclusively by members of the Schautz family since 1896.

126. The members of the Partnership and the members of the Schuatz family have traversed the West Shore Strip to access the Lake for continuous recreational use in both warm and winter weather months for a period of at least 62 years and continue to continuously traverse the West Shore Strip for such purposes to date.

127. At least one dock, if not more, has been in place across the West Shore Strip in front of the Partnership Property since the 1930s and has been used and maintained continuously from that date to present in order to access the Lake.

128. Plaintiffs, Matthew Drace ("Drace") and Jonathan Chernes ("Chernes") purchased the property at 217 West Shore Drive (hereinafter "Drace Property") in July of 1998.

129. Since 1998, Drace and Chernes have been continuously traversing the West Shore Strip to access the Lake for warm weather and winter recreational activities and continue to do so to date.  Their predecessor in interest, Walter Eichner and/or his predecessors in interest, traversed the West Shore Strip for the same purposes since a date prior to 1980.

130. Upon their 1998 purchase of the Drace Property, there was an existing dock constructed across the West Shore Strip in front of the Drace

Property which has been maintained and used continuously since 1998 by Drace and Chernes to present and which was continuously maintained and used by their predecessors in interest since a date prior to 1980.

131. Plaintiffs, Richard E. Merritt, Lisa Merritt, Susannah Merritt, Carol Stoodley-Richards, Ann Stoodley-Teets, Katherine Stoodley-Hopkins, Mary Ellen Stoodley-Kennedy, James L. Richards, Grace E. Merritt, Amy Merritt Easton, Cynthia Merritt Fischer, Stephen D. Merritt, and Martha Merritt-Shugrue are the owners of the Stoodley-Merritt Cottage at 219 West Shore Drive (hereinafter the "Stoodley-Merritt Property").

132. The Stoodley-Merritt Property was purchased in 1916 by the Merritt family and has remained in the family to date.  The owners of the Stoodley-Merritt Property and the members of the Merritt family have continuously traversed the West Shore Strip for approximately 100 years to access the Lake for boating, fishing, and swimming.

133. The Stoodley-Merritt Property includes a dock and boat landing which have been in place over the West Shore Strip and which have been continuously used and maintained by the owners of the Stoodley-Merritt Property for approximately 100 years to present.

134. Plaintiff, Richard Gaylord ("Gaylord"), purchased the property at 152 West Shore Drive (hereinafter "Gaylord Property") on August 16, 1974 and has owned the Gaylord Property from that date to present.

135. For a period of 65 years and continuing to date, Gaylord has continuously traversed the West Shore Strip to access the Lake for seasonal recreational use in the warm and winter weather months.

136. For a period of 65 years, the Gaylord Property has included a dock and a boathouse which are constructed over the West Shore Strip. These improvements have been in place for 65 years and have been continuously maintained for that time period and continuously used to access the Lake for that time period to present.

137.   Plaintiffs, Michael Krawczyk and Deborah Krawczyk ("Krawczyk") purchased the property at 148 West Shore Drive (hereinafter "the Krawczyk Property") on June 27, 2006.

138.   The Krawczyk Property includes a house which was built in 1918 and which was the first house built on the West Shore for year round use. The previous owners of that house and the Krawczyk Property traversed the West Shore Strip to use the Lake for warm water and winter recreational purposes continuously since 1918 and Krawczyk has continuously traversed the West Shore Strip for the same purposes since 2006.

139.   The Krawczyk Property includes a boathouse and dock which are constructed across the West Shore Strip and which have been continuously maintained and used to access the Lake by Krawczyk and/or their predecessors in interest since a date prior to 1980 to present.

140.   Plaintiff, William A. Albright ("Albright") acquired the property at 224 West Shore Drive (hereinafter "Albright Property") from his father, Plaintiff, William W. Albright, on March 7, 2012.  William W. Abright having first acquired the Albright Property on November 15, 1969.

141.   Albright and his familial predecessors in interest have continuously traversed the West Shore Strip to access the waters of the lake for warm weather and winter recreational used since November 15, 1969 to present.

142.   In 1969, the Albright Family constructed a dock, concrete walkway and steps across the West Shore Strip in front of the Albright Property.  Those improvements have been continuously maintained, used, and improved upon from 1969 to present by the owners of the Albright Property.

