## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MARJORIE M. GILLESPIE, et al.,

        Plaintiffs,

        v.

LORI DRING AND NANCY ASARO,

        Defendants.

NO. 3:15-CV-00950

JUDGE CAPUTO

## DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS

Defendants, LORI DRING and NANCY ASARO ("Dring/Asaro"), through their attorneys, Rosenn, Jenkins & Greenwald, LLP and Michael Profita, Esquire, submit this Statement of Undisputed Material Facts in support of their Motion for Summary Judgment. The undisputed material facts upon which Defendants rely in support of their Motion for Summary Judgment are as follows:

1.    During the course of the trial of the matter entitled <u>Ariel Land Owners, Inc. v. Lori Dring and Nancy Asaro</u>, United States District Court, Middle District of Pennsylvania, Docket No.: 3-01-CV-0294, a partial settlement of the issues between the parties was agreed upon by the parties, which resulted in a written Settlement Agreement executed on August 28, 2006, by and between the "Property Owners," Ariel Land Owners, Inc. ("ALO"), and Dring/Asaro, a true copy of which is annexed hereto as Exhibit "1" (the "Settlement Agreement").

2.      The Settlement Agreement was amended by the parties on August 21, 2007 and a true copy of the Amendment to Settlement Agreement (the "Amendment") is annexed hereto as Exhibit "2."

3.      Section 3 of the Settlement Agreement provides that "Dring/Asaro agree to execute and deliver to ALO a quit claim deed of all of their right, title and interest in and to the North Strip, subject to a permanent easement to be granted in favor of the Property Owners for access over the North Strip and to maintain docks and/or boathouses on the North Strip."

4.      Section 5 of the Settlement Agreement requires that ALO "shall execute and deliver to Dring/Asaro instruments of conveyance, in recordable form," in favor of Dring/Asaro, transferring four lake rights and a permanent easement over a parcel of land known as Cardinal Lane located at the eastern shore of Lake Ariel, described as a rectangular parcel of land of approximately thirty feet in width along the shoreline and two hundred feet in depth above the shore line (the "Dock Area"). The easement was to permit Dring/Asaro to construct and maintain a dock for the dockage of four boats; to permit the parking of four automobiles on Cardinal Lane; and for storage of removable dock sections on Cardinal Lane.

5.      In Section 5(b) of the Settlement Agreement, ALO warranted to Dring/Asaro that ALO had good and marketable title to the Dock Area, and the right to grant the above described easement to Dring/Asaro.

2

6.      Section 6 of the Settlement Agreement provides that "The Property Owners on the one hand; and Dring/Asaro on the other hand do hereby release the other party and such party's predecessors in title, successors and assigns from any and all claims arising out of or relating to the Lawsuit and the Western Shore Strip including but not limited to claims for compensatory damages, punitive damages, trespass, attorneys' fees, or costs of court."

7.      Section 8 of the Settlement Agreement specifically excepts only the rights and obligations of the parties under the Settlement Agreement from the terms of the release.

8.      Section 13 of the Settlement Agreement provides that it shall be construed and interpreted under the laws of the Commonwealth of Pennsylvania.

9.      Section 15 of the Settlement Agreement provides that "[a]ll Deeds and other instruments referred to herein shall be exchanged by the parties at a mutually convenience (sic) time within 30 days after obtaining the subdivision approval set forth in Section 2 hereof."

10.      The Settlement Agreement was signed by Joseph A. O'Brien, Esquire, as counsel to both ALO and the Property Owners.

11.      The Amendment provides that Section 15 of the Settlement Agreement is deleted and replaced with the following: "…All deeds and other instruments

3

referred to herein shall be exchanged by the parties at a mutually convenient time within thirty (30) days after obtaining the subdivision approval."

12.     The Amendment was also signed by Joseph A. O'Brien, Esquire, as counsel to both ALO and the Property Owners.

13.     In his deposition on September 19, 2016, Mr. O'Brien acknowledged that he represented both ALO and the Property Owners (O'Brien deposition, page 11, lines 8 through 11) and that the Property Owners were bound by the Settlement Agreement as negotiated by his firm. (O'Brien deposition, page 14, lines 3 through 25). Mr. O'Brien admitted that the intention of Section 3 of the Settlement Agreement was that the easement in favor of the Property Owners was to be created in the quit claim deed to be delivered to ALO for the North Strip of West Shore Strip. (O'Brien deposition, page 34, lines 21 through 25, page 35, lines 1 through 25, page 36, lines 1 through 25, and page 37, lines 1 through 15). He further admitted that Section 15 provides that the parties were to exchange the deeds and instruments provided for in the Settlement Agreement at the same time. (O'Brien deposition, page 55, lines 16 through 25, and page 56, lines 1 through 3). The relevant passages from the O'Brien deposition are annexed hereto as Exhibit "3."

