IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARJORIE M. GILLESPIE, et al. | |
| Plaintiffs | No. 3:15-CV-00950 ARC |
| v. | |
| LORI DRING and NANCY ASARO | Judge A. Richard Caputo |
| Defendants | (ELECTRONICALLY FILED) |

**BRIEF OF MARJORIE M. GILLESPIE, ET AL. IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Respectfully submitted,

/s/ Jenna M. Kraycer
Jenna M. Kraycer, Esq.
Attorney I.D. No.: 324116
jmk@oprlaw.com

/s/ Joseph A. O'Brien
Joseph A. O'Brien, Esq.
Attorney I.D. No.: 22103
Email: jaob@oprlaw.com

OLIVER, PRICE & RHODES
1212 S. Abington Road, PO Box 240
Clarks Summit, PA 18411
Phone: (570) 585-1200
Fax: (570) 585-5100

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... iii

COUNTER STATEMENT OF PROCEDURAL HISTORY ...................................................1

COUNTER STATEMENT OF FACTS .........................................................................2

COUNTER STATEMENT OF QUESTIONS INVOLVED ....................................................5

ARGUMENT ......................................................................................................6

CONCLUSION ..................................................................................................25

CERTIFICATE OF WORD COUNT .........................................................................26

CERTIFICATE OF SERVICE .................................................................................27

<u>TABLE OF AUTHORITIES</u>

## Cases

*Acme Markets, Inc. v. Fed. Armored Exp., Inc.*, 648 A.2d 1218, 1220 (Pa. Super. 1994) ........................................................................................................8, 12

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ....................................7

*Boyle v. Soska,* 652 A2d 743 (1995) ....................................................................24

*Carlson v. Arnot-Ogden Memorial Hospital*, 918 F.2d 411, 416 3d. Cir. 1990.......16

*Castle v. Cohen*, 840 F.2d 173, 177 (3d Cir. 1988)................................................8

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ............................................6, 7

*Coregis Ins. Co. v. Baretta & Fenerty, Ltd.*, 264 F.3d 302, 305-06 (3d Cir. 2001) ...7

*Duarte v. Bank of Hawaii*, 287 F.2d 51, 53 (9th Cir. 1961).....................................14

*Flannery v. Stump*, 786 A.2d 255, 258 (Pa. Super. 2001)......................................18

*Galdieri v. Monsantao Co.,* 245 F.Supp 2d. 636, 651 (ED Pa 2002) .....................16

*General Mills, Inc. v. Snavely*, 199 A.2d 540, 543 (Pa. Super. 1964) ....................15

*Jennings v. Del. & Hudson Canal Co.*, 2013 Pa. Super. Unpub. LEXIS 3040, at *13 (Pa. Super. 2013) ...............................................................................................19

*Keefer v. Jones*, 359 A.2d 735, 737 (Pa. 1976).....................................................19

*Loudenslager v. Mosteller*, 307 A.2d 286, 287 (Pa. 1973) ....................................18

*Minteer v. Wolfe*, 446 A.2d 316, 319 (Pa. Super. 1982)..........................................19

*POA Co. v. Findlay Twp. Zoning Hearing Board*, 713 A.2d 70, 76 n. 13 (Pa. 1998) ......................................................................................................................18

*Seabord Surety Co. v. Harbison*, 304 F.2d 247, 249 (7th Cir. 1962) ......................14

*Shaffer v. Baylor's Lake Association*, 141 A.2d 583 (Pa. 1958) .............................23

*Tiggs Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir. 1987) ...................7

*Zeglin v. Gahagen*, 812 A2d. 558 (Pa. 2002).........................................................25

## Other Authorities

24 Am Jur 2d., Adverse Possession § 68; John W. Bruce and Jane W. Ely, the Law of Easements and Licenses In Land (Thompson Reuters 2017) § 68 and § 69 ...19

Restatement of Property § 459.................................................................................19

## Rules

Fed. R. Civ. Pr. 56 ..................................................................................................6

