# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARJORIE M. GILLESPIE, *et al.*, | |
| Plaintiffs, | NO. 3:15-CV-0950 |
| v. | (JUDGE CAPUTO) |
| LORI DRING and NANCY ASARO, | |
| Defendants. | |

## **MEMORANDUM**

Presently before me is a Motion for Summary Judgment (Doc. 61) filed by Defendants Lori Dring and Nancy Asaro. Dring and Asaro's Motion will be granted, and judgment entered in their favor on both Counts of Plaintiff Property Owners' Amended Complaint (Doc. 22).

## I. Background

The parties are familiar with the factual background of this long-standing dispute over property rights at Lake Ariel in Wayne County, Pennsylvania. I summarize here only the undisputed facts, viewed in the light most favorable to the non-movant Property Owners, necessary for resolving Dring and Asaro's Motion (for simplicity, I will refer to Defendants Dring and Asaro collectively as "Dring").

The Property Owners own land on the west side of Lake Ariel. Dring owns land south of the Property Owners' land, and also owns a strip of land between the Property Owners' land and the lake. This strip of land is called the Western Shore Strip. A private organization called the Ariel Land Owners ("ALO") owns the lake itself.

Nearly two decades ago, Dring, ALO, and the Property Owners became embroiled in litigation over property rights at the lake, which culminated in a 2006 settlement agreement. The agreement provided, among other things, that ALO and Dring release claims against each other, and that the Property Owners and Dring release claims against each other "arising out of or relating to the Lawsuit and the Western Shore Strip." (Doc. 64-1 at 4). Per the settlement, Dring was to subdivide the Western Shore Strip into two

parcels—the North Strip and the South Strip. (*Id.* at 2). Section 3 of the agreement requires Dring to "execute and deliver to ALO a quit claim deed . . . to the North Strip, subject to a permanent easement to be granted in favor of the Property Owners for access over the North Strip and to maintain docks and/or boathouses . . . ." (*Id.*). In Section 5 ALO was to, among other things, grant Dring a permanent easement over a nearby property called Cardinal Lane. (*Id.* at 2-3).

Joseph O'Brien, counsel for both the Property Owners and ALO during the settlement agreement's drafting, admitted that the "intention of Section 3 . . . was that the easement in favor of the Property Owners was to be created in the quit claim deed to be delivered to ALO for the North Strip . . . ." (Doc. 64 at ¶ 13; Doc. 75 at ¶¶ 1-13 (admitted by the Property Owners)). O'Brien "further admitted that Section 15 provides that the parties were to exchange the deeds and instruments provided for in the Settlement Agreement at the same time." (*Id.*).

At the time of formation of the settlement agreement, ALO (if not all parties to the settlement) believed it had good title to Cardinal Lane. ALO received the deed to the property from the Swingles, which was dated January 12, 2004 and recorded in Wayne County soon thereafter. (Doc. 64 at ¶ 17; Doc. 75 at ¶ 17). However, the Swingles conveyed the same property to the Culottas via a deed dated February 11, 2002 and recorded in Wayne County on the same date. Joseph O'Brien admitted to Dring's counsel on November 8, 2013 that "ALO's ability to convey the Cardinal Lane easement had been challenged." (Doc. 75 at ¶ 22). Since then, the Court of Common Pleas of Wayne County has determined that the Culottas have title to Cardinal Lane, not ALO. (Doc. 94-2 at 7-8). It seems that the Culottas are unwilling to negotiate with ALO. (Doc. 75 at ¶ 22).

On Dring's Motion to Dismiss (Doc. 6), I ruled that ALO's granting an easement to Dring over Cardinal Lane was not clearly a condition precedent to Dring's obligation "to convey to ALO a quitclaim deed to the North Strip subject to a permanent easement to be granted in favor of [the Property Owners]." (Doc. 15 at 9). I also ruled, in granting Dring's Motion to Reconsider (Doc. 20), that Dring could try to show through parol evidence that

ALO's performance was in fact a condition precedent to Dring's performance. (Doc. 27). In other words, absent parol evidence to the contrary, Dring had to deliver the North Strip deed with the Property Owners' easement even though ALO might have breached; the Property Owners, in releasing their claims against Dring, had fully performed. (Doc. 15 at 10).

