**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

MARJORIE M. GILLESPIE, et al.,

      Plaintiffs,

      v.

LORI DRING AND NANCY ASARO,

      Defendants.

CIVIL ACTION NO. 3:15-CV-00950

(JUDGE CAPUTO)

## MEMORANDUM

Presently before me is Defendants' Application for Reasonable Attorneys' Fees and Costs. (Doc. 119). Attorneys Rosenn, Jenkins & Greenwald, LLP ("RJ&G"), Michael Profita ("Profita" or "Attorney Profita"), and R. Anthony Waldron ("Waldron" or "Attorney Waldron") (collectively "Attorneys") for Defendants Lori Dring ("Dring") and Nancy Asaro ("Asaro") (collectively "Defendants") seek $299,123.18 in various fees and costs associated with their representation of the Defendants in a land dispute governed by a previously entered into Settlement Agreement (Doc. 6-1 Ex. A ("the Agreement")). (*See* Docs. 119, 121, 133). The Attorneys and Defendants contend that following the dismissal of Plaintiffs', including named Plaintiff Marjorie M. Gillespie's ("Gillespie"), (collectively "Plaintiffs") claims against the Defendants, that the Attorneys are entitled to reasonable attorneys' fees and costs according to the terms of the Agreement. (*See id.*). In opposition, the Plaintiffs contend that: the Attorneys are either not entitled to any or not entitled to at least some of the listed fees; that the listed fees are unreasonable; that this Application should be stayed; and, in the alternative, that I should hold a hearing on the matter before ruling on the Application. (*See* Doc. 128). Because Defendants have not demonstrated their entitlement to all fees and costs as requested, their Application for Reasonable Attorneys Fees and Costs will be granted in part and denied in part.

## I. Background

This action arises out of claims brought by Plaintiff landowners against the Defendants for failure to grant the Plaintiffs an easement over a certain tract of land at Lake

Ariel in Wayne County, Pennsylvania. (*See generally* Doc. 1). The parties are familiar with the factual background of this long-standing dispute and I will only summarize the necessary procedural history of the current action. The Plaintiffs' claims, which, in part, sought to enforce the Agreement (Doc. 6-1 Ex A.) as it pertained to an easement over Defendants' land and, in part, tried to equitably claim an easement over the same land, were all dismissed first by Motion to Dismiss, for failure to state a claim (*See* Docs. 15, 16), and second, on a Motion for Summary Judgment. (*See* Docs. 98, 99). In so ruling, I found that the Defendants, according to the Agreement, had no duty to convey the easement and were otherwise released from all other claims brought by the Plaintiffs. (*See* Docs. 16, 99).

Moreover, Defendants, when answering the Complaint, filed a counterclaim against the Plaintiffs for trespass on the same disputed tract of land for which the Plaintiffs requested an easement. (*See* Doc. 25). The Defendants, in their Motion for Summary Judgment, also stated their intention to seek attorneys' fees from the Plaintiffs. (*See* Doc. 61). The same order which granted Defendants' summary judgment on all of Plaintiffs' claims, however, directed the Clerk to close the case without resolving the counterclaim or request for fees. (*See* Doc. 99). As such, Defendants filed a Motion for Reconsideration (Doc. 102), which was granted (Doc. 104), to resolve these outstanding issues. The parties then entered into a stipulation (Doc. 113), which I approved (Doc. 114), dismissing the Defendants' counterclaim without prejudice while also allowing the Defendants thirty days to submit an application for attorneys' fees and costs.

Plaintiffs soon thereafter appealed the ruling on the Motion for Summary Judgment (Docs. 98, 99) to the Third Circuit. (*See* Doc. 115). Defendants then filed the instant Application for Reasonable Attorneys' Fees and Costs Pursuant to Section 14 of the Agreement on June 13, 2019. (Doc. 119). The Application states that pursuant to the Agreement (Doc. 6-1, Ex. A), which has governed all of the claims by the Plaintiffs and

against the Defendants, that Dring and Asaro are entitled to all reasonable attorneys' fees accrued in litigating the matter as well as all the fees expended in obtaining these fees. (*See* Docs. 119, 121, 133).

The Agreement in relevant part states:

> The United States District Court for the Middle District of Pennsylvania shall have exclusive jurisdiction over any action or proceeding involving the interpretation or breach of this Agreement, and the parties hereto submit to the personal jurisdiction of such Court. The Prevailing party in any such action shall be entitled to recover reasonable attorneys' fees from the other party.

(Doc. 6-1 Ex. A). In their application, Defendants request a total of $299,123.18 in legal fees and costs. (Doc. 133 at 19). Of these fees, RJ&G claims $239,649.61 in fees and $10,398.76 in costs for a total of $250,048.37 for all work done on this matter, including the instant fee litigation. (*See* Doc. 133-2). RJ&G staffed two partners, two associates, and two paralegals on the matter at rates ranging from $100 to $285 an hour. (*See* Docs. 122-2; 122-3 Exs. G, M; 133-1 Ex. D). Attorney Profita then claims $42,087.31 in fees and $781.06 in costs, for the same period, at rates of at least $375 an hour, which is a reduction in his typical fee. (*See* Docs. 122-2 Ex. B; 122-3 Exs. C, H). Finally, Attorney Waldron claims $2,000 in fees at a rate of $200 an hour for preparing a title report connected to the litigation and for other fees accrued in creating the report. (*See* Docs. 122-3 Ex. I; 133-5 ). Defendants attached affidavits prepared by themselves, their billing departments, and an independent lawyer all swearing to the reasonableness of their fees. (*See* Docs. 122-3; 133-1 - 133-8). Defendants have also attached detailed billing records and invoices for the matter, redacting certain line items for which they are not seeking reimbursement. (*See* Docs. *122-1, 122-2;* 133-1 Exs. B-D).

The Plaintiffs responded to this application on August 1, 2019 stating first that the Defendants were not prevailing parties under the Agreement. (*See* Doc. 128). The Plaintiffs further contend that, should I consider the Defendants to be the prevailing parties, the fees are nonetheless unreasonable. (*Id*.). To the extent some fees might be reasonable, the

Plaintiffs would, in the alternative, seek to stay the Application pending the outcome of their appeal or would have me hold a hearing before deciding on the Application. (*Id*.). The Defendants filed their Reply Brief in support of their application on September 5, 2019 waiving certain fees for unrelated billings, while also elaborating on the fees relating to this fee litigation. (*See* Doc. 133). The Application has been fully briefed and is ripe for review.

## II. Discussion

### A.     Prevailing Party

In opposing the Application, Plaintiffs first claim that the Defendants were not the "prevailing parties" under the Agreement and are therefore not entitled to any attorneys' fees. (Doc. 128 at 12-15). The Plaintiffs base this argument primarily on an interpretation of Federal Rule of Civil Procedure 41 which states that a notice of dismissal by a party acts as an adjudication on the merits when that party has previously dismissed an action based on the same claim. *(Id*.); *see also* Fed. R. Civ. P. 41. Plaintiffs claim that, when executing the original Agreement (*see* Doc. 6-1 Ex. A) and releasing their claims, the Defendants dismissed an action against the Plaintiffs based on the same claim as was brought as a counterclaim in this litigation, which was then also dismissed. (Doc. 128 at 12-15*)* ("[I]n other words, the previous litigation was between the same parties, dealt with the same claim, and the dismissal in the current suit now operates as an actual adjudication on the merits."). Therefore, Plaintiffs believe that the current stipulation to dismissal (Doc. 114) acts as an adjudication on the merits. (See *id*.). The Plaintiffs further believe that an adjudication on the merits in their favor and a summary judgment in the Defendants' favor makes it "less clear" who the prevailing party is under the Agreement. (*See id*.).

The Defendants have responded, stating: (a) that by "successfully defending all of the Plaintiffs' claims," they were clearly the prevailing parties; and (b) that the previous trespass claim was not based on the same claim as that which was dismissed by the Agreement. (*See* Doc. 133 at 2-4).