143.   Plaintiffs, Hai Y. Wang and Chaun Zhang, own a property on West Shore Drive which includes a wooden and concrete dock across the West Shore Strip which they and/or their predecessors in interest have

38

continuously used and maintained to access the Lake for recreational purposes for a period of time dating from 1980 to present.

144.   Plaintiffs, Timothy and Roseanne Clauss ("Clauss"), are the owners of 136 West Shore Drive (hereinafter the "Clauss Property").

145.   Clauss acquired the Clauss Property on August 17, 2011 and since that date has continuously traversed the West Shore Strip for warm water and winter recreational purposes including swimming, boating and skating.  This use is consistent with the use of Clauss's predecessors in interest, who traversed the West Shore Strip to access the Lake for warm weather and winter recreational activities from a date prior to 1980 and continuing until Clauss's acquisition of the Clauss Property.

146.   Prior to ownership by Clauss, the Savitsky family owned the Clauss Property since 1969.  A dock was constructed over the West Shore Strip by the Savitsky family and was continuously used by them since that date until sale of the Clauss Property to Clauss for accessing the Lake for warm water and winter recreational purposes.

147.   Upon purchase of the Clauss Property, Clauss continued to use and maintain the dock which is constructed over the West Shore Strip and continues to do so to date, having redone the dock and added a patio and stone wall in 2012.

148.   Plaintiffs, David D. and Regina M. Clauss ("Clauss"), own a property on West Shore Drive which includes a wooden dock across the West Shore Strip which Clauss and/or their predecessors in interest have continuously used and maintained to access the Lake for recreational purposes for a period of time dating from 1980 to present.

149.   Plaintiffs, Steven Kowalczyk and Karen Barillo ("Kowalczyk"), own a property on West Shore Drive which includes a cantilever dock across the West Shore Strip which Kowalczyk and/or their predecessors in interest have continuously used and maintained to access the Lake for recreational purposes for a period of time dating from 1980 to present.

150.    Plaintiff, Michael Malakin ("M. Malakin"), owns a property on West Shore Drive which includes a boat house across the West Shore Strip which M. Malakin and/or his predecessors in interest have continuously used and maintained to access the Lake for recreational purposes for a period of time dating from 1980 to present.

151.    Plaintiffs, Barbara Gutt and Erik Gutt ("Gutt") purchased the property at 120 West Shore Drive (hereinafter "Gutt Property") in May 2006.

152.    Prior to Gutt's 2006 purchase the Gutt Property was owned by the Gutt Family for 100 years.  Gutt and their familial predecessors in interest have continuously traversed the West Shore Strip to access the Lake for warm weather activities for a period of 55 years continuing to present and for winter activities for a period of 33 years continuing to present.

153.    The Gutt Property is improved by a dock that crosses the West Shore Strip.  The dock has been in place for 33 years and has been continuously maintained and used by the members of the Gutt Family from that date to present.

154.    Plaintiffs, Theodore E. and Linda J. Malakin ("Malakin"), are the current owners of property which has been in the Malakin family for over 100 years.

155.    Malakin and their familial predecessors in title have continuously traversed the West Shore Strip to access the Lake for boating, fishing, swimming, ice fishing, ice skating and ice sailing for a period of 100 years to present.

156.    There are two docks constructed across the West Shore Strip in front of the Malakin Property and Malakin and their familial predecessors in interest have continuously maintained and used these docks to access the lake for the last 50 years continuing to present.

157.    Plaintiffs, Erik J. Gutt, Matthew M. Gutt and Genevive Saylor ("Gutt/Saylor"), own a property on West Shore Drive which includes a concrete and wooden dock across the West Shore Strip which Gutt/Saylor and/or their predecessors in interest have continuously

used and maintained to access the Lake for recreational purposes for a period of time dating from 1980 to present.

158. Plaintiff, Peter A. Lombardi ("Lombardi"), purchased the property at 110 West Shore Drive (hereinafter "Lombardi Property") on July 27, 1994.  Prior to his acquisition of the Lombardi Property, it was held by the Lombardi family since June 2, 1967.

159. Lombardi and his familial predecessors in interest have continuously traversed the West Shore Strip to access the Lake for warm weather and winter recreational activities from 1967 to present.