14.     The Settlement Agreement does not require Defendants to convey any easement rights directly to the Property Owners.  Instead, Section 3 requires them to execute and deliver a quitclaim deed to ALO, subject to a permanent easement to be

931755.2

granted in favor of the Property Owners. Even if the Settlement Agreement did provide for the conveyance of a permanent easement directly to the Property Owners, however, it would still be subject to the terms of Section 15.

15.    ALO provided Dring/Asaro with a survey of the proposed Dock Area at Cardinal Lane, which was prepared by John M. Hennemuth, dated August 23, 2013, a copy of which is annexed hereto as Exhibit "4."

16.    Dring/Asaro have not received the instruments of conveyance, lake rights, and permanent easement over the Dock Area of Cardinal Lane which they were entitled to receive pursuant to Section 5 of the Settlement Agreement and the Amendment.

17.    ALO purportedly acquired title to Cardinal Lane by virtue of a deed from the Estate of Gladys A. Swingle and her sole heir Robert Allen Swingle (collectively the "Swingles") dated January 12, 2004 and recorded in Wayne County Record Book 2428 at Page 313, (the "ALO Deed") a copy of which is attached as Exhibit "A" to the Affidavit of R. Anthony Waldron, Esq. (the "Waldron Affidavit), which is annexed hereto as Exhibit "5."

18.    However, on February 11, 2002, prior to the execution and delivery of the ALO Deed, the Swingles had conveyed multiple properties in and around Lake Ariel to Salvatore Culotta and Elly Culotta by deed erroneously dated February 11, 2001 and recorded on February 11, 2002 in Wayne County Record Book 1932 at

931755.2

Page 254 (the "Culottas Deed"), a copy of which is attached as Exhibit "B" to the Waldron Affidavit.

19.     The Culottas Deed was mistakenly dated February 11, 2001 but was actually executed and delivered on February 11, 2002. A purchase money mortgage was granted by the Culottas to the Swingles in order to secure a portion of the purchase price for the Culottas Deed, which mortgage was dated February 11, 2002, and is annexed hereto as Exhibit "6." Attached as Exhibit "C" to the Waldron Affidavit, is an Affidavit made by Attorney Waldron, which confirms that the date of February 11, 2001 on the Culottas Deed was a clerical error, and that the Culottas Deed was in fact executed and delivered on February 11, 2002.

20.     The Culottas Deed included a 47-acre parcel of land described as being located along the shore line of Jones Pond, now known as Lake Ariel. The property described as Cardinal Lane, purportedly deeded by virtue of the ALO Deed, is part of the 47 acre parcel that was deeded by the Swingles to the Culottas in the Culottas Deed (Waldron Affidavit, paragraph 4).

21.     By letter dated November 8, 2013, Joseph A. O'Brien, Esq., counsel for ALO and the Property Owners, admitted to counsel for Dring/Asaro that ALO might not have title to Cardinal Lane, and a copy of this letter is annexed hereto as Exhibit "7."

931755.2

22.     In the Summer of 2015, Joseph A. O'Brien, Esq. admitted to Anthony Waldron, Esq., counsel for the Culottas, that ALO did not have good title to Cardinal Lane, and presented to the Culottas a proposed Confirmatory Deed in the Fall of 2015, which would have conveyed any interest in Cardinal Lane held by ALO to the Culottas. (Waldron Affidavit, paragraph 5). A copy of the Confirmatory Deed is attached as Exhibit "D" to the Waldron Affidavit.

23.     However, ALO failed to execute and deliver the Confirmatory Deed after repeated requests by the Culottas, and in March of 2016 the Culottas filed a Quiet Title action against ALO in the Wayne County Court of Common Pleas, Docket No. 137 – CV – 2016 requesting that judgment be entered declaring that the Culottas are the owners of Cardinal Lane. (Waldron Affidavit, paragraph 6). A copy of the Complaint for Quiet Title is attached as Exhibit "E" to the Waldron Affidavit.

24.     On or about July 31, 2015, ALO filed an action against Michael Lehutsky, Esquire, alleging that Mr. Lehutsky represented ALO in the purchase of Cardinal Lane from the Swingles, that Mr. Lehutsky failed to properly search the title for Cardinal Lane, and that ALO had not acquired valid title to Cardinal Lane as a result of the professional malpractice on the part of Mr. Lehutsky. A copy of this Complaint is attached as Exhibit "F" to the Waldron Affidavit.