## COUNTER STATEMENT OF PROCEDURAL HISTORY

Plaintiffs filed a Complaint against Defendants on May 15, 2015 (ECF Document 1). Defendants filed a Motion to Dismiss on July 17, 2015 (ECF Document 6), which was granted in part and denied in part on October 6, 2016 (ECF Documents 15 and 16). Defendants filed a Motion for Reconsideration on November 19, 2015 (ECF Document 20), which was granted in part and denied in part on January 19, 2016 (ECF Documents 27 and 28). Plaintiffs filed an Amended Complaint on November 24, 2015 (ECF Document 22). Defendants filed an Answer to the Amended Complaint, which included Affirmative Defenses and Counterclaim on December 23, 2015 (ECF Document 25). Plaintiffs filed an Answer to the Counterclaim on December 29, 2015 (ECF Document 26). Plaintiffs filed a Motion requiring Defendants to make an Election of Remedies and a supporting Brief on May 4, 2016 (ECF Documents 31 and 32). Defendants filed an Affidavit and Brief in Opposition to the Motion to Require Election of Remedies on June 8, 2016 and June 9, 2016 (ECF Documents 37 and 39). The Court denied the Plaintiffs' Motion to require Defendants to make an Election of Remedies in a Memorandum and Order both dated November 8, 2016 (ECF Document 47 and 48). Defendants filed a Motion for Summary Judgment, supporting Brief and documents, and Statement of Material Facts on April 2, 2018 (ECF Documents 61,

1

62 and 64). This Brief in Opposition to Defendants' Motion for Summary

Judgment follows.

<u>COUNTER STATEMENT OF FACTS</u>

This case has its genesis in a long-standing dispute over rights a body of

water in Wayne County, Pennsylvania known as Lake Ariel (the Lake) and Mud

Pond. The parties to this dispute are Plaintiffs, Marjorie Gillespie, et al., a group of

individuals who live on the west shore of the Lake, the Defendants, Lori Dring and

Nancy Asaro, who own a large parcel of property on the west shore of the Lake,

south of Plaintiffs property and also own a strip of land between Plaintiffs' property

and the Lake, and Ariel Land Owners, Inc., (ALO) a Pennsylvania business

corporation which owns the Lake itself.

There was prior litigation between ALO, Dring and Asaro and Plaintiffs.

One of the many issues in the prior litigation was a claim by Dring and Asaro that

Plaintiffs were trespassing over the west shore strip by crossing it to enter into and

use the Lake. Plaintiffs responded that they had acquired a prescriptive easement to

use the west shore strip in conjunction with their recreational rights to the Lake,

which they and their predecessors had obtained from ALO when ALO obtained

ownership of the Lake in 1968.

Some of the issues in the prior litigation were settled. The issues settled were

set forth in a Settlement Agreement dated August 28, 2006. The Settlement

2

Agreement set forth obligations between ALO and Dring and Asaro and separate obligations between Dring and Asaro and Plaintiffs.

As to the obligations owed by ALO to Dring and Asaro, the Settlement Agreement generally required the following: (1) ALO to provide Dring and Asaro with four (4) lake rights; and (2) ALO to provide Dring and Asaro with a permanent easement over the water and a parcel of land at the eastern shore of the Lake at the end of Cardinal Lane. The easement provided by ALO was to allow Dring and Asaro to construct and maintain a dock and, further, to allow for parking of four (4) automobiles on Cardinal Lane.  The size and configuration of the dock was subject to ALO's approval, consistent with customary policies and procedures of ALO.

Dring and Asaro's obligations to ALO were to subdivide the west shore strip into two (2) sections, the north strip and the south strip. The north strip is in front of property owned by the Plaintiffs. The south strip is in front of property owned by Dring and Asaro.  The time for performance in the Settlement Agreement was set at thirty (30) days after Dring and Asaro obtained the subdivision approval necessary to divide the west shore strip into north and south sections.

Subsequently, the Settlement Agreement was amended to provide that the application for approval to subdivide the west shore strip into northerly and southerly sections within 60 days after a final non-appealable decision had been

3

entered in the lawsuit and that the performance should occur within thirty (30) days after obtaining the subdivision approval.

As to the obligations between Dring and Asaro and Plaintiffs, Dring and Asaro were required to convey a permanent easement over the north part of the west shore strip to Plaintiffs in exchange for Plaintiffs' release of all claims against Dring and Asaro.

The Settlement Agreement was not performed. ALO did not provide Dring and Asaro with the various easement rights at Cardinal Lane. Dring and Asaro did not provide ALO with title to the north section of the west shore strip and did not provide Plaintiffs with the prescriptive easement over the north section of the west shore strip.

The nonperformance of the Settlement Agreement resulted in two lawsuits. Dring and Asaro have sued ALO for breach of contract. Dring and Asaro allege that ALO breached the agreement. ALO has counterclaimed that Dring and Asaro breached the Settlement Agreement. Cross motions for summary judgment are pending before the court in Lori Dring and Nancy Asaro v. Ariel Land Owners, Inc., No. 3:15-CV-00478-ARC (ECF documents 32 et seq.)

Plaintiffs have instituted the current suit against Dring and Asaro claiming that: (1) Dring and Asaro breached the terms of the Settlement Agreement by failing to provide them with an easement for the west shore strip; and (2) Plaintiffs

4

have a prescriptive easement over the west shore strip. Dring and Asaro allege that they were not obligated to provide Plaintiffs with an easement over the west shore strip because ALO did not provide them with the Cardinal Lane easement rights, and further, that Plaintiffs have not established their rights to a prescriptive easement and that Plaintiffs have released their prescriptive easement claim in the Settlement Agreement.