The most recent ruling concerning this dispute was my August 16, 2018 ruling in a related case between Dring and ALO. *Dring v. Ariel Land Owners, Inc.*, No. 3:15-CV-00478, 2018 WL 3934623 (M.D. Pa. Aug. 16, 2018). On cross-motions for summary judgment, I determined that while Dring had not yet performed on the settlement agreement by subdividing the Western Shore Strip, Dring was excused from doing so because ALO had repudiated the agreement by, among other things, failing to obtain marketable title to Cardinal Lane. *Id.* at *7-8. ALO's repudiation, I held, "made it futile for Dring . . . to satisfy the condition precedent" of subdividing the Western Shore Strip into the North Strip and South Strip. *Id.* at *8. As such, Dring is "shielded from a claim that [she] breached the Settlement Agreement[,] because it would have been futile to satisfy the condition precedent." *Id.* I also held that Dring could not pursue a breach of contract claim against ALO because Dring's failure to subdivide the Western Shore Strip was not caused by ALO's repudiation. *Id*.

On July 17, Dring requested oral argument on her Motion for Summary Judgment pursuant to Local Rule 7.9. (Doc. 95). Oral argument was held on September 14, 2018.

The Motion has been fully briefed and is now ripe for review.

## II. Legal Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A court may grant a motion for summary judgment if, after it considers all probative materials of record, with inferences drawn in favor of the non-moving party, the court is satisfied that there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Chavarriaga v. N.J. Dep't of Corrs.*, 806 F.3d 210, 218 (3d Cir. 2015) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986)); *Brooks*

3

*v. Kyler*, 204 F.3d 102, 105 n.5 (3d Cir. 2000)). "A fact is 'material' under Rule 56 if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law. A dispute over a material fact is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter . . . ." *American Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 587, 581 (3d Cir. 2009) (citing *Anderson*, 477 U.S. at 248-49).

The moving party bears the initial burden to identify "specific portions of the record that establish the absence of a genuine issue of material fact." *Santini*, 795 F.3d at 416 (citing *Celotex*, 477 U.S. at 323). If this burden is satisfied by the movant, the burden then "shifts to the nonmoving party to go beyond the pleadings and 'come forward with specific facts showing that there is a genuine issue for trial.'" *Id*. (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The non-movant's burden is not satisfied by "simply show[ing] that there is some metaphysical doubt as to the material facts." *Chavarriaga*, 806 F.3d at 218.

### III. Discussion

**A.　Count One—Breach of Contract**

Count One of the Property Owners' Amended Complaint alleges Dring breached Section 3 of the settlement agreement by failing to convey to them easements over the North Strip. The first issue is thus whether Dring is still obligated to perform under Section 3. Dring argues that she does not need to convey the North Strip via quitclaim deed to ALO subject to the Property Owners' easements because ALO cannot convey to Dring easements over the Cardinal Lane property in return. (Doc. 62 at 4-7). From Dring's perspective, as Joseph O'Brien and the Property Owners admitted, the intention of the settlement agreement was for the Property Owners' easements to be contained in the quitclaim deed to the North Strip, and the various deeds and easements were to be exchanged at the same time per Section 15 of the agreement. (*Id.*; Doc. 64 at ¶ 13).

4

The Property Owners make a number of arguments in response. First, the Property Owners cast Dring's argument as a rehashing of the condition precedent argument that I previously rejected (at least partially) on Dring's Motion to Dismiss. (Doc. 76 at 8-10). Second, even if ALO's performance were a condition precedent, the Property Owners contend that enforcing the condition would work a disproportionate forfeiture. (*Id.* at 11-12). Third, the Property Owners argue that because they have performed, they are entitled to Dring's performance regardless of ALO's failure to convey easements over Cardinal Lane. (*Id.* at 12-13). And fourth, the Property Owners submit that title to the North Strip and the Property Owners' promised easements did not need to be conveyed in the same instrument. (*Id.* at 13).

The first question is whether there is a genuine dispute of material fact as to the intent of the parties as embodied in the settlement agreement. While Sections 15 and 3 of the agreement were ambiguous before, Joseph O'Brien's testimony and the Property Owners' admissions make the agreement, and the parties' intent, clear. Performances were to be exchanged simultaneously under Section 15, with the exception of Dring's obligation to obtain subdivision approval. And under Section 3, title to the North Strip and the Property Owners' easements were to be conveyed in the same instrument, despite the Property Owners' contention that James Gillotti (another attorney who helped draft the settlement agreement) indicated "that the preferred way to consummate the transfer of the various interests in the west shore strip would be by separate deeds." (Doc. 76 at 13). Gilotti's testimony does not create a genuine dispute: the fact that separate deeds would be the "preferred way" to transfer property rights does not mean the settlement agreement permits such an arrangement. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts").