In relevant part, the Agreement states that "the prevailing party" in any action involving

4

"interpretation or breach of [the] Agreement . . . shall be entitled to recover reasonable attorney's fees from the other party." (Doc. 6-1 Ex. A). "'Prevailing party is commonly defined as 'a party in whose favor a judgment is rendered, regardless of the amount of damages awarded.'" *Profit Wize Marketing v. Weist*, 812 A.2d 1270, 1275 (Pa. Super. 2002) (quoting Black's Law Dictionary, 7th ed. at 1145). The application of the term prevailing party "is [ ] limited to those circumstances where the fact finder declares a winner and the court enters judgment in the party's favor." *Id*. at 1275-76; *see also Zavatchen v. RHF Holdings, Inc*., 907 A.2d 607, 610-11 (Pa. Super. 2006) (holding that it is not an abuse of discretion to find that defendant parties are not prevailing when no judgment is entered in their favor and when the plaintiff's claims are not frivolous).

Moreover, a failure to recover on a counterclaim does not make the defendant unable to recover its costs in defending an action. *Burgess v. Senior*, 64 Pa. D. & C. 167, 169 (Pa. Ct. Comm. Pl. 1945); *Stahl et al.* v. *Erie Delivery Co.,* 31 Pa. D. & C. 429, 437 (Pa. Ct. Comm. Pl. 1937). Courts have considered defendants to be prevailing parties despite the presence of counterclaims where plaintiffs are the initial agressors in the action and where the defendant's counterclaims ought to be tried, based on factual overlap, in the same action. *Id.*; *see also Tyler v. O'Neill*, 112 Fed.Appx. 158, 161-63 (3d Cir. 2004) (holding, in a federal context, that defendant was still prevailing party where counterclaims involved the same issues as the claims brought against the defendant).

Here, a judgment was entered in favor of the Defendants on the Plaintiffs' original claims, thereby making the Defendants the prevailing party as it pertains to the defense of those claims. *See Gardner v. Clark*, 33 Pa. D. & C.3d 662, 664-665 (Pa. Ct. Comm. Pl. 1985) (holding that defendant was a prevailing party for successfully getting claims dismissed on a motion for summary judgment); *Zavatchen*, 907 A.2d at 611 (recognizing that prevailing on summary judgment could justify finding that defendants were prevailing parties); *see also Lynn v. Smith*, 664 F.Supp. 929, 929-30 (M.D. Pa. 1986) (holding that, federally, defendants can be prevailing parties if they prevail on a motion for summary judgment). Further, the counterclaim brought by the Defendants arose out of the same facts

5

as the Plaintiffs' claims and will not disrupt the finding that the Defendants are the prevailing party. *See Burgess v. Senior*, 64 Pa. D. & C. at 169.

For their assertions under Rule 41, the Plaintiffs omit from the citation of the rule that a "notice of dismissal," and not a *stipulation* to dismissal "operates as a an adjudication on the merits." Fed. R. Civ. P. 41(a)(1)(B). I also take notice of the fact that "Rule 41(a)(1) was intended to eliminate the annoying of a defendant by being summoned into court in successive actions and then, if no settlement is arrived at, requiring him to permit the action to be dismissed and another one commenced at leisure." *Cooter & Gell*, 496 U.S. 384, 397 (1990) (internal quotations and citations omitted). Moreover, Rule 41(a)(1) is "aimed at curbing abuses of the judicial system" so as to prevent duplicative or serial litigation. *Id*. at 398; *see also Orman v. Citimortgage*, 2016 WL 1592948, at *6 (E.D. Pa. 2016).

Here, the Defendants did not initiate a suit nor did they endeavor to harass the Plaintiffs. In fact, the counterclaim was dismissed shortly after the Motion for Summary Judgment was decided. The aim of Rule 41(a)(1) was to prevent misuse of the judicial process which the Defendant has not been accused of here. Because the Defendants prevailed on summary judgment and because Rule 41 does not apply to the present action, the Defendants will be considered the "prevailing party" for the purposes of the Agreement and the stipulation to dismissal of the counterclaim will not be considered an adjudication on the merits.

### B.    Reasonableness of Fees and Costs

The Attorneys in this case collectively request a total of $299,123.18 in fees and costs. (Doc. 133 at 19). Lawyers from RJ&G request $239,649.61 in fees as calculated by their Accounts Receivable Manager Polly A. Butler ("Butler"). (Doc. 133-2). Butler arrived at this calculation by taking the collective hours billed and to be billed on the case at the rates listed below and then reduced the fees by those hours which were expended on matters irrelevant to the current claim, though Butler does not explicitly detail which hours she reduced. (*Id*.). Butler then applied a 6.4% "courtesy reduction" to the remaining balance. *(Id.)*. RJ&G had six people staffed on this matter; Partner Garry S. Taroli ("Taroli"

or "Attorney Taroli"), who requests a $285 hourly fee; Partner Robert N. Gawlas ("Gawlas" or "Attorney Gawlas"), who requests a $275 hourly fee; Associates Robert L. Gawlas ("Associate Gawlas") and Daniel A. Taroli ("Associate Taroli"), who request a $175 hourly fee; and paralegals Helen P. Chvotzkin and Tania Garrity, who request a $100 and $110 hourly fee, respectively. (*See* Docs. 122-2; 122-3 Exs. G, M; 133-1 Ex. D).

RJ&G has presented the hours they worked on this case to me in the form of a "Unbilled Recap of Time Detail" or "Time Detail" ("the Detail") which purports to account for every potentially billable hour in the case. (*See* Docs. 122-2; 133-1). Hours not being charged are redacted from the Detail. (*See* Docs. 122-3 Ex. F (Butler Declaration); 133-2 (Butler Supplemental Declaration)). Further, every billed hour on the Detail corresponds to an actually charged line item on an invoice sent or to be sent to the client, also provided. *(See* Docs. 122-1, 122-2, 133-1 Exs. B-D).

Tallying all the visible, non-redacted, and potentially relevant hour totals in the Detail, the professionals from RJ&G have billed and could further bill a collective 1142.80 hours, for which they do not seek full reimbursement. (*See* Docs. 122-2, 133-1 Ex. D) (adding all hours from the Detail which were billed or could be billed by Partners Gawlas and Taroli, Associates Gawlas and Taroli, and Paralegals Chvotzkin and Garrity). Lawyers from RJ&G further request $10,398.76 in costs. (Doc. 133-1 Ex. F) (Butler Declaration)).

Attorney Profita requests $44,448.75 in fees based on rates ranging from $375 to $425 an hour for a cumulative 129.20 relevant billable hours. (Docs. 122-3 Ex. H; 133-4). Attorney Profita also applied a discount for certain billed hours. (Doc. 122-3 Ex. H). Attorney Profita further requests $781.06 in costs. (*Id*.; Doc. 133-4). Attorney Waldron finally seeks $2,000 in fees based on 10 hours worked at a rate of $200 an hour. (Doc. 122-3 Ex. D).

While the Defendants have represented the total fees sought to be $299,123.18, I note that the actual totals represented by the individual costs and fees requested are $297,278.18. *See Moffitt v. Tunkhannock Area School District*, 2017 WL 319154, at *8 (M.D. Pa. 2017) (correcting mathematical inaccuracies in a request for fees).

# 1. Attorney Fees

Plaintiffs contend that, to the extent fees should be awarded, some attorneys' rates are unreasonable and, for those rates that are reasonable, the Defendants have made claims for more than they are entitled. (Doc. 128 at 15-19).

For the reasonableness of the rate, the Plaintiffs only contend specifically that Attorney Profita's hourly rate of $425 "is clearly an excessive rate for the Middle District of Pennsylvania," especially as compared to the rates of Attorneys Gawlis and Taroli. (*Id*. at 18-19). For reasonableness of the hours expended, Plaintiffs claim that the Defendants are attempting to collect fees unrelated to the instant litigation, such as "fees relating to Culotta, Cardinal Lane, Swingle, Lehutsky, and the preparation of a title report by R. Anthony Waldron." (*Id*. at 17). For these fees, the Plaintiffs claim that they "relate to an unrelated quiet title action for the Cardinal Lane property . . . as well as an unrelated legal malpractice action." (*Id*.).

Further, Plaintiffs claim that, to the extent that billed or billable hours relate to the current suit, they overlap with services rendered for a separate matter which they refer to as the "ALO litigation." (*Id*.). Specifically, Plaintiffs claim that listings involving Motions for Election of Remedies, which were filed in both cases, were potentially billed inappropriately and should be reduced to the extent time was spent on the Motion from ALO litigation as opposed to the instant litigation. (*Id*.).