160. The Lombardi Property includes a dock, retaining wall, and patio seating area across the West Shore Strip in front of the Lombardi Property.  These improvements have been in place and evolved with further improvements since the Lombardi Family's 1967 acquisition of the Lombardi Property.  Lombardi and the Lombardi Family have continuously used and maintained these improvements since 1967 to present.

161. Plaintiff, Robert J. Clauss ("R. Clauss"), purchased the property at 108 West Shore Drive (hereinafter "Clauss Property") on March 29, 1986.

162. Since 1986, R. Clauss has continuously traversed the West Shore Strip to access the Lake for warm weather and winter recreational activities. This use is consistent with the use of his predecessors in interest, who traversed the West Shore Strip to access the Lake for warm weather and winter recreational activities from a date prior to 1980 and ending with his purchase of the Clauss Property.

163. R. Clauss built a permanent cantilevered dock with retaining walls across the West Shore Strip in 1988 and has continuously used and maintained them to access the Lake since their construction.  Their construction replaced prior improvement across the West Shore Strip which were in place prior to 1980 and which were continuously used and maintained by R. Clauss's predecessors in interest.

164. Plaintiff, Helen B. Scott ("Scott"), is the owner of a property on West Shore Drive (hereinafter the "Scott Property").\

165. Scott acquired the Scott Property on May 6, 1954 and since that date has traversed the West Shore Strip to access the Lake for warm weather and winter recreational use.

166. A drainage ditch across the West Shore Strip running in front of the Scott Property was installed by Scott concurrent with her acquisition of the Scott Property.

167. Plaintiffs, Dale and Margaret Quayle ("Quayle"), own a property on West Shore Drive from which they and/or their predecessors in interest have continuously traversed the West Shore Strip to access the Lake for recreational purposes from a date prior to 1980 to present.

168. Plaintiff, Christian Woehrle is the owner of a property on West Shore Drive (hereinafter "Woehrle Property"). Prior to his purchase of the Woehrle Property it was owned by the Lake Ariel Hotel. During the hotel's period of ownership, which predates 1980, the hotel owners and guests continuously traversed the West Shore Strip to access the Lake for warm weather and winter recreational activities. Since his ownership, Woehrle has likewise continuously traversed the West Shore Strip to access the Lake for warm weather and winter recreational activities.

169. The West Shore Property Owners, and their predecessors in title as the result of tacking, have occupied and possessed the West Shore Strip allegedly conveyed to Dring and Asaro pursuant to the Quitclaim Deeds in an open, notorious, visible, hostile and continuous manner, including but not limited to use for access to the Lake, a beach, boathouse, dock and related facilities, for a period in excess of 21 years and therefore hold an easement by prescription by virtue of the doctrine of adverse possession.

170. By reason of the above, any interest Dring and Asaro may have to the West Shore Strip, is subject to an easement by prescription in favor of the West Shore Property Owners and their heirs, personal representatives and assigns.

42

WHEREFORE, the Plaintiffs request that this Court grant declaratory relief and enter an Order declaring that they have a prescriptive easement over the West Shore Strip.

Respectfully submitted,

/s/ Joseph A. O'Brien
Oliver, Price & Rhodes
1212 S. Abington Road
P.O. Box 240
Clarks Summit, PA 18411
Tel: 570-585-1200
Fax: 570-585-5100
jaob@oprlaw.com
*Attorney for Plaintiffs*

p:\brennan\alo1\west shore property owners\federal action (west shore plaintiffs) 950\amended complaint 2015-11-24.docx

## CERTIFICATE OF SERVICE

I, JOSEPH A. O'BRIEN, ESQUIRE, of Oliver, Price & Rhodes, hereby certify that on the 24th day of November, 2015, I served a true and correct copy of the foregoing Amended Complaint pursuant to the Federal Rules of Civil Procedure, addressed as follows:

Rosenn, Jenkins and Greenwald, LLP
Garry S. Taroli, Esquire
Robert N. Gawlas, Jr., Esquire
15 South Franklin Street
Wilkes Barre, PA   18711-0075


/s/ Joseph A. O'Brien
Joseph A. O'Brien, Esquire

44