25.     In his deposition in this matter on October 3, 2016, Mr. Lehutsky admitted that he represented ALO in the 2004 purchase from the Swingles and

931755.2

examined the title to Cardinal Lane. (Lehutsky deposition, page 8, lines 2 through 12), but stated that he never issued a Certificate of Title to ALO confirming that the title acquired by ALO to Cardinal Lane was good and marketable (Lehutsky deposition, page 10, lines 11 to 13). Mr. Lehutsky also testified that he "believed that there were a lot of issues concerning the title to this particular strip of land and just what rights existed" (Lehutsky deposition, page 10, lines 21 to 23). The relevant passages from the Lehutsky deposition are annexed hereto as Exhibit "8."

26.    Mr. Lehutsky further testified at his deposition that he had advised Gordon Florey, the then president of ALO "…listen, you're bottom feeding here. We can get you a claim, but, you know, it's all going to be subject to some determination and litigation at some point." (Lehutsky deposition, page 22, lines 4 to 12).

27.    Theodore Malakin, the President of ALO and a member of its Board of Directors since 2004, testified at his deposition on October 3, 2016 that "according Mr. O'Brien and our title searcher that Mr. Lehutsky bought a pig in a poke. This Swingle guy did not own the property that he sold to us for $20,000, because he was negligent in what he did." (Malakin deposition, page 48, lines 1 to 4). Mr. Malakin further admitted that as of the date of his deposition, ALO was not assured that it had good and marketable title to be able to grant the easement over Cardinal Lane

931755.2

to Dring/Asaro (Malakin deposition, page 104, lines 5 through 8). The relevant passages from the Malakin deposition are annexed hereto as Exhibit "9."

28.    On October 3, 2016, Kathleen Brown, the Treasurer of ALO and a member of the Board of Directors since prior to 2004, admitted at her deposition that ALO could not warrant that it has good and marketable title to Cardinal Lane and the ability to convey the easement over the Dock Area to Dring/Asaro. (Kathleen Brown deposition, page 21, lines 10 to 13; page 23, lines 4 to 7). The relevant passages from the Brown deposition are annexed hereto as Exhibit "10."

29.    ALO also filed a Complaint against Robert Allen Swingle in the Wayne County Court of Common Pleas, Docket No. 447-CIV-2015, a copy of which is attached hereto as Exhibit "11." Count I of this Complaint alleges that Swingle did not in fact own Cardinal Lane when he delivered the deed to ALO on January 12, 2004. Count II of this Complaint alleges that Swingle knew, at the time he delivered the 2004 deed to ALO, that he did not have title to Cardinal Lane since he had previously transferred title in 2001.

30.    Attorney Garry Taroli, counsel for Dring/Asaro, sent a letter dated July 15, 2014 to Joseph A. O'Brien, Esquire, counsel for both ALO and for the Property Owners, demanding adequate assurances that ALO had good and marketable title to the Cardinal Lane parcel and the ability to convey the easement over the Dock Area

931755.2

to Dring/Asaro required under Section 5(b) of the Settlement Agreement. A copy of that letter is annexed hereto as Exhibit "12."

31.     Dring/Asaro were ready, willing, and able to perform under the Settlement Agreement, and Attorney Taroli sent a letter dated October 14, 2014 to ALO, with a copy to Attorney O'Brien and the West Shore Owners, which scheduled a closing to take place on November 18, 2014 for the exchange of the deeds and other instruments required to be mutually exchanged by the parties pursuant to Section 15 of the Settlement Agreement. A copy of this letter is annexed hereto as Exhibit "13."

32.     ALO and the Property Owners failed to appear at the scheduled time of the essence closing, and ALO has never tendered performance of its obligations under the Settlement Agreement.

33.     ALO did not, as of August 28, 2006 or as of November 18, 2014, have good or marketable title to the Cardinal Lane parcel, and did not have the right to grant Dring/Asaro the easement over the Dock Area on Cardinal Lane as required under Section 5(b) of the Settlement Agreement; therefore, ALO breached the warranty of good and marketable title made to Dring/Asaro in Section 5(b) of the Settlement Agreement, and as of November 18, 2014 could not perform its obligation to grant the easement over the Dock Area to Dring/Asaro.

34.     As of the filing of the instant Motion for Summary Judgment, ALO has neither tendered to Dring/Asaro the easement over the Dock Area as required under Section 5(b) of the Settlement Agreement nor acquired good and marketable title to the Cardinal Lane parcel, so as to have the right to grant the easement to Dring/Asaro.