## COUNTER STATEMENT OF QUESTIONS INVOLVED

1.     Are Defendants entitled to summary judgment on Plaintiffs' claim set forth in Count I of the Amended Complaint on the grounds that Defendants need not perform their obligation as set forth in the Settlement Agreement to provide Plaintiffs with a prescriptive easement over the west shore strip as a result of ALO's failure to provide Defendants with certain instruments of conveyance that ALO had agreed to provide to them in the Settlement Agreement?

Suggested Answer:   No, because there are genuine issues of material fact involved and Defendants are thus not entitled to summary judgment as a matter of law.

2.     Are Defendants entitled to summary judgment on Plaintiffs' claim set forth in Count II of the Amended Complaint on the grounds that Plaintiffs released Defendants from the prescriptive easement claim in the Settlement Agreement?

5

Suggest Answer:    No, because there are genuine issues of material fact involved and Defendants are thus not entitled to summary judgment as a matter of law.

3.    Are Defendants entitled to summary judgment on Plaintiffs' claim set forth in Count II of the Amended Complaint that Plaintiffs have a prescriptive easement to use the west shore strip on the grounds that "Plaintiffs have not established" that their use of the west shore strip was adverse and continuous for the statutory time period?

Suggested answer:    No, because there are genuine issues of material fact involved and Defendants are thus not entitled to summary judgment as a matter of law.

<u>**ARGUMENT**</u>

A.    **Standard of Review**

Summary judgment is warranted where the pleadings and discovery, as well as any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pr. 56. The moving party has the burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In response, the non-moving party must adduce more than a mere scintilla of evidence in its favor, and cannot simply reassert factually unsupported allegations

6

contained in its pleadings. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ; *Celotex* 477 U.S. at 325. When ruling on a summary judgment motion, the court must construe the evidence and any reasonable inferences drawn from it in favor of the non-moving party. *Anderson*, 477 U.S. at 255; *Tiggs Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir. 1987). In determining whether there exist genuine issues of material fact, all interference must be drawn and all doubts must be resolved in favor of the non-moving party. C*oregis Ins. Co. v. Baretta & Fenerty, Ltd.*, 264 F.3d 302, 305-06 (3d Cir. 2001) citing *Anderson*, 477 U.S. at 248).

B.   **The Court should DENY Defendants' Motion for Summary Judgment as to Count I.**

Defendants, in their Motion for Summary Judgment and corresponding brief, argue that they did not breach the Settlement Agreement by failing to transfer the easement to Plaintiffs because they did not receive the Cardinal Lane instruments of conveyance that they were entitled to under the Settlement Agreement. *See* ECF Document 62 at page 11. There were three (3) parties to the Settlement Agreement: (1) Defendants; (2) Plaintiffs; and (3) ALO. Defendants argue that the failure of ALO to transfer the instruments of conveyance to Defendants voids their obligation to transfer a permanent easement to Plaintiffs. In effect, Defendants present two (2) arguments to support this conclusion: (1) that their obligation to

transfer an easement to Plaintiffs was subject to a condition precedent that ALO convey lake rights and an easement over Cardinal Lane to Defendants; and (2) that they are not obligated to transfer the easement rights to Plaintiffs because of ALO's alleged breach of the Settlement Agreement. *See* ECF Document 62 at page 11.

Defendants' first argument states that ALO's conveyance of the Lake rights and easement over Cardinal Lane was a condition precedent to their conveyance of an easement to Plaintiffs. A condition is an "act or event which must occur before a duty of performance under an existing contract becomes absolute." *Castle v. Cohen*, 840 F.2d 173, 177 (3d Cir. 1988). A condition precedent is a condition which must occur before a duty to perform under the contract arises. *Acme Markets, Inc. v. Fed. Armored Exp., Inc.*, 648 A.2d 1218, 1220 (Pa. Super. 1994). An act or event in a contract will not be construed as constituting a condition unless it is clear that it was the parties' intention to create a condition, either through express language in the contract or otherwise as clearly indicating the parties' intention. *Id*. Conditions precedent are disfavored because the failure to comply with a condition precedent works a forfeiture. *Castle*, 840 F.2d at 177.

Defendants' condition argument was addressed by the Court in a Memorandum and Order dated October 6, 2015. *See* ECF Documents 15 and 16. The Court stated that "because it is not clear that Defendants' obligation to Plaintiffs . . . is conditioned upon ALO satisfying its obligation to Defendants . . .