The next question, then, is whether Dring's performance is excused. Dring's argument is more persuasive here as well, and there are two grounds why. First, as I held in *Dring v. Ariel Land Owners, Inc.*, No. 3:15-CV-00478, 2018 WL 3934623 (M.D. Pa. Aug.

5

16, 2018), ALO's repudiation of the agreement "discharges [Dring's] remaining duties to render performance." Restatement (Second) of Contracts § 253(2) (1981). It logically follows that if Dring is excused from subdividing the Western Shore Strip into the North Strip and South Strip, she is also excused from delivering to ALO a deed to the North Strip subject to an easement to be granted in favor of the Property Owners. Second, Dring's duty to perform is excused under the constructive condition of exchange, which provides "substantial performance of one party's obligations under a contract is deemed an implied condition to the other party's duty to perform under the contract." *Marsa v. Metrobank for Sav., F.S.B.*, 825 F. Supp. 658, 665 n.7 (D.N.J. 1993) (citing E.A. Farnsworth, *Contracts*, § 8.9 (2d ed. 1990)). Under this doctrine, ALO's failure to substantially perform means the implied condition to Dring's duty to perform has not been triggered. Either way, Dring's Section 3 obligations have been excused because of ALO's breach.

Last is the Property Owners' forfeiture argument. Pennsylvania has adopted the Second Restatement's position on forfeitures: "To the extent that the non-occurrence of a condition would cause disproportionate forfeiture, a court may excuse the non-occurrence of that condition unless its occurrence was a material part of the agreed exchange." *Acme Markets, Inc. v. Fed. Armored Exp., Inc.*, 648 A.2d 1218, 1221 (Pa. Super. Ct. 1994) (quoting Restatement (Second) of Contracts § 229 (1981)). As discussed before, ALO's failure to obtain marketable title to Cardinal Lane amounted to a repudiation of the settlement agreement. So Dring receiving the performance she bargained for—an easement over Cardinal Lane—is a "material part of the agreed exchange." Put another way, I cannot rewrite the agreement to shift the forfeiture from the Property Owners to Dring when ALO is the only party in breach.

The Property Owners' breach of contract claim alleged in Count One of the Amended Complaint thus fails as a matter of law, and judgment will be entered in Dring's favor.

**B.    Count Two—Prescriptive Easements**

The next issue is whether the Property Owners may bring their prescriptive easement claims. The Property Owners argue in their brief that (1) Dring failed to properly plead the

6

release as an affirmative defense (Doc. 76 at 14-15); (2) since Dring has failed to convey the easements, the release is unenforceable for failure of consideration (*id.* at 15); (3) Dring is equitably estopped from enforcing the release (*id.* at 16); and (4) the language of the release is ambiguous as to whether it covers the prescriptive easement claims (*id.* at 16-17). Dring responds that (1) she pled release in her answer, or even if she did not, the Property Owners are not prejudiced by the defense (Doc. 94 at 12-13); (2) the Property Owners received sufficient consideration for their release in the form of Dring's own release (*id.* at 14); (3) equitable estoppel is inapplicable (*id.* at 15-16); and (4) the release is unambiguous and covers the prescriptive easement claims (*id.* at 16).

The threshold issues here are whether Dring has waived the defense of release, and whether the release covers these claims. First, Dring did not waive the defense of release. It is true that Dring failed to plead release as an affirmative defense in her answer. Although it mentions the existence of the Property Owners' release, the answer does not state the prescriptive easement claims are barred by the release. (Doc. 25 ¶¶ 20-27); *see G.R. Sponaugle & Sons, Inc. v. Hunt Const. Grp., Inc.*, 366 F. Supp. 2d 236, 242 (M.D. Pa. 2004) (citing *Eddy v. Virgin Islands Water & Power Authority*, 256 F.3d 204, 209 (3d Cir. 2001)). Despite this, the defense of release has not been waived because Dring raised it "at a pragmatically sufficient time, and [the Property Owners are] not prejudiced in [their] ability to respond," both because the defense of release presents a question of law and because the Property Owners have not asserted any prejudice. *Eddy*, 256 F.3d at 209 (quotation omitted); *see G.R. Sponaugle & Sons, Inc.*, 366 F. Supp. 2d at 242. So Dring may rely on the Property Owners' release despite failing to plead it as an affirmative defense.