Plaintiffs also point to the "Grodack litigation, fees relating to individuals who reside on the West Shore Strip who may have entered into agreements with Dring and Asaro, including Barone and Gardner, and the Keystone Landfill Condemnation" as fees not attributable to this action. (*Id*. at 18). Plaintiffs also seek access to the redacted (and unbilled) records of the Defendants because, while they are not being billed, they may provide clarity as to what services apply to which litigation. (*Id*. at 18). Plaintiffs also contend that the Defendants needlessly employed two law firms which may have been conducting the same work on the matter. (*Id*. at 18).

Plaintiffs finally contend that Defendants should only be compensated according to their degree of success trying the claim and as such, because Defendants were either not

the prevailing parties in the suit or because they did not prevail on all of their claims, their recovery should be reduced. (*Id*. at 15-16). To this end, Plaintiffs also believe that Defendants recovery should be reduced to the extent the Plaintiffs were the only parties, of all the parties involved, not to breach the Agreement, and thus, Defendants should receive an equitable deduction in fees. (*Id*. at 19).

Defendants respond to these contentions first, by saying that they should receive no deduction as they are clearly the prevailing party, including with regards to fees for the counterclaim. (Doc. 133 at 4-5). They then say that the allegedly unrelated suits are in fact related to the instant litigation and that any matter relating to "Cardinal Lane" was billed appropriately. (*Id*. at 6-7). Defendants also contend that any objections concerning overlap with the ALO litigation are not relevant because everything was billed separately. (*Id*. at 7-8). For the claims that representation by two separate firms was duplicative, Defendants simply claim that this is common practice and that Attorney Profita had experience with and historical knowledge of the particular issues involved which was necessary to defend against the claims. (*Id*. at 9-10; *see also* Doc. 133-4).

Defendants further seek no fees for any redacted line items and "for the sake of judicial economy," will withdraw requests for fees relating to "the Grodack litigation, West Shore residents pursuing agreements with Dring/Asaro, including Barone and Gardner, and the Keystone Landfill Condemnation." (*Id*. at 8-9). Defendants also state that Attorney Profita is only seeking a $375 hourly rate. (*Id*. at 10).

"'The starting point for a court's determination of reasonable attorney fees is to calculate the 'lodestar' by multiplying the number of hours reasonably expended by a reasonable hourly rate.'" *Borrell v. Bloomsburg University*, 207 F.Supp.3d 454, 506 (M.D. Pa. 2016) (quoting *Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, 2014 WL 2860863, at *5 (M.D. Pa. June 23, 2014), *amended*, 2014 WL 2991813 (M.D. Pa. 2014), *aff'd*, 612 Fed.Appx. 612 (Fed. Cir. 2015) ("Arlington")). The lodestar calculation is presumed to be a reasonable calculation of attorneys' fees. *Washington v. Philadelphia Court of Common Pleas*, 89 F.3d 1031, 1035 (3d Cir. 1996).

"'The opposing party may object to the lodestar calculation, calling into question either the reasonableness of the hourly rate requested or the reasonable hours expended.'" *Borrell*, 207 F.Supp.3d at 506 (quoting *Clark v. Whitney*, 3 F.Supp. 2d 631, 633-34 (E.D. Pa. 1998)). Where the hours are excessive, redundant, or unncessary, the opposing party may request a reduction of the lodestar. *Id*. I can also reduce the number of hours "spent litigating claims on which the party did not succeed and that were 'distinct in all aspects from' claims on which the party did succeed." *Rode v. Dellarcipete*, 892 F.2d 1177, 1183 (3d Cir. 1990) (quoting *Institutionalized Juveniles v. Secretary of Public Welfare*, 758 F.2d 897, 919 (3d Cir. 1985)).

The party opposing the request "'has the burden of proving that it is appropriate [to adjust the lodestar], and if that burden is met, the lodestar may be increased or decreased at the discretion of the District Court.'" *Borrell*, 207 F.Supp.3d at 506 (quoting *Dee v. Borough of Dunmore*, 2013 WL 685144, at *4 (M.D. Pa. Feb. 25, 2013), aff'd, 548 Fed.Appx. 58 (3d Cir. 2013)). I will first turn to hourly rates.

**a. Hourly Rate**

To determine a reasonable hourly rate, courts apply a burden shifting analysis. *See Evans v. Port Auth. of N.Y. & N.J.*, 273 F.3d 346, 361 (3d Cir. 2001); *Souryavong v. Lackawanna County*, 159 F.Supp.3d 514**,** 524 (M.D. Pa. 2016); *see also Branch Banking and Trust Company v. Angino Law Firm, P.C.*, 2018 WL 4404627, at *8 (M.D. Pa. 2018) (applying standard burden shifting analysis to claims governed by a contract). The prevailing party bears the initial burden of establishing a prima facie case by producing sufficient evidence of what constitutes a reasonable market rate "for the essential character and complexity of the legal services rendered." *Smith v. Phila Hous. Auth.*, 107 F.3d 223, 225 (3d Cir. 1997). A reasonable market rate is "calculated according to the prevailing market rates in the relevant community." *Rode*, 892 F.2d at 1183 (citing *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). I "should assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, reputation." *Maldonado v. Houston*, 256

F.3d 181, 184 (3d Cir. 2001). Under the forum-rate rule, the relevant community for the prevailing market rate is generally the forum of the litigation. *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 705 (3d Cir. 2005) ("Interfaith"). However, if local counsel will not handle the case, or if the case requires "special expertise" from an out of district attorney, higher fees may be awarded. *Arlington*, 2014 WL 2860863, at *2 (citing *Interfaith*, 426 F.3d at 705).

"The prevailing party bears the burden of establishing that the requested rates meets this standard through 'satisfactory evidence, in addition to the attorney's own affidavits.'" *Souryavong*, 159 F.Supp.3d at 525 (quoting *Blum*, 465 U.S. at 896 n.11). I must also consider the relative simplicity of the case, the quality of the counsel's moving papers, and my "perception of counsel's skill and experience during the trial of the underlying matter." *Mantz v. Steven Singer Jewelers*, 100 Fed. Appx. 78, 81-82 (3d Cir. 2004). If the prevailing party fails to meet this burden, I will exercise my discretion in fixing a reasonable rate. *Arlington*, 2016 WL 3522964, at *2.

Once a party has established a prima facie case, the opposing party may object to the reasonableness of the rate with "appropriate record evidence." *Evans*, 273 F.3d at 361. The objections must be made with "sufficient specificity" of unreasonableness. *Arlington*, 2016 WL 3522964, at *2 (citing *Interfaith*, 426 F.3d at 703 n.5). "In absence of such evidence, the [prevailing party] must be awarded attorneys' fees at her requested rate." *Id.* (citing *Rode*, 892 F.2d at 1183); *see also Souryavong*, 159 F.Supp.3d at 526 (holding that I have no discretion to reduce a rate based on factors not raised by the adverse party). Once the opposing party raises objections to the fee request, I have a "great deal of discretion" to adjust the fee award in light of those objections. *Rode*, 892 F.2d at 1183.

Here, Defendants request an hourly rate of $285 for Attorney Taroli, $275 for Attorney Gawlas, $175 for Associates Taroli and Gawlas, $100 and $110, respectively for paralegals Helen Chvotzkin and Tania Garrity, $375 for Attorney Profita, and $200 for Attorney Waldron. *(See Docs. 122-2; 122-3 Exs. E, G-I, M; 133-1 Ex. D; 133-4; 133-5)* (affidavits and bills from the various attorneys involved bearing out requested hourly fees)).