35.     Dring/Asaro are the owners of a parcel of land on the westerly shore of Mud Pond and Lake Ariel consisting of approximately 86 acres (the "Mud Pond Parcel"). As the easement over the Dock Area at Cardinal Lane was to be used by Dring/Asaro in conjunction with their ownership and future development of the Mud Pond Parcel, the easement was a material part of the consideration to be received from ALO under the Settlement Agreement. The Mud Pond Parcel is shown on the survey map dated May 4, 2001 and recorded in Wayne County Map Book 95 at page 42, which is and annexed hereto as Exhibit "14."

36.     Defendants served Plaintiffs with Interrogatories and a Request for Production of Documents and Things ("Document Requests") requesting Plaintiffs to provide information and documents to establish their claim for easements by prescription over the West Shore Strip by virtue of the doctrine of adverse possession. True and correct copies of the Interrogatories and Document Requests are annexed hereto as Exhibits "15" and "16," respectively.

931755.2

37.     After multiple extensions of time were granted, Plaintiffs finally served Defendants with Partial Answers and Supplemental Answers to the Interrogatories, copies of which are annexed hereto as Exhibits "17" and "18," respectively. However, none of the Answers or Supplemental Answers are signed by any of the Plaintiffs.

38.     Plaintiffs also produced some documents responsive to the Interrogatories and Document Requests.

39.     However, the Answers, Supplemental Answers, and documents produced by Plaintiffs fail to establish their right to an easement by prescription across the West Shore Strip by virtue of the doctrine of adverse possession, even had they not released such claims in the Settlement Agreement.

40.     Despite ALO's lack of ownership of the West Shore Strip, ALO and the Property Owners believed ALO had the right to grant permission to use it.  In that regard,  Mr. O'Brien admitted that, as of the negotiation and execution of the Settlement Agreement, the Property Owners had been using the lake, including the West Shore Strip, with the permission of ALO. (O'Brien deposition, page 26, lines 18 through 25, and page 27, lines 1 through 20).

41.     Moreover, the following Plaintiffs have not produced the deeds to the properties they allegedly own on the West Shore nor any deeds in their chain of title for the purposes of tacking: Marie Burge; Christine West; Jennifer O'Shea; Jeffrey

931755.2

Dempsey; Robert Karuzie; Gregory Potochnick; Allan Tadder; Judith Tadder; Peter Dicenso; Lee Conaboy Dicenso; David Mcilnay; Stephen Mcilnay; Cecilia Altier; Brian Gregory; Scott Gregory; Michael Kwiatek; Susan Kwiatek; Henry Lempicky; Cynthia Lempicky; Mona Barber; John Eltringham; Sandra Eltringham; Robert Gilroy; Jean Ann Gilroy; Michael Merrick; William Eagan; Mary Elizabeth Emmel; Kelly Family Trust; Thomas Jackovics; Judith Jackovics; Margaret Kelly; Florence Kelly; Matthew Drace; Jonathan Chernes; Richard Merritt; Lisa Merritt; Susannah Merritt; Grace Merritt; Carol Stoodley-Richards; Ann Stoodley-Teets; Katherine Stoodley-Hopkins; Mary Ellen Stoodley-Kennedy; James Richards; Amy Merritt Easton; Cynthia Merritt Fischer; Stephen Merritt; Martha Merritt-Shugrue; William W. Albright; Steven Kowalczyk; Karen Barillo; Genevieve Saylor; Peter Lombardi; and Christian Woehrle.

42.    The following Plaintiffs have produced a deed or lease to their property, but the deed or lease demonstrates less than twenty-one (21) years of ownership:

    a.  John and Kathryn Nalevanko (purchased in 2002);

    b.  Frank and Sharon Penater (purchased in 1998 and 2009);

    c.  Mark and Dawn Albert (purchased in 2014);

    d.  Hai Wang and Chaun Zhang (purchased in 2009);

    e.  Genevieve G. Saylor and Matthew M. Gutt (purchased in 2017);

    f.  Erik J. Gutt, Genevieve G. Saylor and Matthew M. Gutt (purchased in 2010);

931755.2

g.  Erik Gutt and Barbara Gutt (purchased in 2006);

h.  GCR Lake Ariel, LLC (purchased in 2013).

43.    Michael and Deborah Krawczyk produced only an unrecorded and unnotarized deed.

44.    Matthew Drace and Jonathan Chernes did not produce a deed, and admitted that they purchased their property in 1998, less than twenty-one years ago.