8

ALO's satisfaction of its obligations to Defendants will not be construed as a condition precedent to Defendants' obligations to Plaintiffs." *See* ECF Document 15. The Court then, in a later Memorandum regarding Defendants' Motion for Reconsideration, permitted Defendants to introduce parol evidence regarding whether the parties intended to create a condition in the Settlement Agreement. *See* ECF Document 27.

Defendants' argument that they are entitled to summary judgment on the condition issue is set forth on pages 4-7 of its Brief in Support of its Summary Judgment Motion. *See* ECF document 62. Despite Defendants' prior acknowledgment that the Settlement Agreement was ambiguous on the condition issue (ECF Document 24) and the Court's Order allowing the Defendants to produce parol evidence on the condition issue (ECF Document 27), Defendants have not supported their summary judgment motion with any parol evidence, never mind parol evidence sufficient to meet the summary judgment standard. The only evidence that the Defendants refer to is the fact that the Settlement Agreement provides that all deeds and conveyances required be transferred at the same time and that counsel for Plaintiffs acknowledged this fact. The requirement that the deeds be transferred at the same time is a provision of the Settlement Agreement which was before the court when it considered these issues in its Memorandums of October 6, 2015 (ECF Document 16) and January 19, 2016 (ECF Document 27). Thus, Defendants have

9

offered no new evidence which would require the Court to change its mind that parol evidence should be admissible on the condition issue and conclude, as a matter of law, that ALO's delivery of the Cardinal Lane easements was a condition of Dring and Asaro's obligation to provide the Plaintiffs with an easement over the north section of the west shore strip.

Moreover, it is clear in the present matter that there is no condition precedent that must be satisfied in order for Defendants to convey a permanent easement over the west shore strip to Plaintiffs despite Defendants' arguments to the contrary. Defendants rely heavily on Section 15 of the Settlement Agreement to demonstrate that their obligation to convey a quitclaim deed to ALO subject to an easement in favor of Plaintiffs was subject to a condition precedent that ALO convey instruments to Defendants conveying the Lake rights and easement over Cardinal Lane. Section 15 of the Settlement Agreement States "[a]ll Deeds and other instruments referred to herein shall be exchanged by the parties at a mutually convenience [sic] time within 30 days after obtaining the subdivision approval set forth in Section 2 hereof". It is thus clear that there is no express language in Section 15 of the Settlement Agreement, nor elsewhere in the Settlement Agreement,[1] demonstrating that ALO's

---

[1] The other relevant sections of the Settlement Agreement are Sections 3, 5, and 6.

performance is a condition precedent to Defendants' obligation to convey a permanent easement over the west shore strip to Plaintiffs.

However, even if this Court finds that there is a condition precedent, under Pennsylvania law, a condition is not enforceable if it would work a disproportionate forfeiture on the parties. Section 229 of the Restatement (Second) of Contracts provides that "to the extent that the non-occurrence of a condition would cause disproportionate forfeiture, a court may excuse the non-occurrence of a condition, unless its occurrence was a material part of the agreed exchange." The notes to Section 229 indicate that in determining whether a forfeiture is disproportionate, "a court must weigh the extent of the forfeiture by the obligee against the importance to the obligor of the risk from which he sought to be protected and the degree to which that protection will be lost if the non-occurrence of the condition is excused to the extent required to prevent forfeiture."

If the Court finds that the condition argued by Defendants exists and that the condition is not excused, Plaintiffs would completely forfeit their agreed-upon exchange with Defendant as a result of the alleged actions or inactions of ALO, even though Plaintiffs have fully performed their obligation to Defendants by granting a release. Simultaneously, Defendants will retain the entirety of the benefit of the release by Plaintiffs and further retain their right to enforce remedies against ALO for its alleged breach. This is exactly the type of disproportionate forfeiture

11

disfavored by the law. *See Acme Markets, Inc.*, 648 A.2d at 1220-22. For that reason, even if the Court were to find that a condition was created by the Agreement, there are sufficient facts in the record to support a claim that such condition should be excused.

In addition to the argument that ALO's failure to provide Dring and Asaro with the Cardinal Lane easement was a failure of a condition. Defendants also claim that it constituted a breach of the Settlement Agreement thereby excusing Defendants from performance. As to whether there was a breach, Plaintiffs refer the Court to, and incorporate herein, the summary judgment record in the case of Lori Dring and Nancy Asaro v. Ariel Land Owners, Inc., No. 3:15-CV-00478. In that case, ALO disputes Defendants' argument that it breached the Settlement Agreement on the grounds that the time for performance had not yet arisen, as the time for performance was set thirty (30) days after subdivision approval was obtained by Defendants herein pursuant to Section 15 of the Settlement Agreement.