Next is whether the release is ambiguous. "In Pennsylvania, it is well settled that the effect of a release is to be determined by the ordinary meaning of its language." *Taylor v. Solberg*, 778 A.2d 664, 667 (Pa. 2001). If the language is clear and unambiguous, a court must only look to that language in interpreting the release, regardless of its breadth or the harsh effect it may have on a party. *Id.* Here, the language of the release is clear and unambiguous: Section 6 of the agreement provides that "[t]he Property Owners on the one

7

hand; and Dring/Asaro on the other hand hereby release the other party . . . from any and all claims arising out of or relating to the Lawsuit and the Western Shore Strip including but not limited to claims for [damages], trespass, attorneys fees, or costs of court." (Doc. 64-1 at 4). The Property Owners claim prescriptive easements over the Western Shore Strip, (Doc. 22 at 22-43), which are claims "relating to" the Western Shore Strip. And the broadness of the language "any and all claims" and "including but not limited to" further supports the conclusion that prescriptive easement claims are covered under the release.

The Property Owners' remaining arguments—failure of consideration and equitable estoppel—are also unavailing. As for failure of consideration, the Property Owners argue that the consideration they bargained for in return for their release of claims against Dring was an easement over the North Strip. The Property Owners essentially argue that Dring's promise to create an easement in their favor can be apportioned to their promise of release, and that these promises are severable from the settlement agreement as a whole. "Where the parties have not directly addressed the issue of severability, merely identifying the consideration exchanged within the four corners of the written agreement is not sufficient." *Jacobs v. CNG Transmission Corp.*, 332 F. Supp. 2d 759, 776 (W.D. Pa. 2004). The central task in resolving issues of severability "is to ascertain the intent of the parties[,]" which may be "apparent from the explicit language of the contract" or "a construction of the agreement." *Jacobs v. CNG Transmission Corp.*, 772 A.2d 445, 452 (Pa. 2001). Generally, the "apportionment of consideration to distinct and separate components of an agreement is . . . an indication that the parties intended to create an agreement with severable provisions." *Jacobs*, 332 F. Supp. 2d at 775 (citing *Shields v. Hoffman*, 204 A.2d 436, 438 (Pa. 1964)).

Here, if anything, the Property Owners' consideration (their release) is directly apportioned to Dring's release, not Dring's conveyance to ALO of a deed subject to easements in the Property Owners' favor. Section 6 of the agreement begins: "The Property Owners on the one hand; and Dring/Asaro on the other hand do hereby release the other party . . . ." (Doc. 64-1 at 4). The only mention of the easements which the Property Owners

seek is in Section 3 of the agreement, which provides that Dring deliver "to ALO a quit claim deed . . . to the North Strip, subject to a permanent easement to be granted in favor of the Property Owners . . . ." (*Id.* at 2). That provision cannot be reasonably read to require Dring to convey easements separately to the Property Owners in exchange for their release, especially considering it was the parties' undisputed intent that all property rights to the North Strip were to be conveyed in a single document. Accordingly, the settlement agreement cannot be severed in the way the Property Owners want it to be severed.

The Property Owners finally argue Dring is estopped from enforcing the release because "there is a question of fact . . . as to whether they gave up their rights to a prescriptive easement in return for [Dring's] promise to grant them an easement by deed." (Doc. 76 at 16). But equitable estoppel requires that the Property Owners justifiably relied to their detriment on something Dring said or did. *See Carlson v. Arnot-Ogden Memorial Hospital*, 918 F.2d 411, 416 (3d Cir. 1990); *Galdieri v. Monsanto Co.*, 245 F. Supp. 2d 636, 651 (E.D. Pa. 2002). The Property Owners fail to identify which of Dring's statements or actions they justifiably relied on. The fact that the Property Owners interpret the settlement agreement differently (or that they assert a question of fact exists) cannot by itself estop Dring from enforcing the release against them.

The release therefore bars the Property Owners' claims in Count Two of their Amended Complaint, and judgment will be entered in Dring's favor.

### IV. Conclusion

For the above stated reasons, Dring's Motion for Summary Judgment will be granted. An appropriate order follows.

October 10, 2018  /s/ A. Richard Caputo
Date  A. Richard Caputo
United States District Judge

9