### i. Rates for RJ&G Attorneys and Professionals

Defendants request an hourly rate of $275 for Robert N. Gawlas, Jr., $285 for Garry Taroli, $175 for Daniel A. Gawlas and Robert L. Gawlas, $100 for Helen P. Chvotzkin, and $110 for Tania Garrity. (Docs*. 122-2; 122-3* Exs*. G, M; 133-1* Ex. D). In support of the application, for Attorneys Gawlas and Taroli, Defendants submit personal affidavits briefly outlining their experience since graduating law school in 1986 and 1979, respectively, and starting at RJ&G, having both since becoming partners in the firm. (Docs. 122-3 Exs. E, G). In their affidavits, both attorneys attest that their work in this matter was billed at $275 and $285 hourly and that such is their normal hourly rate. (*Id.*). Further, both attorneys are rated AV-preeminent by Martindale-Hubbell. (*Id.*)

The Defendants then further offer the declaration of Attorney Walter T. Grabowski ("Grabowski" or "Attorney Grabowski"), who was retained by RJ&G to offer his opinion on the reasonableness of fees in this matter. (*Id*. at Ex. M) ("Grabowski Declaration"). Attorney Grabowski outlines in his affidavit that he has been practicing law since 1978 at various firms in the area as well as having practiced for the Commonwealth of Pennsylvania as an Assistant Attorney General. (*Id.*). Based on Attorney Grabowski's review of the relevant material in this case, he ascertained that Attorney Gawlas' and Attorney Taroli's rates are reasonable and are comparable to not only his own, but to other legal professionals in the area. (*Id.*). Grabowski further declares that the rates for Associates Gawlas and Taroli and for paralegals Chvotzkin and Garrity are reasonable and comparable to others in the area. *(Id.*).

Attorneys Gawlas and Taroli have adequately laid out their experience practicing law in the area as well as the reasonableness of their fees in light of this experience. (*See* Docs*. 122-2; 122-3* Exs*. G, M*). As such, I find that both attorneys establish a prima facie case for their requested rates and, absent any specific objections from the Plaintiffs, these rates will be deemed reasonable. *See Rode*, 892 F.2d at 1183; *Souryavong*, 159 F.Supp.3d at 529. However, because the only evidence supporting the rates for associates Gawlas and Taroli and paralegals Chvotzkin and Garrity are two sentences within Grabowski's Declaration that

12

they are reasonable and within market range, I find that the Defendants do not establish a prima facie case for these rates. Moreover, as there are not specific objections from the Plaintiffs, I will conduct my own inquiry into reasonable fees. I have found that reasonable rates for paralegals in the Scranton/Wilkes Barre area to be anywhere from $75 to $150. *Borrell*, 207 F.Supp.3d at 511 (citing *Arlington,* 2014 WL 2860863, at *14). I have further held that $175 an hour can be a reasonable rate for associates in the area. *Arlington*, 2014 WL 2860863, at *14. Considering the prevailing market rates for paralegals and associates in the area and the level of work completed in this case, with no objections from the Plaintiffs to consider, I deem the requested rates for RJ&G associates and paralegal to be reasonable.

## ii. Rate for Michael Profita

Defendants request an hourly rate of $375 for Michael Profita. (Docs. 133 at 10; Doc. 122-3 Ex. M; 133-4). In support of the Application, Defendants submit an affidavit by Attorney Profita wherein he briefly outlines his experience since graduating law school in 1977, and notes that, after clerking for the United States District Court for the Northern District of Alabama, he went on to receive his L.L.M in taxation in 1981 and has maintained bar eligibility in Alabama, New York, and New Jersey. (Docs. 122-3 Ex. H, 133-4). Profita states that he primarily has practiced at firms in New Jersey and routinely bills in the range of $485 to $550 hourly. (Doc. 122-3 Ex. H). Profita initially reduced that fee to $425 in the instant litigation. (*Id*.).

In his declaration, Attorney Grabowski determined, and Plaintiffs concur (*see* Doc. 128 at 18-19), that $425 hourly is too high a fee for this area. (Doc. 122-3 Ex. M). Grabowski then suggests, and Defendants adopt, a $375 hourly fee. (Docs. 122-3 Ex. M; 133 at 10). Relying on another case decided in this district, *Finnegan v. Smith*, 2019 WL 1052013 (M.D. Pa. 2019), Grabowski determined that $375 an hour represented the higher end of appropriate hourly wages for someone of Attorney Profta's experience in this area. (Doc. 122-3 Ex. M). Beyond the Grabowski Declaration and Profita's own affidavit about what his fee should be, the only other evidence that Defendant's offer about Profita is that

"his historical knowledge regarding the subject matter of the litigation" made him essential to the case. (Doc. 133 at 10).

Given that the Plaintiffs have objected to Attorney Profita's rate as excessive, the Defendants here have not offered enough documentation or proof that Attorney Profita is entitled to a $375 hourly fee. While the Grabowski declaration offers another case where $375 was found to be a reasonable fee, the Court in *Finnegan* did not find that the party made a prima facie showing that the requested rate was the prevailing rate in the area even when they presented three separate affidavits attesting to the reasonableness of the proposed fee. *See Finnegan v. Smith*, 2019 WL 1052013, at *4. Moreover, the case dealt with a fee award to a civil rights litigator. *Id*. Here, the Defendant only offers: Attorney Profita's own declaration of his worth (Doc. 122-3 Ex. H); the Grabowski Declaration (Doc. 122-3 Ex. M); and an assertion that Attorney Profita had necessary historical knowledge of the case (Doc. 133 at 10). The Defendants therefore fail to establish that $375 an hour is the prevailing market rate as they offer no evidence that those with similar skill and experience have been awarded as high a fee in this jurisdiction. *See Finnegan*, 2019 WL 1052013, at *4 (holding that prevailing parties must establish the prevailing market rate of the forum in order to establish a prima facie case).

Because the Defendants have not made a prima facie showing that these fees are reasonable, the Court will "'consider its own knowledge and experience concerning reasonable and proper fees,' . . . and will form an independent judgment on the appropriate hourly rate, i.e., the prevailing rate in the forum of the litigation." *See id*. at *6; *see also Carey v. City of Wilkes Barre*, 496 Fed.Appx. 234, 237 (3d Cir. 2012) ("if the [prevailing party] fails to meet her prima facie case, the district court has the discretion to determine what award is reasonable.").

In this case, Attorney Profita did not make any court appearances nor did he draft any motions or memoranda, or conduct any depositions. A review of his billing records reveals that Attorney Profita spent the majority of his hours on the case reviewing motions and memoranda and consulting Defendants' father, Joseph Asaro, about the case. (*See* Doc.

14

122 Ex. C; 133-4 Ex. A). He further prepped for depositions, but never conducted them, and of the motions Profita did draft, they were largely related to his own fees. (*See Id*.). Attorney Profita therefore had little involvement in actually litigating this case and securing the favorable resolution. In considering the prevailing market rate for the types of services Mr. Profita offered in this case in this forum, I need look no further than the standard billing rates of those at RJ&G, who were working on the same claim as Profita, but at a much lower rate. *See Moffitt*, 2017 WL 319154, at *4 ("The general rule is that a reasonable hourly rate for legal services is calculated according to the prevailing market rates in the community.").

Because of the simplicity of Attorney Profita's work and his limited involvement, as compared to the other attorneys working on the case making less but doing the same work, I conclude that $285 hourly, the same unobjected to rate for Attorney Taroli, is a reasonable fee. *See Borrell*, 207 F.Supp.3d at 511 (holding that where work in case was limited to pretrial matters, consultations, and revisions, that a reduced rate was appropriate); *Souryavong*, 159 F.Supp.3d at 514 (M.D. Pa. 2014) (awarding lead counsel with 20 years experience a reduced $250 hourly rate).

### iii. Rate for R. Anthony Waldron

Finally, Defendants request an hourly rate of $200 for Attorney Waldron. (*See* Doc. 122-3 Ex. I). In support of the application, Defendants submit an affidavit by Attorney Waldron wherein he briefly outlines his experience since opening his firm in 1977, and notes that he has maintained a steady real estate and title practice since that time, while also having served as solicitor for several municipal governments and authorities. (*Id*.). In his affidavit, Attorney Waldron attests that his work in this matter was billed at $200 hourly and that such is his normal hourly rate. (*Id*.). In his declaration, Attorney Grabowski determined that Attorney Waldron's rate is reasonable and within the market range for similar attorneys. (Doc. 122-3 Ex. M).

Because Attorney Waldron presents sufficient evidence that his hourly rate is justified given his experience and is within the prevailing rate for services of his kind in the area, as corroborated by Attorney Grabowski, Attorney Waldron has made his prima facie case. As

such, with no objections by the Plaintiffs to consider, I will deem Attorney Waldron's rate reasonable. *See Rode*, 892 F.2d at 1183; *Souryavong* 159 F.Supp.3d at 529.