45.    None of the property owners identified in Paragraphs 41, 42, 43, or 44 have produced deeds from their predecessors in interest purporting to convey any inchoate prescriptive easement rights for purposes of tacking, and have produced no evidence that their predecessors used the West Shore Strip in any manner or for how long they may have used the West Shore Strip.  Copies of the deeds and leases referenced in Paragraphs 42 and 43 are collectively annexed hereto as Exhibit "19."

46.    Other Plaintiffs have produced deeds or leases in excess of twenty-one years old; however, those deeds and leases demonstrate that their use of the lake, including the West Shore Strip, was with the permission of ALO. Copies of these deeds, along with the Deed into ALO, and leases are collectively annexed hereto as Exhibit "20."

47.    The deeds and leases annexed hereto as Exhibits "19" and "20" demonstrate that Plaintiffs, to the extent they used the West Shore Strip, did so pursuant to permission, lease, license, indulgence, or special contract.

14

931755.2

48.     The following Plaintiffs have failed to identify any ways in which they have allegedly used the Strip, and/or for how long: Marie Burge; Terrence Dempsey; Joan Dempsey; Christine West; Jennifer O'Shea; Jeffrey Dempsey; Frank Penater; Sharon Penater; Mark Albert; Dawn Albert; Frederick Mitchell; Gregory Potochnick; Peter Dicenso; Lee Conaboy Dicenso; Louis Croce; Lori Ann Giammarusco; Cathy Louise Walker; William T. Taylor; Daniel Capozzi; Christopher Capozzi; Mark Capozzi; Peter Capozzi; Elizabeth Healey; Cecelia Altier; Brian Gregory; Scott Gregory; Mona Barber; John Eltringham; Sandra Eltringham; Robert Gilroy; Jean Ann Gilroy; Michael Merrick; William Eagan; Mary Elizabeth Emmel; Margaret Kelly; Florence Kelly; Lake Ariel Family Partnership, LP; Richard Merritt; Lisa Merritt; Susannah Merritt; Grace Merritt; Carol Stoodley-Richards; Ann Stoodley-Teets; Katherine Stoodley-Hopkins; Mary Ellen Stoodley-Kennedy; James Richards; Amy Merritt Easton; Cynthia Merritt Fischer; Stephen Merritt; Martha Merritt-Shugrue; Richard Gaylord; Michael Krawczyk; Deborah Krawczyk; William A. Albright; William W. Albright; Hai Wang; Chaun Zhang; Robert Clauss; Steven Kowalczyk; Karen Barillo; Michael Malakin; Erik Gutt; Barbara Gutt; Genevieve Saylor; Peter Lombardi; and Christian Woehrle.

49.     The following Plaintiffs merely asserted "warm and cold weather recreational purposes" as their use of the Strip, without any detail: Anthony

Laboranti; Carol Laboranti; Kelly Family Trust; Matthew Drace; and Jonathan Chernes.

50.    Michael and Susan Kwiatek asserted only that the property was used for "recreational purposes."

51.    The following Plaintiffs asserted only occasional use of the Strip during summers: Marjorie Gillespie; Thomas Gillespie; William Hinz; Kathleen Dempsey; Gerard Dempsey; Robert Dempsey; Richard Redling; and Joan Redling.

52.    Richard Gaylord, William A. Albright, Peter Dicenso and Lee Conaboy Dicenso asserted only the construction of a dock on their respective properties, but fail to allege the location of the dock or any use of the Strip.

53.    Ronald Smith asserted only that he maintained his property, and did not identify any uses of the Strip.

54.    Henry and Cynthia Lempicky asserted only summer uses of the Strip, and asserted the winter use of skating only since 1998, less than twenty-one years ago.

Respectfully submitted,

ROSENN, JENKINS & GREENWALD, LLP

BY:    /S/ROBERT N. GAWLAS, JR.
ROBERT N. GAWLAS JR., ESQUIRE
Atty. I.D. No. 46608
GARRY S. TAROLI, ESQUIRE
Atty. I.D. No. 30159
ROBERT L. GAWLAS, ESQUIRE

931755.2

Atty. I.D. No. 323299
15 South Franklin Street
Wilkes-Barre, PA 18711-0075
rgawlas@rjglaw.com
gtaroli@rjglaw.com
(570) 826-5681 – telephone
(570) 706-3436 – facsimile

DECOTIIS, FITZPATRICK, COLE & GIBLIN, LLP

MICHAEL PROFITA
500 Frank W. Burr Blvd., Suite 31
Teaneck, NJ 07666
Telephone:  201-928-1100
Fax: 201-928-0588
MProfita@DeCotiislaw.com

Attorneys for Defendants,
Lori Dring and Nancy Asaro

931755.2