Moreover, there are three (3) parties to the Settlement Agreement, and ALO's failure to convey the instruments of conveyance to Defendants does not excuse Defendants from their obligation to provide permanent easements over the west shore strip to Plaintiff*s*. Plaintiffs have fully performed by giving Defendants a release and have not, in any manner, breached the Settlement Agreement. The

12

summary judgment record is clearly susceptible to a conclusion that Defendants' obligations to ALO and Defendants' obligations to Plaintiffs were independent, and that the right of Plaintiffs to an easement over the west shore strip was not dependent on ALO's performance of its obligations to Defendants. The record contains no evidence that Plaintiffs control ALO, nor that Plaintiffs had the right or ability to require ALO to perform its obligations to Defendants.

Defendants argue that the conveyances of both the quitclaim deed to ALO and the conveyance of the permanent easement to Plaintiffs were to be in one (1) deed, and because of ALO's failure to provide Defendants with an easement over Cardinal Lane, the entire Agreement cannot now be performed. The Settlement Agreement, however, does not require one (1) deed and it would be unusual that the conveyance of the fee title to Dring and Asaro and an easement to Plaintiffs over the same property would be by necessity in the same deed. While it may have been anticipated by some that there would have been one (1) deed, it is by no means an essential element of the Settlement Agreement. Moreover, the testimony of James Gillotti, Esquire, an attorney who participated in the drafting of the Settlement Agreement, which is Exhibit "C" to the Malakin Affidavit, indicates that the preferred way to consummate the transfer of the various interests in the west shore strip would be by separate deeds.

13

**A. The Court should DENY Defendants' Motion for Summary Judgment as to Count II.**

   **a. Release**

Rule 8 of the Federal Rules of Civil Procedure provides that "a party shall set forth affirmatively . . . release and any other matter constituting an . . . affirmative defense." FRCP 8. Rule 12(b) of the Federal Rules of Civil Procedure requires that "[e]very defense to a claim for relief must be asserted in the responsive pleading if one is required." FRCP 12. It is clear from the language of the Federal Rules that the defense of release must be affirmatively set forth in the pleadings. The defense of release is not put in issue by denials to the complaint. *Seabord Surety Co. v. Harbison*, 304 F.2d 247, 249 (7th Cir. 1962). A mention of the word "release" in a single sentence without supporting factual allegations does not constitute adequate pleading of the defense of release. *Duarte v. Bank of Hawaii*, 287 F.2d 51, 53 (9th Cir. 1961).

In Defendants' Answer to Plaintiffs' Amended Complaint, Defendants do not rely on the affirmative defense of release in any manner. *See* ECF Document 25 at pages 12-16. The only mentions of the world "release" in the Defendants' Affirmative Defenses are in relation to Plaintiffs' assertion of a quid pro quo of the release for the easement. *See Id*. at ¶¶ 5 and 20. It is clear under the Federal Rules of Civil Procedure that release must be affirmatively pleaded. As Defendants did not

14

affirmatively plead the defense of release, Defendants should not be permitted to rely on such defense.

However, even assuming that the defense of release has adequately been pled by Defendants, the release is unenforceable. A release requires consideration, which is defined as a benefit to the promisor or a loss or detriment to the promisee. *General Mills, Inc. v. Snavely*, 199 A.2d 540, 543 (Pa. Super. 1964). The intent of the Settlement Agreement was that Plaintiffs were executing a release of claims in exchange for the permanent easement over the west shore strip from Defendants. *See* Deposition of Joseph A. O'Brien, Esq., Monday, September 19, 2016, at page 52-53 ("the intent of the parties was that . . . Dring and Asaro would give the Property Owners an easement over the west shore strip and that the Property Owners would then release Dring and Asaro. So certainly there was an understanding that the – the consideration would pass. . .. [The] release would be contingent on the performance and . . . the performance never occurred."). In other words, the benefit to the promisors (Plaintiffs) in executing the release was the conveyance of a permanent easement over the west shore strip. As Defendants failed to convey the easement which served as consideration for Plaintiffs' promises to release Defendants from any and all liability concerning the west shore strip, the release is unenforceable. There is clearly a question of fact on this issue presented by the record.

In addition, Plaintiffs submit that under the present circumstances, Defendants would be estopped from enforcing the release. Equitable estoppel is rooted in the notion that a person may be estopped by the persons own conduct and statements. *Galdieri v. Monsantao Co.,* 245 F.Supp 2d. 636, 651 (ED Pa 2002). Equitable estoppel prevents one from doing an act differently than the manner in which another was induced by word or deed to expect as a doctrine sounding in equity. *Id.* Equitable estoppel recognizes that representations that leads another to justifiably rely thereon may be enforced in equity. *Id.* Equitable estoppel may be used to estop a defendant from asserting a particular defense in an action. *Carlson v. Arnot-Ogden Memorial Hospital*, 918 F.2d 411, 416 (3d. Cir. 1990). *Galdieri v. Monsantao*, *supra*.