Further, RJ&G has represented that it will provide a courtesy reduction to the Defendants in the amount of 6.4%, this amount will be applied to the total amount billed by RJ&G and will effectively reduce their rates. (*See* Doc. 122 Ex. F; 133-2). Having determined the reasonable rates to be awarded, I will now turn to the reasonableness of the hours expended.

## b. Number of Hours Reasonably Expended

In addition to determining a reasonable hourly rate, I must also determine whether the number of hours spent on the litigation was reasonable. *Souryavong*, 159 F. Supp. at 530 (citing *Public Interest Grp. Of N.J., Inc. v. Windfall*, 51 F.3d 1179, 1188 (1996) ("*Windfall*")). In doing so, I "'should review the time charged, decide whether the hours claimed were reasonably expended for each of the particular purposes described, and then exclude those that are excessive, redundant, or otherwise unnecessary.'" *Id*. (quoting *Windfall*, 51 F.3d at 1188) (internal quotations and citations omitted). Hours may be reduced for work done on claims which were "'distinct in all respects from claims on which the party did succeed'" and for hours that are inadequately documented. *Borrell* 207 F.Supp.3d at 512 (quoting *Rode*, 892 F.2d at 1183) (internal quotations and citations omitted).

The opposing party must make specific objections to the hours expended. *Id.* at 512. Specific objections must: (1) "'identify the type of work being challenged;" and "specifically state the adverse parties grounds for contending that the hours claimed in that area are unreasonable." *Id*. (quoting *Bell v. Untied Princeton Properties, Inc.*, 884 F.2d 713, 720 (3d Cir. 1989)). Once the opposing party has made specific objections, the burden is on the prevailing party to justify the size of its request. *Interfaith*, 426 F.3d at 711. I also cannot decrease a fee award based on factors not raised at all by the adverse party. *Rode*, 892 F.2d at 1183. Further, the adverse party "cannot merely allege in general terms that time spent was excessive." *Borell*, 207 F.Supp.3d at 512 (quoting *Bell*, 884F.2d at 720).

Here, Plaintiffs make several objections to the number of hours for which Defendants

seek compensation. They first object to the fees related to the "quiet title action for the Cardinal Lane property," which includes any fees pertaining "to Culotta, Cardinal Lane, Swingle, and Lehutsky, and the preparation of a title report by R. Anthony Waldron." (*Id*. at 17). Further, the Plaintiffs state that it is unclear whether these, and other fees are related to this action or to another action, *Dring et al. v. Ariel Land Owners, Inc.*, 3:15-cv-00478, ("ALO litigation") which involved an ultimately unrelated ejection action involving different parties and different tracts of land, but which was decided under the same Agreement at issue in this case. (*See* Doc.128 at 17). The Plaintiffs further object to fees for a Motion for Election of Remedies which was filed in both the ALO litigation and the current litigation. (*Id*. at 17).

The Plaintiffs then object to fees relating to "the Grodack Litigation," "individuals who reside on the West Shore Strip who may have entered into agreements with Dring and Asaro, including Barone and Gardner," and "the Keystone Landfill Condemnation." (*Id*. at 18). The Plaintiffs contend that these fees simply are unrelated to this litigation. (*Id*.). The Plaintiffs go on to contend that engaging Attorney Profita in this action was unnecessary and that he potentially engaged in duplicative work with RJ&G. (*Id*.). Plaintiffs would then also seek to have the fully unredacted bills of Defendants from both this litigation and the ALO litigation to ensure there was no duplicative billing. (*Id*. at 18). Finally, Plaintiffs seek reduction in the overall award to the extent the Plaintiffs prevailed on the counterclaim and to the extent justice would allow given their relative lack of fault in the action. (*Id*. at 15-16, 19).

Therefore, given these objections, I must conduct a detailed review of Defendants' requested fees. Having carefully reviewed each of Plaintiffs' objections and Defendants' submitted time entries, Defendants' requested award will be reduced as follows.

### i. Reasonableness of Hours Claimed

*a. Profita's and Waldron's Proposed Hours*

The first specific objection that Plaintiffs make to Profita's proposed hours reasonably expended are that his services may overlap with those of RJ&G. (Doc. 128 at 18).

Defendants respond to this objection by claiming that having multiple lawyers on a case is common practice and that Profita's "historical knowledge" of the issues in the case made his participation unique and necessary. (Doc. 133 at 10).

Reviewing Profita's billed hours, it is clear that he spent his time in this litigation reviewing the work of attorneys at RJ&G and consulting with Defendants' father about the case as opposed to simply double charging the work of RJ&G. (*See* Docs. 122-3 Ex. C; 133-4 Ex. A). By way of example, Profita's invoice is replete with billings referring to the review and revision of motions submitted to him by RJ&G attorneys as opposed to billing for the drafting of those motions, which was done by RJ&G. (*Id*.). A further review of Profita's and RJ&G's invoices further reveal no specific overlap. (*Compare* Docs. 122-3 Ex. C; 133-4 Ex. A *with* Docs. 122-1, 122-2 Ex. B; 133-1 Exs. A-D). These hours are therefore not duplicative of one another and standup against the blanket accusation of duplicativeness by the Plaintiffs. *See Arlington*, 2016 WL 3522964, at *8 ("[T]he law is clear that Defendant must include some specificity within their objections to explain why the time submitted should be reduced, not simply a blanket assertion that all time entries are excessive."). As such, Profita's fees will not be reduced for any alleged double billing between himself and RJ&G.

The other objections launched by Plaintiffs which could apply to Profita's bills based on my review of the invoices include entries related to the Motion for Election of Remedies in the ALO litigation, time spent pursuing agreements with landowners, including Barone and Gardner, and time spent reviewing the title report prepared by Attorney Waldron. (*See* Docs. 128 at 17-18; 122-3 Ex. C; 133-4 Ex. A ). To this end, RJ&G has made clear that they separately billed this action and the ALO action and have provided billing records from the ALO litigation. (*See* Docs. 133 at 7-8; 133-1 Ex. A). Profita has not similarly submitted separate billing records from his work in the ALO litigation, and his bills for the instant case indicate that the time he spent on the Election of Remedies corresponds with the Election of Remedies filed in the ALO litigation. (*See* Docs 133-1 Ex. A, D; 122-3 Ex. C). As such, without further proof by Profita that he billed the Election of Remedies separately, the 1.80 hours Profita spent reviewing the Motion and Brief for the Election of Remedies and

researching case law in support of the Motion will be deemed to be a part of the ALO litigation and will be reduced from his total hours spent on this case. (*See* Doc. 122-3 Ex. C).

Further, because the Plaintiffs object to the time spent pursuing agreements with landowners like Barone and Gardner, and because Defendants voluntarily waived fees associated with this matter in their billing, this time will be dropped from consideration for Profita. (*See* Doc. 133 at 9). This time amounts to an additional 0.3 hour reduction identified on the bill as "Revise Barones Offer. Telephone conference with G. Taroli." (Doc. 122-3 Ex. C).

The only other applicable objection to Profita's hours expended is the review of Attorney Waldron's Report. Plaintiffs object to Attorney Waldron's Report on the basis of its relation to a different action not appurtenant to this motion. (Doc. 128 at 17). The Defendants respond to this charge saying that the report was erroneously attributed to the Cardinal Lane litigation but is actually related to the present case. (Doc. 133 at 7 n.2). This claim has been backed up by the affidavit of R. Anthony Waldron concerning how he erroneously referred to his title search as being related to Cardinal Lane when, "in fact, the invoice . . . was for my preparation of a title report regarding the Property Owners of West Shore Drive of Lake Ariel." (Doc 133-5). In support of this claim, the Defendants have attached correspondence with Plaintiffs' counsel concerning the Report and how it was prepared in conjunction with the instant litigation. (Doc. 133-5 Ex. A). The Title Report itself further indicates that it was prepared for the instant litigation. (*Id*.). Because the Defendants have shown that the Title Report is related to this matter, the full fees as to Attorney Waldron and to Attorney Profta, as it pertains to the review and preparation of the Report, will be granted. Attorney Profita has no billed matters relating to the Culotta, Swingle, or Lehutsky cases and no redacted matters are being billed.