Plaintiffs submit that there is a question of fact in this case as to whether they gave up their rights to a prescriptive easement in return for Defendants' promise to grant them an easement by deed. *See* Malakin Affidavit. Thus, the record presents a factual issue as to whether the release is unenforceable under a theory of equitable estoppel.

Lastly, the language of the Settlement Agreement is ambiguous as to whether Plaintiffs' prescriptive easement claim is barred. Section 6 of the Settlement Agreement provides "[t]he Property Owners on the one hand; and Dring and Asaro on the other hand do hereby release the other party and such party's predecessors in title, successors and assigns from any and all claims arising out of or relating to the

16

Lawsuit and the west shore strip . . .". However, Section 8 of the Settlement Agreement excludes certain matters from the scope of the release, providing that "the respective rights and obligations of the parties under this Agreement are specifically excepted from the terms of any release granted to any party." Clearly, the easement to access the Lake through the west shore strip was the motivating factor behind the grant of the release by Plaintiffs and it was a primary obligation of the Defendant under the Settlement Agreement. Further, Section 9 addresses claims that were to be dismissed with prejudice but does not include Plaintiffs' claims for prescriptive easements over the west shore strip. The parties' intention in drafting the Settlement Agreement in this manner demonstrates that if the Settlement Agreement was not performed, Plaintiffs' claims for prescriptive easements could be reinstated. The fact that the parties dismissed other claims with prejudice, such as the ones against Plaintiffs in Section 9, further demonstrates that if the Settlement Agreement was intended to eliminate Plaintiffs' prescriptive easement claim, such claims would have been dismissed with prejudice. The ambiguity of the Settlement Agreement as to the scope of the release raises a genuine issue of material fact to be decided by the factfinder at trial.

**b.  Prescriptive Easement**

17

Plaintiffs claim a prescriptive easement over the west shore strip to enable them to access the Lake. Defendants seek summary judgment on the grounds that the record does not establish Plaintiffs' claim. Initially, it should be pointed out that the standard suggested by Defendants is erroneous. Plaintiffs are not required to establish the claim at this stage of the proceedings. Plaintiffs are only required to produce evidence sufficient to demonstrate that there exists a material question of fact on their claim.

A prescriptive easement is created by "adverse, open, continuous, notorious, and uninterrupted use of land for the prescriptive period – in Pennsylvania, twenty-one years." *POA Co. v. Findlay Twp. Zoning Hearing Board*, 713 A.2d 70, 76 n. 13 (Pa. 1998). Defendants first argue that Plaintiffs cannot establish the adversity element of a prescriptive easement. Proof of an open, notorious, continuous, uninterrupted use and enjoyment for the statutory period, without evidence to explain how the use began, raises a presumption of adversity. *Loudenslager v. Mosteller*, 307 A.2d 286, 287 (Pa. 1973). If the use of the land is the result of a license, lease, indulgence, or special contract given by the owner, the use is not adverse. *Flannery v. Stump*, 786 A.2d 255, 258 (Pa. Super. 2001). However, it is clear that an "individual can't be prevented from obtaining a prescriptive easement over a piece of land because someone who had no legal right to that land gave them 'permission' to be there." *Jennings v. Del. & Hudson Canal Co.*, 2013 Pa. Super.

18

Unpub. LEXIS 3040, at *13 (Pa. Super. 2013), attached hereto as Exhibit A. Defendants argue that the leases given by ALO to various property owners on the west shore strip defeats the element of adversity as Plaintiffs (mistakenly) believed that they had permission to use the property. To the contrary, it is clear that only an owner can give permission to use property. As Defendants have not given Plaintiffs any type of legal permission to use the property, there is a question of fact as to the element of adversity.

Further, Defendants argue that Plaintiffs cannot establish that their use of the west shore strip has been continuous for the statutory period. Continuous possession need not be constant or unceasing in order to support an adverse possession claim; rather, continuity is established if the evidence shows a settled course of conduct indicating an attitude of mind on the part of the user that the use is the exercise of a property right. *Keefer v. Jones*, 359 A.2d 735, 737 (Pa. 1976); 24 Am Jur 2d., Adverse Possession § 68; John W. Bruce and Jane W. Ely, the Law of Easements and Licenses In Land (Thompson Reuters 2017) § 68 and § 69. A nonconstant use may be considered continuous when the use is made as the occasion may demand without a break in the attitude of the user that marks an adverse use. *Minteer v. Wolfe*, 446 A.2d 316, 319 (Pa. Super. 1982); *see also* Restatement of Property § 459. The continuity must be sufficient to signal to the true owner that a claim of title contrary to his own is being asserted.