Attorney Profita has further conceded that a fifty percent reduction in his time spent preparing for and travelling for depositions is appropriate. (Doc. 122-3 Ex. C). According to his invoices, a total of 46.80 hours were related to depositions. (*Id*.; *see also* 133-4). Per

Attorney Profita's concessions, this time will be reduced to 23.40 hours..

Therefore, Attorney Waldron's full time on the matter, 10 hours, will be considered reasonable as it is all related to his preparation of a report for the current matter. Attorney Profita's hours, 129.20, will be reduced to the extent he billed Defendants for his work on the Motion for Election of Remedies in conjunction with the ALO litigation (1.80 hours) as well as the work that was evidently done in conjunction with offers to the West Shore property owners, such as Barone (0.3 hours). I will also deduct 23.40 hours billed for irrelevant deposition work. This brings Profita's total billable hours to 103.70.

b. RJ&G's Proposed Hours

For calculating the number of hours reasonably expended by their attorneys and professionals, RJ&G has presented me with the redacted Time Detail which lists all the billed and billable matters in this case which includes invoice numbers corresponding to the actual bills sent to the client, also provided. (*See* Docs 122-1-2; 133-1 Exs. A-D; *see also* Doc. 122-3 Ex. F (Butler declaration on fees)). This Detail and its corresponding invoices lists all the specific matters billed and which could be billed to the client. (*Id.*). RJ&G has also provided a redacted Time Detail corresponding to its representation of the Defendants in the ALO litigation. (*See* Doc. 133-1 Ex. A). These Time Details are all accompanied by various affidavits attesting to their accuracy. (*See* Docs. 122-3 Exs. E, F, G, I, M; 133-1-3). These Time Details have also been redacted to exclude matters not being charged by RJ&G. These redactions are not of my concern as the two Details can be compared to ensure there was no duplicative billing, and as the redactions are not being charged to the client. *See Orion Drilling Company, LLC v. EQT Production Company*, 2018 WL 4267386, at *4 (W.D. Pa. 2019) ("The redacted material does not detract from the Court's ability to determine the nature of the work performed or that the work was performed in pursuit of the defense of this action."); *Carey v. City of Wilkes Barre*, 2011 WL 1900169, at *2 (M.D. Pa. 2011) (redacting hours attributable to a different case from a fee petition).

Examining these records fully, I have found that the Defendants have shown a total of 1142.80 hours which have either been previously billed or are yet to be billed to the client.

(*See* Docs. 122-1-2; 133-1 Exs. B-D) (tallying all potentially billable hours, excluding 6.30 hours that were explicitly unbilled and 2.30 hours billed by an associate not mentioned by the Defendants in their materials). These hours can be allotted as 664.40 hours for Attorney Gawlas, 234.80 hours for Attorney Taroli, 107.90 hours for Associates Gawlas and Taroli, 89.4 hours for Paralegal Chvotzkin, and 46.30 hours for Paralegal Garrity. (*See Id*.).

The Plaintiffs first contend that some of these hours deal solely with the ALO litigation; that some are duplicative of time billed in the ALO litigation; that some fees deal with unrelated work; and that the Defendants did not need two firms working on the matter. (*See* Doc. 128 at 16-19).

I have already decided that the Waldron Title Report is related to the instant case and I have decided that it was acceptable for the two firms in this matter to work on the same case given the complexities involved, including the need for local counsel combined with the need for the experience of outside counsel. Further, RJ&G has well documented the differences between what was billed to the ALO litigation and what was billed to the instant litigation. (*Compare* Docs. 122-1-2, 133-1 Exs. C-D *with* Doc. 133-1 Ex. A; *see also* Docs. 133-1, 133-3 (Supplemental Declarations of Attorney Gawlas and Attorney Taroli)). I am satisfied based on my review of the billing records, including the time records from both suits, and the affidavits from all the attorneys involved, that the ALO and the instant litigation were successfully billed separately. (*Id*.). Especially to the extent that the Plaintiffs only specifically object to the Motion for Election of Remedies as that which was double billed, the Plaintiffs have not shown that there are substantive double billings. In any event, a detailed review of the records revealed two entries which could have been related to the ALO litigation: an entry on 12/03/2015 regarding "Review of email re: Reply Brief from Ariel Lake;" and an entry on 12/07/17 regarding "Review Order requiring ALO to submit status report no later than 3-9-18." These entries amount to 0.5 hours for Attorney Taroli and 0.1 hours for Attorney Gawlas respectively and they will be deducted from RJ&G's hours. Therefore, due to the evidence of separate billing, including evidence of separate billing on Plaintiffs' lone specific objection regarding the Election of Remedies, fees in this suit will not be considered

to be duplicative of any work RJ&G performed on the ALO matter except for the specifically mentioned 0.6 hours.

The Plaintiffs also dispute fees related to the Culotta action, matters regarding Cardinal Lane, the Swingle action, and the Lehutsky action. (Doc. 128 at 17). The Plaintiffs contend that these actions either relate to the ALO litigation or are simply separate matters which related to quiet title actions in Wayne County. (*Id*.). Specifically, the Plaintiffs contend that these matters have overlap with the ALO litigation or the Wayne County actions such that it is difficult to determine whether these fees are reasonable. (*Id*.). In my review of the invoices from both the instant and the ALO litigation, it is clear that no such matters were double billed by RG&J. (*Compare* Docs. 122-1 - 122-2, 133-1 Exs. C-D *with* Doc. 133-1 Ex. A). Moreover, the entries on the the Detail which deal with Culotta, Cardinal Lane, Swingle, and Lehutsky do not relate to actually litigating the ALO claim or the quiet title claims themselves but consistently refer to review of those cases and claims as they related to the matter at hand. For example, the Culotta trial transcript was reviewed multiple times between March 22, 2018 and March 24, 2018 while the Defendants were drafting their Motion for Summary Judgment and their Statement of Undisputed Material Facts. (*See* Doc. 122-2 at 45).

Moreover, it has been consistently borne out over the course of this litigation that this case involved claims by multiple parties against and amongst each other, which, while tried separately, may be interrelated. To the extent that these billings and matters are interrelated however, the Defendants here make a sufficient showing of independent billing that they should be compensated for the time spent reviewing the outcome of the other litigation and considering how it applied to the instant case. Further, the Plaintiff does not make specific objection to any matter relating to these billings that would lead me to conclude otherwise. As such these matters will be counted in full for the Defendants.

The Defendants have also voluntarily decided not to charge for matters related to the Grodack litigation, the acquisition of land from the west shore landowners, specifically Barone and Gardner, and the Keystone Landfill Condemnation. (Doc. 133 at 9). However,

in so conceding, the Defendants neglect to actually list the hours they reduced, and instead state that they took off "$5638" worth of charges. (*Id*.; *see also* Doc. 133-2 (Butler Declaration)). Under my review, the Defendants spent at least 16.40 hours on such matters, which includes striking any bill item which refers either directly or indirectly to "Gardner," "Barone," "Keystone," and any other entry referring to offer letters or discussions with other residents regarding easements and acquisition of West Shore land. (*See* Docs. 122-2; 133-1 Ex. D). The specific entries struck from the record start on page 27 of the Detail, index #1833387, and extend through to index #1843511, page 30 of the Detail, and include any reference to "Barone," "letter," "easement," or "offer." (Doc. 122-2 at 28-31). This span of entries totals 11.5 hours, 4.0 of which are attributable to Attorney Gawlas and 7.5 of which are attributable to Attorney Taroli.

There is then time billed by Attorney Taroli for the Keystone Condemnation on February 14, 2018, for .2 hours, which was struck from consideration. (Doc. 122-2 at 42). There are then six entries from April 11, 2018 on pages 48 and 49 of the Detail which explicitly refer to the Grodack litigation as well as a miscellaneous Grodack entry on May 21, 2018, which cumulatively account for 2.5 hours billed, all attributable to Attorney Taroli. (*Id*. at 49-50). There was reference to the Gardner litigation on May 25, 2018, with an entry accounting for .3 hours as well as two entries on April 30, 2019 accounting for an additional .7 hours, all attributable to Attorney Taroli. (*Id*. at 79). There were then two more miscellaneous references to the purchase of West Shore Lots on March 29, 2019 and July 18, 2019 which both accounted for .6 hours, both entries being attributable to Attorney Taroli. (*Id*. at 76; Docc 133-1 Ex. D at 110). I have further deducted 2.3 hours relating to an entry on June 6, 2018 for work done by an unknown associate which was billed to the Defendants. (Doc. 133-1 Ex. D at 105).