19

The evidence of record that establishes continuity is set forth in the Affidavit of Theodore Malakin submitted with this Brief. The Lake and Mud Pond is a stream and spring fed body of water in Wayne County, Pennsylvania. There is a dam in the southeasterly corner of the Lake. The dam includes a weir which is used to regulate the water level in the Lake. When the water is in place, the water level of the Lake rises to 1425.9 feet above sea level. When the weir is removed, the water level of the Lake recedes to 1423.5 feet above sea level. *See* Malakin Affidavit.

ALO acquired the Lake by deed in 1968. At that time, ALO and the residents along the west shore believed that ALO owned the entire Lake including what is now referred to as the west shore strip. After obtaining ownership of the Lake, ALO continued the practice of prior owners and charged property owners along the Lake, including those on the west shore, an annual fee to use the Lake. All of the west shore property owners, including Plaintiffs, have paid the fee and maintained their rights from that time to the present date. *See* Malakin Affidavit.

Plaintiffs in this case are the owners of separate properties on the Lake. For over 21 years, the Plaintiffs have continued to maintain their waterfronts with improvements including walkways, patios and seawalls, and docks. The seawalls and docks are constructed within the west shore strip and extend across the west shore strip to the part of the Lake owned by ALO. The only access that the west

shore property owners have to the Lake is to cross the west shore strip. *See* Malakin Affidavit.

In 2001, Dring and Asaro filed suit in the United States District Court for the Middle District of Pennsylvania, claiming that they owned the west shore strip. This was the first time that ALO, the west shore property owners, or any of the past west shore property owners knew of the existence of the west shore strip or of its separate ownership. *See* Malakin Affidavit. The existence in history of the west shore strip, and its acquisition by Dring and Asaro are detailed in three (3) opinions by Judge Caputo dated September 30, 2005, January 18, 2008, and August 13, 2008 in the case of Ariel Land Owners, Inc. v. Lori Dring and Nancy Asaro et al., No. 3:01-CV-00294. In Judge Caputo's opinion of January 18, 2008, Judge Caputo concluded that the Dring and Asaro owned the west shore strip and that it was two and one-half (2.5) feet in width. In his opinion of August 13, 2008, after a motion for reconsideration was filed, Judge Caputo held that the width of the west shore strip varied, and that it was located on the west shore of the Lake between 1423.5 and 1423.9 feet above sea level. Malakin, in his Affidavit, estimates the width of the west shore strip to be between zero (0) feet (in the case of a vertical seawall/shoreline, the difference between the high water mark and the margin of the Lake is a point on the vertical) and five (5) feet (where the shoreline is flatter).

21

In his Affidavit, Malakin also stated that he has observed all of the west shore property owners other than Taylor, Scott and Woehrle use the Lake for recreational purposes on a regular basis for over twenty-one (21) years. The use has been regular because it is frequent, i.e. throughout the warm weather months, repeated and continual, because it has occurred for more than fifty (50) years, and recurrent and periodic, because it has occurred, weather permitting, during the appropriate seasons. Malakin also pointed out that in order to use the Lake from their properties, the west shore property owners have been required to cross the west shore strip, and to his knowledge, have always done so.

There is evidence in the summary judgment record of the following: 1) that Plaintiffs purchased, on an annual basis, their right to access and use the Lake from their property; 2) that Plaintiffs' only access to the Lake was over the west shore strip; 3) that Plaintiffs and their predecessors used the Lake for recreational purposes on a regular basis; 4) that Plaintiffs have constructed and maintained permanent improvements including walkways, seawalls, docks and patios leading to and within the west shore strip; 5) that the west shore strip has been Plaintiffs' only access to the Lake from their properties; and 6) that all of the above have continued for a period in excess of 20 years. Plaintiffs submit, therefore, that the record presents a question of fact as to whether their use of the west shore strip has been continuous.

Defendants argue that pursuant to *Shaffer v. Baylor's Lake Association*, 141 A.2d 583 (Pa. 1958), Plaintiffs cannot establish the continuity element of a prescriptive easement through seasonal use of the Lake. Plaintiffs submit that Defendants' reliance on *Shaffer* is misplaced. In *Baylor's Lake*, the Pennsylvania Supreme Court noted that "[t]he nature of the easement, whether it is seasonal, periodical, or for all periods of the year, the frequency and the extent of the user, its definiteness, and its location in city or rural districts are all important factors in a determination of whether an easement exists." *Baylor's Lake*, 141 A.2d at 587. The Court further noted that the law is not so unreasonable as to require use in literal continuity. *Id*. The Court found that the plaintiff therein established, among other things, a prescriptive easement to swimming and boating within a reasonable distance of her land and a prescriptive easement to her dock. *Id*.