As such, taking into account Plaintiffs' objections, I have tallied the potential billable hours from the records, with reductions for irrelevant information as 1125.80. Attorney Gawlas accounts for 660.30 of these hours, Attorney Taroli accounts for 221.90 of these hours, Associates Taroli and Gawlas account for 107.90 of these hours, Paralegal Chvotzkin

accounts for 89.40 of these hours, and Paralegal Garrity accounts for 46.30 of these hours. These hours will be billed out at the reasonable, courtesy-reduced rates described above.

**ii. Reduction in Award Based on Counterclaim**

Plaintiffs further claim that the fees award should be reduced to the extent the Plaintiffs prevailed on the counterclaim, or, to the extent that the Plaintiffs are an innocent party to the dispute. (Doc. 128 at 15, 19). Defendants respond that the time spent on the counterclaim, was minimal, and was nonetheless integrally related to the suit such that, as the prevailing party, they should be fully compensated for their time. (Doc. 133 at 4-6, 11-12).

Where time is expended on matters "unrelated to the relief ultimately obtained," it is within a district court's discretion to disallow attorneys fees for time spent on such matters. *See Rode*, 892 F.2d at 1186 (citing *Institutionalized Juveniles*, 758 F.2d at 920 (3d Cir. 1985)). However, just because a counterclaim is unsuccessful, does not mean that it is unrelated, and therefore uncompensable. *See Schlier v. Rice*, 2009 WL 5182164, at *6 (M.D. Pa. 2009) (holding that unsuccessful, but related motions were fully compensable); *see also Planned Parenthood of Central New Jersey v. Attorney General of State of New Jersey*, 297 F.3d 253, 271 (3d Cir.2002) (affirming award of attorneys fees for summary judgment motion that was never accepted for filing or considered on the merits because such motion was necessary and useful to the suit).

As has been discussed, the Defendants are the prevailing party despite their counterclaim, because of how tied the counterclaim was to the issues in the litigation and because the trespass counterclaim arose naturally within the context of the injunctions sought against the Defendants. To this same end, the counterclaim was dismissed by the parties because the Defendants successfully defended against the related claims.

Therefore, because the counterclaim involved issues related and relevant to the matter and because it is within my discretion to award fees for unsuccessful, but related, aspects of a claim, I will not adjust the lodestar downward based on the dismissed counterclaim.

### c. Lodestar calculation

First reducing Attorney Gawlas' hours from 664.40 to 660.30 hours, as indicated above, at a rate $275 hourly, he would be eligible for $181,582.50 in fees. Reducing Attorney Taroli's hours similarly, at a rate of $285 hourly, he would be eligible for payment on 221.90 hours for a total of $63,241.50. Associates Taroli's and Gawlas' hours have not been reduced, and, at a rates of $175 hourly, are eligible for $18,882.50 in fees for 107.90 hours worked. Finally, paralegals Chvotzkin and Garrity are eligible for rates of $100 and $110 hourly, for 89.40 and 46.30 hours worked, respectively, for totals of $8940 and $5093. These total fees would add up to $277,739.50, which, after the 6.4% courtesy reduction, would equal $259,964.20 in fees. However, despite this calculation, RJ&G lawyers only request $239, 649.61 in fees. (*See* Doc. 133-2 (Butler Declaration)). This difference in calculations can be attributed to RJ&G's internal reduction for matters not relevant to West Shore, which totaled $64,995.62 and included matters both included and not included on the Detail, but for which RJ&G did not provide specific hours deducted. Further, RJ&G deducted another $5,386.61 from their fees for matters relating to the Grodack litigation, the Keystone Condemnation, and acquisition of West Shore land. (*See* Doc. 133 at 9; 133-2). I, however, only found $4638 in such fees as indicated above. Given that the Detail lists all billable hours and that Plaintiffs' specific objections only serve to reduce those hours to a fee amount still in excess of RJ&G's request, I believe it appropriate to grant RJ&G their full fees requested in the amount of $239,649.61.

Then reducing Attorney Profita's hours by 25.5 for unrelated and overbilled matters, he is eligible for 103.2 hours at $285 hourly for a total of $29,554.50 in fees. Attorney Waldron will get his full award of $2,000 for 10 hours worked at $200 hourly. This brings the total fee award to $271,204.11.

"Once the lodestar is calculated, 'the court has discretion to adjust the fee for a a variety of reasons, most notably the results obtained by the [prevailing party.]'" *Borrell*, 207 F.supp.3d at 522 (quoting *J.S. ex rel. Snyder v. Blue Mountain School Dist.*, 2014 WL 1321116, at *2 (M.D. Pa. 2014) (internal citations omitted) ("Snyder")). "The court can adjust

the lodestar downward if the lodestar is not reasonable in light of the results obtained." *Rode*, 892 F.2d at 1183. In determining whether the lodestar is excessive, the Court has emphasized evaluating the degree of success obtained by the prevailing party. *Souryavong* 159 F.Supp.3d at 539-540 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)).

Here, I do not find that a downward adjustment of the lodestar amount is warranted. While, the Defendants stipulated dismissal of their counterclaim could warrant a reduced fee based on degree of success obtained, because the counterclaim was related to the Plaintiffs claim, which the Defendants prevailed on, and because this claim was abandoned as soon as the Motion for Summary Judgment was granted there will be no further reduction in fees. *See Moffitt*, 2017 WL 319154, at *15 (holding downward adjustment unnecessary despite only partial success). I further find all the other fees charged reasonable.

## 2. Costs

Defendants, as the prevailing party, are also entitled to an award of reasonable costs. *Souryavong*, 159 F.Supp.3d at 542; *Borrell*, 207 F.Supp.3d at 523. These costs must be "necessary and properly documented." *Borrell,* 207 F.Supp.3d at 523. These costs include"filing fees, postage, photocopies and travel." *Id*. Moreover, Plaintiffs have presented no specific objections to costs. *See Rode*, 892 F.2d at 1183.

Here Defendants seek $11,179.82 in costs, of which, $781.06 is requested by Attorney Profita and $10,398.76 is requested by RJ&G. Both Attorneys have documented their requests for costs with invoices and time details from their firms. (*See* Docs 133-1 Ex. E-F; 122-3 Ex. C). Because Plaintiffs do not object to any of the costs, and because they are appropriately documented and represent typical costs accrued in such an action, $11,179.82 will be awarded in costs. *See Arlington*, 2016 WL 3522964, at *13-14 (awarding full costs to party, including costs for unsuccessful motions).

### C. Staying Application

Plaintiffs then contend that, in my discretion, I should stay the determination of this fee application pending the outcome of the Plaintiffs' appeal in this matter (*See* Doc. 128 at 20-22; Doc. 115 (Notice of Appeal)) and even consolidate this matter with the pending ALO

litigation appeal (*see Dring et al v. Ariel Landowners, Inc.*, 3:15-cv-00478, Doc. 88 (Notice of Appeal)), which also has an outstanding attorney fee application but which, as discussed, concerns different parties under the Agreement.  (*See* Doc. 128 at 20-22); *see also Dring v. Ariel Landowners, Inc.*, 2019 WL 3798408 (3d Cir. 2019) (affirming district court's dismissal on Summary Judgment).  The Plaintiffs admit that it is in my discretion to rule on an application for attorneys' fees pending appeal, and believes that it would be the judicially economic option for me to stay the ruling considering the judgment could be overturned. (*Id*.).  Moreover, because the two pending actions involve similar issues and similar parties, the Plaintiffs believe that the overlap warrants joint consolidation of the matters, specifically the attorneys' fees applications.  (*Id*.).

The Defendants contend that "other than the Court's unappealed determination that ALO breached the settlement agreement, the outcome of the ALO action has no relevance to an award of attorneys' fees and costs to Dring/Asaro as the prevailing parties in this action." (*See* Doc. 133 at 12-13).  The Defendants further contend that, should I stay the determination of the Application, Plaintiffs should be required to post a bond for the potential fees. (*Id*.).