Defendants also argue that those Plaintiffs that have not owned their properties for more than twenty-one (21) years cannot prevail on the prescriptive easement issue because they are not legally entitled to tack the time that their predecessors utilized the west shore strip.

In Paragraph 42 of Defendants' Statement of Material Facts, the Defendants identify the following Plaintiffs that fall as falling into that category: (1) John T. and Kathryn D. Nalevanko; (2) Frank R. and Sharon D. Penetar; (3) Mark J. and Dawn H. Albert; (4) Hai Y. Wang and Chaun Zhang; (5) Genevieve G. Saylor; (6)

23

Mathew M. Gutt; (7) Erik J. Gutt and Barbara Gutt; (8) GCR Lake Ariel, LLC; (9) Michael and Deborah Krawczyk; and (10) and Matthew Drace and Jonathan S. Chernes. Defendants' argument is based on the case of *Baylor v. Soska*, 652 A.2d 743 (Pa. Super. 1995), which they contend stands for the proposition that a successor cannot tack onto a predecessors' use. Defendants argue that Plaintiffs cannot tack onto their predecessors' use unless the deeds from their predecessors made reference to the area over which the prescriptive easement is claimed.

To the contrary, there is ample evidence to demonstrate that the Plaintiffs who have not themselves owned the property for twenty-one (21) years, can tack onto their predecessors-in-interest uses to establish the twenty-one (21) year prescriptive period. *See* Exhibit B, attaching the deeds in each Plaintiff's chain of title. These Plaintiffs can establish through their chains of title that their predecessors in interest conveyed to them either ownership or right of access to the margin of the Lake. *See id.* By way of example, the deeds in Nalevanko's chain of title indicate that his property extends to the margin of the Lake, and the deeds and the property of the other Plaintiffs listed in paragraph 42 also grant them a right of access to the margin of the Lake. As indicated above, in Judge Caputo's Opinions in the prior litigation, No. 3:01-CV-00294, of January 18, 2008 and August 13, 2008, the west shore strip was established as the property between the high water mark (1425.9 feet above sea level) and the margin of the Lake (1423.5 feet above

24

sea level). Thus, a conveyance of the property to the margin of the Lake, or to the

property of ALO, in a predecessor's deed would at least arguably refer to any rights

that predecessors had over the west shore strip. Thus, the record contains a

question of fact on the tacking issue. Moreover, in *Zeglin v. Gahagen*, 812 A2d.

558 (Pa. 2002), the Pennsylvania Supreme Court suggested that deed references

may not be necessary to establish tacking when, as in this case, when there are

permanent improvements on the claimed property, which make "obvious" the fact

that another party asserts rights to the property.

## CONCLUSION

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court deny

Defendants' Motion for Summary Judgment.

Respectfully submitted,

/s/ Jenna M. Kraycer
Jenna M. Kraycer, Esq.
Attorney I.D. No.: 324116
jmk@oprlaw.com

/s/ Joseph A. O'Brien
Joseph A. O'Brien, Esq.
Attorney I.D. No.: 22103
Email: jaob@oprlaw.com

OLIVER, PRICE & RHODES
1212 S. Abington Road, PO Box 240
Clarks Summit, PA 18411
Phone: (570) 585-1200
Fax: (570) 585-5100

25

<u>**CERTIFICATE OF WORD COUNT**</u>

Pursuant to L.R.7.8(b)(2), the undersigned certifies that the Brief in

Opposition to Defendants Motion for Summary Judgment contains 4,953 words.


/s/Joseph A. O'Brien

Joseph A. O'Brien, Esquire

### CERTIFICATE OF SERVICE

I, **JOSEPH A. O'BRIEN, ESQUIRE**, of Oliver, Price & Rhodes, hereby certify

that on this date, I caused the foregoing BRIEF IN OPPOSITION via the Court's ECF

system on all counsel of record as authorized under Federal Rule 5(b)(2)(E) and

local rule 5.6 of the United States District Court for the Middle District of

Pennsylvania. I further certify that all counsel of record in the case, but for the

Plaintiff, are registered CM/ECF users and that service will be accomplished by the

CM/ECF system.

Rosenn, Jenkins and Greenwald, LLP
Robert N. Gawlas, Jr., Esquire
15 South Franklin Street
Wilkes Barre, PA   18711-0075

/s/Joseph A. O'Brien
Joseph A. O'Brien, Esquire

P:\O'BRIEN, JOE\ARIEL LAND OWNERS\Gillespie, et al vs. D&A-950\Pleadings\Brief in Opp Summary Judgment.docx