"The weight of authority says that the usual course for Courts is to consider fees 'promptly after the merits decision rather than stay [fee petitions] until resolution of appeal.'" *McLaughlin v. Fisher*, 2008 WL 4210475, at *2 (M.D. Pa. 2008) (quoting *In re Unisys Corp. Retiree Medical Benefits ERISA Litigation*, 2007 WL 4287393, at *2 (E.D. Pa. 2007)); *see also Borrell*, 207 F. Supp.3d at 505-06 (M.D. Pa. 2016) (denying request to stay fee motion pending appeal).  There is no compelling reason to upset the normal course of conduct of the Court in this case and, as such, I will not stay the application.  *See Guarnieri v. Borough*, 2010 WL 3447752, at *2 (M.D. Pa. 2010) (finding that party failed to meet the burden necessary to justify a stay).

As for Plaintiffs' request to consolidate cases, the Plaintiffs admit that "both actions address different issues, claims and different sections of the Settlement Agreement and deal with different parties." (Doc. 128 at 22).  The Defendants then further contend, and I agree,

27

that the billing in this case is not duplicative of the other litigation, and, as shown above, the Defendants will not be compensated for work attributed to other litigation. (*See* Doc. 133 at 12). Further, the outstanding appeal in the ALO litigation has been fully resolved and is irrelevant to this action. Because these are different actions involving different claims and different parties and because it has not been shown that ruling on this Application will risk duplicative billing, I will not consolidate the cases with respect to fee consideration.

### D. Recovery of Third Party Payor

Plaintiffs then contend that attorneys' fees paid by Defendants' father, Joseph Asaro, cannot be recovered by the Defendants as it would present them with a windfall considering they have not had to personally pay for their representation. (Doc. 128 at 22-24). Plaintiffs further contend that there is no evidence that the Defendants have committed themselves to paying Joseph Asaro back for his expenditures on their behalf. (*Id*.).

The Defendants respond that "payments from a collateral source shall not diminish the damages otherwise recoverable from a wrongdoer," and, as such, their recovery should not be diminished because the Defendants' father paid for the litigation expenses. (*See* Doc. 133 at 13-16 (quoting *Johnson v. Beane*, 664 A.2d 96, 100 (Pa. 1995)). They further contend that when faced with the option to give a party a windfall or relieve the "wrongdoer" from the burden of payment, I should award the windfall. (*Id*.). Defendants further filed declarations asserting that Joseph Asaro acted as Defendants' agent and that the Defendants have agreed to reimburse Joseph Asaro for his expenditures. (*Id*.; *see also* Docs. 133-6-8).

"As a general rule, each party must pay his or her own counsel fees unless a statute provides otherwise." *Gardner v. Clark*, 349 Pa. Super. at 302. However, "the legislature has not made an award of reasonable counsel fees contingent upon an obligation to pay counsel fees by the prevailing party." *Id*. The prevailing party can then still be awarded legal fees where they were represented pro bono or by a third party legal services company. *Id*. at 302-03; *see also Johnson v. 2nd Nat. Fund Corp.*, 515 F. Supp. 1380, 1381-82 (E.D. Pa. 1981). Moreover, consistent with the collateral source rule, I will avoid rewarding a losing

party simply because the prevailing party has received some payment from a collateral source. *See Johnson*, 664 A.2d at 100-01. Courts in other jurisdictions have also ruled squarely on this paint, saying that the law, in that jurisdiction, "did not require, as a condition precedent to an award of attorney's fees, that the prevailing party actually paid for the attorneys' fees incurred during the course of litigation." *Illinois Nat. Ins. Co. v. Wyndham Worldwide Operations, Inc.*, 2011 WL 1078006, at *2 (D.N.J. 2011).

Regardless of the arrangement between the Defendants and Joseph Asaro, because the Plaintiffs should not be relieved from the obligations and because litigation fees may be financed by a third party, the Defendants will be entitled to recover attorneys fees in this action regardless of their third party financing.

## E.    Recovery of Ongoing Fees

Plaintiffs contend that, even if Defendants are entitled to fees, they are not entitled to those fees spent "preparing and litigating" their fee petition because "such efforts are directed solely to the benefit of the attorney and not the client." (*See* Doc. 128 at 24-26). The Defendants contend, however, these fees are regularly included in fee awards and are generally considered attributable to the client. (Doc. 133 at 16-17). Specifically, the Defendants contend that the cases the Plaintiffs cite refer to attorneys who go beyond the typical bounds of their duties. (*See id*.).

In awarding attorneys' fees, the prevailing party is entitled to both the time spent preparing the fee petition as well as the time spent litigating the petition. *See Souryavong*, 159 F.Supp.3d at 538 (M.D. Pa. 2016); *see also Planned Parenthood of Cent. New Jersey*, 297 F.3d at 268-69. "Pennsylvania courts have carved out a narrow exception to this general rule, concluding that an attorney may not recover fees for time spent preparing and litigating a fee petition when such efforts are directed solely for the benefit of the attorney and not the client." *Polselli v. Nationwide Mut. Fire Ins. Co.*, 126 F.3d 524, 538 (3d Cir. 1997). This narrow exception was found to be applicable specifically in a situation where an attorney pursued statutory fees after being denied, by law, a contingent fee he agreed to with his client. *See Weidner v. Workmen's Comp. Appeal Bd.*, 442 A.2d, 245 (Pa. 1982). In

*Weidner*, regardless of the attorney's pursuit of statutory fees, the client had no obligation to pay his attorney due to the previous determination that the client was not responsible for the contingent fee. *Id*. Attorneys therefore may not recover fees for preparing and litigating a fee petition when the client has no "material interest in the fee litigation." *Polselli*, 126 F.3d at 538 (citing *Milton S. Hershey Med. Ctr. v. Workmen's Comp. Appeal Bd.*, 659 A.2d 1067, 1070-71 (Pa. Comm. Ct. 1995). A client has a "material interest in the outcome of the fee proceedings when those proceedings could affect the client's duty to pay her attorney." *Id*.

Here, the Defendants regularly receive bills from the Attorneys and are expected to pay all of the costs depending upon the resolution of this fee litigation. To this end, in opposite to *Weidner*, the Defendants have a material interest in the current actions of their attorneys because failure of the fee application will result in full payment of the costs of litigation. *See Allums* v. W.C.A.B. (Westinghouse Elec. Corp.), 532 A.2d 549, 552 (Pa. Comm. Ct. 1987) ("Therefore, if Claimant does not defend that award of fees on appeal and that award is reversed, the money to pay his attorney will come out of claimant's own pocket").

To the extent that Plaintiffs' claim that the third party financing moots the Defendants' material interest, Dring and Asaro have supplied affidavits stating their intent to pay back Joseph Asaro (Docs. 133-6-8). Moreover, as discussed above, the presence of a third party financier does not necessarily alter the awarding of attorneys' fees, especially where the attorney is not pursing his own interests, but is still rather pursuing typical litigation fees otherwise billable to his client.

### F. Necessity of a Hearing

Plaintiffs finally contend that due to the complexity of the case, I should hold a hearing to resolve any factual issues. (*See* Doc. 128 at 27). The Defendants contend that this hearing is unnecessary as such hearings are only necessary to determine "disputed questions of fact." (*See* Doc. 133 at 17-19 (quoting *Blum v. Witco Chem Corp.*, 829 F.2d 367, 377 (3d Cir. 1987)).

"'Many fee applications are decided on the basis of affidavits without a need for a

hearing." *Mulero v. Walsh*, 2018 WL 1084235, at n. 16 (M.D. Pa. 2018) (quoting *Blum*, 829 F.2d at 377); *see also Snyder*, 2014 WL 1321116, at *4. "A hearing must be held only where the court cannot fairly decide disputed questions of fact without it." *Blum*, 829 F.2d at 377.

The affidavits in this case combined with the exhibits detailing the fees and the briefs submitted by the parties contain sufficient undisputed factual information to resolve this application without an evidentiary hearing.

### III. Conclusion

Because Defendants have not demonstrated their entitlement to all fees and costs as requested, Defendants' Application for Reasonable Attorneys' Fees and Costs (Doc. 119) shall be granted in part and denied in part. Defendants shall be awarded $271,204.11 in attorneys' fees and $11,179.82 in costs, for a total of $282,383.93.

An appropriate order follows.


Date: October 17th, 2019                                    /s/ A. Richard Caputo
                                                           A. Richard Caputo
                                                           United States District Judge