## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARJORIE M. GILLESPIE, *et al.*, | No. 3:15-CV-00950 |
| Plaintiffs, | (Chief Judge Brann) |
| v. | |
| LORI DRING and NANCY ASARO, | |
| Defendants. | |

## MEMORANDUM OPINION

### OCTOBER 27, 2021

Pending before the Court is Plaintiffs' motion for relief from judgment under Federal Rule of Civil Procedure 60.  Because this Court can exercise its power to dismiss a nondiverse party and maintain jurisdiction, their motion is denied.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

For decades, the parties have fought over property rights along the western shore of Lake Ariel, located in Wayne County, Pennsylvania.  This action, which has been litigated for more than six years, is simply the latest in a series of disputes.  Plaintiffs are 117 individual property owners.  Defendants Lori Dring and Nancy Asaro are two siblings who own a strip of land less than three feet wide (the "West Shore Strip"), that runs between Plaintiffs' properties and the lake itself.  In other words, Plaintiffs cannot access Lake Ariel without either crossing over the West Shore Strip or going around it.

In past litigation, the parties entered into a settlement.  Then, Plaintiffs alleged that Defendants failed to grant them an easement as required by the earlier settlement agreement.  Thus, they sued for breach of contract and sought a prescriptive easement over the West Shore Strip.

My late colleague, the Honorable A. Richard Caputo, was initially assigned the matter.  In 2018 and 2019, Judge Caputo entered judgments in favor of Defendants and closed the case.[1] Plaintiffs took their appeals to the United States Court of Appeals for the Third Circuit.[2]

At some point during the pendency of the appeals, Plaintiffs retained additional counsel.  It appears that during counsel's review of the record, they realized that this Court may never have had subject-matter jurisdiction over the case because one of the Plaintiffs was not diverse from Defendants.  Therefore, in October 2020, Plaintiffs filed a motion for relief from judgment under Rule 60, arguing that all of Judge Caputo's rulings are void as a matter of law.[3]  Plaintiffs have come to this Court asking me to effectively unwind the last six years of litigation and dismiss the matter in its entirety.

---

[1]   Specifically, Judge Caputo granted Defendants' motion for summary judgment and granted in part and denied in part their application for attorneys' fees and costs.

[2]   The matter was reassigned to me in March 2020, after Judge Caputo's death.

[3]   At around the same time, Plaintiffs asked the Third Circuit to stay the pending appeals until this Rule 60 motion was resolved. The Court of Appeals initially denied that request but reconsidered upon motion by Plaintiffs.

The Court received papers from the parties, and then asked for supplemental briefing.  The parties also appeared for oral argument on the motion in July 2021.  After argument, I issued a statement pursuant to Rule 62.1, informing the parties and the Court of Appeals that the pending motion raised a substantial issue.  I further noted that this Court stood ready to resolve the motion should the Court of Appeals remand for that purpose.  On October 13, 2021 the Third Circuit remanded the matter for the limited purpose of resolving the Rule 60(b) motion, and that motion is now properly before this Court.

While there may not have been subject-matter jurisdiction at the commencement of this lawsuit as required by the time-of-filing rule, I will exercise this Court's power to dismiss the nondiverse party from the action and preserve jurisdiction.

## II.   DISCUSSION

Federal courts have limited jurisdiction, and Federal Rule of Civil Procedure 60 lets a party seek relief from a final judgment, order, or proceeding made in the absence or excess of that jurisdiction.[4]  The rule provides that "[o]n motion and

---

[4]   *See, e.g., Farm Credit Bank of Baltimore v. Ferrera-Goitia*, 316 F.3d 62, 67 (1st Cir. 2003) ("There are only two sets of circumstances in which a judgment is void (as opposed to voidable). The first is when the rendering court lacked either subject matter jurisdiction or jurisdiction over the defendant's person. The second is when the rendering court's actions so far exceeded a proper exercise of judicial power that a violation of the Due Process Clause results.") (internal citations omitted); *Alston v. Kean University*, 604 Fed. Appx. 216, 217 (3d Cir. 2015 ("A judgment may be void if the court that rendered it lacked jurisdiction over the subject matter or the parties, or entered a decree which was not within the powers granted to it by law.").

just terms, the court may relieve a party or its legal representative from a final

judgment, order, or proceeding for the following reasons. . . (4) the judgment is

void . . .”  The Court must relieve a party from a judgment if that judgment is void,

because a “void judgment is a legal nullity.”[5]  As the parties both note, a judgment

is void when a court lacked subject-matter jurisdiction over the case.[6]

Although the use of the word “may” in the rule suggests that relief is not

mandatory, case law has repeatedly established that courts do not have any

discretion when it comes to relief from void judgments.[7]  And there is no time limit

for a party to file a motion under Rule 60(b)(4).  A party never waives or loses the

right to challenge whether subject-matter jurisdiction exists; subject-matter

jurisdiction may even be “challenged for the first time on appeal.”[8]  That keeps

with the logic of subject-matter jurisdiction more broadly, because “no passage of

time can transmute a nullity into a binding judgment.”[9]

In short, Plaintiffs’ argument is that when this action was filed, the Court did

not have jurisdiction over the case because complete diversity did not exist.

Therefore, Plaintiffs say, the judgments entered against them are void and the

---

[5]   *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270 (2010).
[6]   *See, e.g.*, *Elliott v. Peirsol’s Lessee*, 26 U.S. 328, 340 (1828) (explaining that judgments entered without subject-matter jurisdiction “are not voidable, but simply void”).
[7]   *See* 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2862 (3d ed.) (“There is no question of discretion on the part of the court when a motion is under Rule 60(b)(4).”).
[8]   *In re Kaiser Grp. Int’l Inc.*, 399 F.3d 558, 565 (3d Cir. 2005).
[9]   *U.S. v. One Toshiba Color Television*, 213 F.3d 147, 157 (3d Cir. 2000).

matter must be dismissed.  Defendants acknowledge that diversity did not exist at the start of the suit but point out that it did by the time an amended complaint was filed, and the Court should calculate diversity as of that date.  They also argue that even if diversity does not currently exist, this Court can dismiss the diversity-destroying party and preserve the last six years of litigation.

### A.    Diversity Jurisdiction Generally

"The principal federal statute governing diversity jurisdiction, 28 U.S.C. § 1332, gives federal district courts original jurisdiction of all civil actions between ... citizens of different States where the amount in controversy exceeds $75,000."[10] The amount in controversy requirement is not in question here; instead, the issue before the Court deals with the diversity of citizenship requirement.  For "over two hundred years," courts have interpreted the statute to demand complete diversity.[11] If any plaintiff and any defendant are citizens of the same state, diversity is incomplete and a federal court does not have jurisdiction.[12]

### B.    The Relevant Diversity Facts

The parties agree that when this action was filed, one of the plaintiffs – Robert J. Clauss – was a citizen of New Jersey.  Dring and Asaro were also

---

[10]  *Lincoln Ben. Life. Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (internal quotation marks omitted).

[11]  *Id.*

[12]  Assuming the claim is brought under 28 U.S.C. § 1332 and does not otherwise invoke federal question jurisdiction.

citizens of New Jersey.  Thus, complete diversity did not exist when the suit began in May 2015.

Within the first few months of litigation, Defendants Dring and Asaro moved to dismiss.[13]  Judge Caputo granted that motion in part but allowed Plaintiffs to file a second complaint.[14]  They filed in November 2015.[15]  As fate would have it, by the time Plaintiffs filed that second complaint, Clauss had become a citizen of Pennsylvania.

This is where Defendants' first argument comes into play.  While they acknowledge that diversity was lacking at the commencement of the action, Defendants ask the Court to assess diversity jurisdiction as of the filing date of the second complaint.

Now, a moment to discuss the somewhat unusual posture of this motion. More often, it is a plaintiff who seeks to invoke the Court's jurisdiction, and a defendant who tries to point out any defects.  But here, it is the Plaintiffs who have brought the issue of diversity to my attention, and the Defendants who aim to preserve jurisdiction and Judge Caputo's rulings.  It is not lost on the Court that finding no subject-matter jurisdiction would result in unwinding more than a half-decade of litigation and substantial investments of time and money.  Yet that

---

[13]  Doc. 6.
[14]  Doc. 16.
[15]  Doc. 22.

concern is secondary to the issue of whether this Court has the constitutional authority to hear the matter at all.

The first question before the Court, then, is whether diversity jurisdiction is measured from the time the action is brought, or if it is evaluated as of the date the operative pleading was filed. If diversity is assessed based on the filing of the action, this Court does not have subject-matter jurisdiction. If diversity is based on the second complaint, then it does.

### C.   The Filing of the Action Establishes Diversity for the Purpose of Subject-Matter Jurisdiction

The general principles of diversity jurisdiction follow a well-traveled path. "It has long been the case that the jurisdiction of the court depends upon the state of things at the time of the action brought."[16] Using the "time-of-filing" rule, a Court "measures all challenges to subject-matter jurisdiction premised upon diversity of citizenship against the state of facts that existed at the time of filing."[17] This rule has "a pedigree of almost two centuries."[18]

A straightforward application of the time-of-filing rule dictates that diversity is assessed by the state of the world at the time the action is commenced. The parties agree that when the action was filed, complete diversity did not exist. So this Court did not have subject-matter jurisdiction over the action. But Defendants

---

[16]   *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570 (2004) (quoting *Mollan v. Torrance*, 22 U.S. 537, 539 (1824)) (internal quotation marks omitted)

[17]   *Id.* at 571.

[18]   *Id.* at 582.

point out the fact that by the time the second complaint was filed, Clauss had become a citizen of Pennsylvania.  Thus, they ask the Court to evaluate diversity jurisdiction as of the day the second complaint was filed.

Defendants claim that the Supreme Court of the United States has "long recognized" that "untimely compliance" with the requirement of complete diversity can be sufficient.[19]  Citing *Grupo Dataflux v. Atlas Global Group, L.P.* for this proposition, they fail to mention that this language comes from the dissenting opinion, not the majority.  And the cases Defendants cite to in support of this argument are readily distinguishable because some do not deal specifically with the jurisdictional defect of diversity,[20] and because others simply acknowledge one of the long-established exceptions to the time-of-filing rule.[21]  As the majority in *Grupo* noted, the cases cited by the dissent in that case (the same ones cited by Defendants here) all "involved a change of party."[22]  The dissent in *Grupo* did not identify "a single case in which the Court held that a single party's postfiling change of citizenship cured a previously existing jurisdictional defect."[23] Neither have Defendants.

---

[19]   Doc. 161 at 19.

[20]   *See, e.g.*, *Caterpillar Inc. v. Lewis*, 519 U.S. 61 (1996) (addressing the implication of failure to comply with the statutory requirements of the removal statute).

[21]   *See, e.g.*, *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 827 (1989) (holding that "a court of appeals may grant a motion to dismiss a dispensable party whose presence spoils statutory diversity jurisdiction").

[22]   *Grupo*, 541 U.S. at 575 n.5.

[23]   *Id.*

Defendants rely heavily on the Supreme Court's statement in *Rockwell Intern. Corp. v. United States*, that "when a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction."[24]  But *Rockwell* was a case that involved the False Claims Act and thus federal question jurisdiction.  And since *Grupo* and *Rockwell* were decided, many courts have made that difference key. The time-of-filing rule plays an especially prominent role in diversity jurisdiction cases, as several circuits have acknowledged in recent years:

- The time-of-filing rule "was developed [] in cases where diversity jurisdiction is the only basis for federal subject matter jurisdiction. In such cases, the rule plays a vital role: if diversity of citizenship did not exist when the action was filed, federal court jurisdiction over the case would never have attached, and for a federal court to take any action in the case would be 'an unconstitutional usurpation of state judicial power.'"[25]

- "The time-of-filing rule is a judge-made doctrine, supported in the diversity context by sound policy considerations. In diversity cases, litigants are free to move between the states; no court may enjoin a civil litigant from changing her citizenship solely because she filed a

---

[24]   549 U.S. 457, 473-74 (2007).

[25]   *Wright v. Musanti*, 887 F.3d 577, 584 (2d Cir. 2018) (quoting 13 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3522 (3d ed.)).

complaint in federal court or had the misfortune to be sued. Thus, reassessing diversity jurisdiction after a complaint is filed and served would waste judicial resources and encourage manipulation."[26]

- "The letter and spirit of the rule apply most obviously in diversity cases, where the rule originated, and where heightened concerns about forum-shopping and strategic behavior offer special justifications for it."[27]

Case law is replete with courts following the instruction that diversity is determined as of the date that the action was filed, not any other date. The Third Circuit has acknowledged the same repeatedly.[28]

Admittedly, the introduction of a new complaint does complicate the matter somewhat, because courts have recognized that a new pleading (whether amended or supplemental) can sometimes cure defective allegations in an earlier one.[29] But these cases simply do not deal with diversity of citizenship; they address other

---

[26]   *Iowa Tribe of Kansas and Nebraska v. Salazar*, 607 F.3d 1225, 1233 (10th Cir. 2010) (internal citations omitted).

[27]   *Connectu LLC v. Zuckerberg*, 522 F.3d 82, 92 (1st Cir. 2008) (internal citations omitted).

[28]   *See, e.g.*, *Lincoln Ben. Life. Co. v. AEI Life, LLC*, 800 F.3d 99, 104 n.9 (3d Cir. 2015) ("Although challenges to subject-matter jurisdiction may be raised at any time, whether diversity exists is determined by the citizenship of the parties <u>at the time the action is filed</u>.") (emphasis added). *See also Strausbaugh v. Greentree Servicing LLC*, --- Fed. Appx. ---, 2021 WL 2103602 (3d Cir. 2021) ("For diversity jurisdiction to lie, the plaintiff cannot, at the time the action is filed, be a citizen of the same state as any of the defendants.").

[29]   *See, e.g.*, *T Mobile Ne. LLC v. City of Wilmington*, 913 F.3d 311 (3d Cir. 2019) (addressing ripeness); *Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036 (9th Cir. 2015) (addressing federal-question jurisdiction and standing); *see also G&E Real Estate, Inc. v. Avison Young-Washington, D.C., LLC*, 168 F. Supp. 3d 147 (D.D.C. 2016). While *G&E* was a diversity jurisdiction case, neither diversity of citizenship nor the amount in controversy were at issue; instead, the district court assessed which complaint standing should be based on.

issues of subject-matter jurisdiction, such as federal question jurisdiction and Article III justiciability doctrines.[30]  The Supreme Court has been clear that with few exceptions, diversity is measured from the date of the filing of the action, not of the operative pleading, and lower courts have followed suit.[31]  Defendants have not identified a single case on point that supports their position, while this Court has reviewed a number that undercut their argument.

In various districts, trial courts have repeatedly affirmed that a party's "post-filing change in citizenship" cannot "cure a lack of subject-matter jurisdiction that existed at the time of filing in an action premised upon diversity of citizenship."[32]  For example, in a recent Eastern District of Missouri case involving "a change in citizenship by an original party after commencement but before amendment in a diversity jurisdiction case," the court held that the parties were "bound by their citizenship as it existed at the *commencement* of the case" and found no subject-matter jurisdiction.[33]  That is what we have here.  Clauss changed citizenship after the action was filed but before the complaint was amended.  Those facts cannot

---

[30]  *See, e.g., Connectu LLC v. Zuckerberg*, 522 F.3d 82, 92 (1st Cir. 2008) ("[C]ourts have been careful not to import the time-of-filing rule indiscriminately into the federal question realm.").

[31]  *See, e.g.*, *Chevaldina v. Katz*, 787 Fed. Appx. 651, 652 (11th Cir. 2019) ("Chevaldina's second amended complaint alleged she was domiciled in Indiana and a citizen of Indiana at the time she filed the second amended complaint, but did not affirmatively allege she was domiciled in Indiana at the commencement of the action. Because diversity of citizenship must exist at the time an action is filed in order to be proper and events occurring after the filing of an action cannot create or destroy diversity jurisdiction, the district court did not err in dismissing Chevaldina's second amended complaint.").

[32]  *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 568 (2004).

[33]  *SEMO Servs., Inc. v. BNSF Ry. Co.*, 2020 WL 2104755 at *4 (E.D. Mo. May 1, 2020) (emphasis in original).

support diversity jurisdiction, and the holding in *SEMO* was not an outlier.  Rather, the findings in other cases also line up with the dictates of the Supreme Court and the Third Circuit.[34]

Defendants' argument further fails both because the absence of relevant case law in their briefs speaks loudly and because the policy implications of requiring a court to reassess diversity with every iteration of a complaint are undesirable.[35] The Court recognizes that some of the policy rationales behind the time-of-filing rule are not necessarily at play in the instant action, and that Plaintiffs are currently benefiting from a jurisdictional defect of their own making.  While admittedly, almost every rule is susceptible to some amount of gamesmanship by litigants, "the policy goal of minimizing litigation over jurisdiction is thwarted whenever a new exception to the time-of-filing rule is announced."[36]

---

[34]  *See Reyes v. Sprint Holdings, LLC*, 2018 WL 3369672 at *4 (E.D. N.Y. July 9, 2018) ("Plaintiff alleges in the Amended Complaint that he is now a citizen of South Carolina. Even if true, domicile is determined at the time of the filing of the original Complaint."); *Williams v. Cost-U-Less, Inc.*, 2013 WL 1901393 at *3 (D. V.I. May 8, 2013) ("As Plaintiff has acknowledged and the Court has found, Defendant Ramsey's citizenship in the Virgin Islands at the time the original Complaint was filed defeated diversity jurisdiction.  Even if Plaintiff plans to file a Second Amended Complaint, Plaintiff has not demonstrated to the satisfaction of the Court . . . how he would overcome that jurisdictional obstacle."); *BI3, Inc. v. Hamor*, 2011 WL 5023394 at *5 (N.D. Ill. Oct. 20, 2011) (rejecting defendants' argument that "the time-of-filing rule does not salvage diversity jurisdiction for the plaintiffs' amended complaint because [] complete diversity disappeared before they filed the amended complaint," because this "novel construction of the time-of[-]filing rule would require a court to reassess diversity jurisdiction every time an amended complaint is filed in a diversity suit.").

[35]  *See BI3, Inc.*, 2011 WL 5023394 at *5.

[36]  *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 580-81 (2004). *See also Rodriguez-Diaz v. Sierra-Martinez*, 853 F.2d 1027, 1029 (1st Cir. 1988) ("It is the domicile at the time suit is filed which controls, and the fact that the plaintiff has changed his domicile with the purpose of bringing a diversity action in federal court is irrelevant."); *Peterson v. Allcity Ins. Co.*, 472 F.2d 71, 74 (2d Cir. 1972) ("So long as she intended to make North Carolina her home

Nor does relation-back help Defendants as much as they think.[37]  The Third Circuit has repeatedly instructed that relation-back "may be used to cure defects in jurisdictional allegations."[38]  But the problem is not that the allegations are defective, insofar as diversity is concerned.  The *facts* themselves are defective.  Clauss was a citizen of New Jersey when the action was filed.  Relation-back would allow a party to plead that diversity existed, but it would need to show that diversity existed at the time the action was filed, because jurisdiction is based on the state of the world on that date.[39]  This is true whether or not there is a second or third complaint filed that will control the claims of the litigation.

The Supreme Court has made clear its dedication "to the time-of-filing rule regardless of the costs it imposes," such that this Court must act accordingly.[40]  There is no diversity jurisdiction because when the action was filed, Clauss was not diverse from Dring and Asaro.

---

at the time she moved there and had no intention then of moving elsewhere, her motive in moving, even if for jurisdictional purposes, is not our concern.").

[37]  *See, e.g.*, *LeBlanc v. Cleveland*, 248 F.3d 95, 99-100 (2d Cir. 2001) ("We hold that an amendment to allege diversity jurisdiction relates back under Rule 15 of the Federal Rules of Civil Procedure, and therefore we assess [the plaintiff's] citizenship at the time the complaint was first filed.").

[38]  *T Mobile Ne. LLC v. City of Wilmington*, 913 F.3d 311, 328 (3d Cir. 2019).

[39]  *See Schiano v. MBNA*, 2019 WL 3562090 at *1 (D.N.J. Aug. 6, 2019) ("Diversity jurisdiction must have been present at the time of filing of the case.");  *Archer v. Nichols*, 2019 WL 3308243 at *5 (M.D. Fla. Mar. 6, 2019) ("Archer's allegation in his Response and Motion to Amend that he is a citizen of California—more than two years after the case was initiated— does not inform the Court of Archer's citizenship at the time he filed the first complaint on October 31, 2016."); *Dumann Realty, LLC v. Faust*, 2012 WL 6135020 at *1 (S.D. N.Y. Dec. 6, 2012) ("Thus, Plaintiffs must enumerate every Member of the LLC as of the original date of this action's filing . . .").

[40]  *Grupo*, 541 U.S. at 571.

### D.  The Court Will Dismiss Clauss from the Action to Preserve Diversity Jurisdiction

At this point, the Court has no subject-matter jurisdiction; I must dismiss the action in its entirety unless some exception to the time-of-filing rule applies. Defendants suggest that one does.  They ask the Court to dismiss Clauss, the party that destroyed diversity.  Federal Rule of Civil Procedure 21 provides that on "motion or on its own, the court may at any time, on just terms, add or drop a party."  Rule 21 "invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time, even after judgment has been rendered."[41]  This "method of curing a jurisdictional defect ha[s] long been an exception to the time-of-filing rule."[42]  "A district court has broad discretion in deciding whether to sever a party pursuant to Federal Rule of Civil Procedure 21."[43]

"Although the district court's authority to dismiss non-diverse parties who are not indispensable derives" from Rule 21, "the primary factors to be considered by the district court in determining whether a party is indispensable are listed in" Rule 19.[44]  Under the Rule 19 analysis, a Court first determines whether a party is "necessary" as conceived by Rule 19(a).  That part of the rule states:

---

[41]  *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989).
[42]  *Grupo*, 541 U.S. at 572.
[43]  *Slater v. Hoffman-La Roche Inc.*, 771 F. Supp. 2d 524, 529 (E.D. Pa. 2011).
[44]  *Field v. Volkswagenwerk AG*, 626 F.2d 293, 297 (3d Cir. 1980) (disagreed with on other grounds by *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826 (1989)).

A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

If the party is necessary, then the Court must ask whether the party is also "indispensable" under Rule 19(b), which further provides:

> If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:
>
> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2) the extent to which any prejudice could be lessened or avoided by:
>
>> (A) protective provisions in the judgment;
>>
>> (B) shaping the relief; or
>>
>> (C) other measures;
>
> (3) whether a judgment rendered in the person's absence would be adequate; and
>
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

If Clauss is necessary and indispensable, the Court cannot dismiss him, which will result in the absence of subject-matter jurisdiction and the dismissal of the case in its entirety.

### 1.    Rule 19(a) Analysis

Plaintiffs note that "[g]enerally, in breach of contract actions, all parties to the contract should be joined."[45]  But as counsel for Plaintiffs acknowledged during oral argument, there does not appear to be any per se rule mandating joinder of all parties to a contract.[46]  Instead, this Court must analyze the Rule 19 factors to determine whether dismissing Clauss is appropriate.[47]  This inquiry must be conducted with sensitivity to the notion that "considerations of efficiency, fairness, and judicial economy weigh against a wholesale dismissal of the action at this stage."[48]  Rule 19(a)(1) is written in the disjunctive.  Thus, if either subsection is met, Clauss is a necessary party.

Beginning with Rule 19(a)(1)(A), I consider whether the Court could grant appropriate and complete relief to the remaining parties without Clauss.  It seems clear that the judgments entered by Judge Caputo would certainly be complete among the remaining parties if I dismiss Clauss.  Counsel for Plaintiff

---

[45]  *Rashid v. Kite*, 957 F. Supp. 70, 74 (E.D. Pa. 1997).

[46]  Although Plaintiffs' reply brief suggested that they were arguing for a per se rule, counsel disclaimed that theory during argument.  *See* Hr'g Tr. 42:19-43:4 (Doc. 170).

[47]  *See Wheaton v. Diversified Energy, LLC*, 215 F.R.D. 487, 491 (E.D. Pa. 2003) ("There is no hard and fast rule that requires all parties to a contract to be joined as parties in a breach of contract suit that is before a federal court sitting in diversity."); *see also Saddler v. AMEC Foster Wheeler Env't & Infrastructure, Inc.*, 253 F.Supp.3d 210, 218 (D.D.C. 2017) (noting that Rule 19 "does not require joinder merely because a case calls for interpretation of an agreement to which a non-party is a signatory").

[48]  *Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 420-21 (3d Cir. 2010) (citing *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 75 (1996)).

acknowledged the same during oral argument.[49]  Therefore, this cannot support a finding that Clauss is a necessary party.

Next, I ask whether dismissing Clauss might either: (1) impair his ability to protect his interest in the claims; or (2) leave an existing party subject to a "substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."[50]  Here, the Court must "take into consideration the effect that resolution of the dispute among those parties before it may have on any absent parties."[51]

First, it seems unlikely that Clauss would somehow be impaired by dismissal.  Plaintiffs assert that adjudication absent Clauss would impair his ability to protect his interests but were not able to identify any specific preclusive effect that a judgment in this case would have on Clauss. Plaintiffs' brief does not deeply engage with this factor, beyond saying that "Mr. Clauss has a strong interest in obtaining a final adjudication" on the claims asserted.[52]  The only argument for preclusion was raised during oral argument and quickly abandoned by Plaintiffs.

But even if they had identified some vague possibility of preclusion, the Third Circuit has explained that the "[m]ere presentation of an argument that issue

---

[49]  Hr'g Tr. 46:5-46:9 (The Court: We look at Rule 19(a)(1)(A).  Why wouldn't the relief ordered be complete among the remaining parties if I did sever [Clauss]?  Mr. Vanaskie:  I think the relief ordered would be completed among the remaining parties if you did sever Clauss.).

[50]  Fed. R. Civ. P. 19(a)(1)(B).

[51]  *Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 316 (3d Cir. 2007).

[52]  Doc. 162 at 10.

preclusion is possible is not enough to trigger" Rule 19.[53]  Instead, "it must be

shown that some outcome of the federal case that is reasonably likely can preclude

the absent party with respect to an issue material to the absent party's rights or

duties under standard principles governing the effect of prior judgments."[54]  There

has been no real showing that Clauss would be precluded from raising any

arguments in a subsequent action.[55]

Additionally, I consider whether dismissing Clauss might leave an existing

party – the remaining Plaintiffs or the Defendants – subject to a "substantial risk of

incurring double, multiple, or otherwise inconsistent *obligations* because of the

interest."[56]  In both briefing and argument, Plaintiffs spoke of the possibility of

inconsistent *judgments*, but there is a difference between inconsistent obligations

and inconsistent judgments or decisions.[57] The "possibility of a subsequent

adjudication that may result in a judgment that is inconsistent as a matter of logic"

---

[53]  *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 409 (3d Cir. 1993).

[54]  *Id.*

[55]  And insofar as the judgment in this action might be considered "persuasive precedent," the Third Circuit has repeatedly rejected the argument that such a ruling impairs a party's ability to protect its interests. *See General Refractories Co.*, 500 F.3d at 317 (citing *Janney*, 11 F.3d at 406).  So to the extent Rule 19's phrasing encompasses anything broader than "principles of issue preclusion," such persuasive precedent does not require joinder. *Janney*, 11 F.3d at 407.

[56]  Fed. R. Civ. P. 19(a)(1)(B)(ii) (emphasis added).  Because of the way Rule 19 is set up, it is unclear whether the Court should consider Clauss an existing party for the purpose of this analysis, such that I must evaluate any prejudice to Clauss under this subsection.  In any event, potential prejudice to Clauss is analyzed under Rule 19(b).

[57]  *See* Hr'g Tr. 44:23-45:5 ("So would he be better off not having a $282,000 attorney's fee award against him? Yes. He would be better off if he didn't have that fees award against him. But he faces the risk of an inconsistent decision. He's got to go back to state court, litigate on his own. The State Court could agree or disagree with Judge Caputo's holding on the release question, for example, and that would be direct prejudice to him.").

does not, on its own, "trigger the application of Rule 19."[58]  Rule 19 "protects against inconsistent obligations, not inconsistent adjudications; under the Rule a person is protected against situations in which there would be two court orders and compliance with one might breach the other."[59]

Dismissing Clauss from this action would not prejudice the other Plaintiffs. Their obligations are independent from his, and their compliance with whatever court order is eventually finalized in this matter likely could not violate whatever court order Clauss might eventually be bound by.  Nor would they be otherwise prejudiced by Clauss going off on his own.[60]  Likewise, the Court considers whether any risk of multiple or inconsistent obligations to the Defendants warrants dismissing the action in its entirety.  I find that it does not.  Defendants note that they are perfectly willing to take on that risk.[61]  As such, there is no reason for the Court to put its thumb on the scale for this factor.[62]

---

[58]  *Field v. Volkswagenwerk AG*, 626 F.2d 293, 301-02 (3d Cir. 1980) (disagreed with on other grounds by *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826 (1989)).

[59]  *Micheel v. Haralson*, 586 F. Supp. 169, 171 (E.D. Pa. 1983).

[60]  Of course, if Clauss is dismissed and the matter remains live pending appeal, Plaintiffs would not receive an automatic do-over in this litigation, but that cannot be the sort of prejudice this Court considers.

[61]  *See* Doc. 161 at 18 ("The only party that may be exposed to the risk of multiple or inconsistent obligations is Asaro/Dring, and they are well within their rights to accept this risk, knowingly, as they would do here, to preserve two decades of litigation and expense.").

[62]  *See, e.g.*, *CP Sols. PTE, Ltd. v. Gen. Elec. Co.*, 553 F.3d 156, 159 (2d Cir. 2009) ("Whatever prejudice to CP Solutions there might be, it is prejudice the plaintiff is willing to bear and therefore should not have troubled the district court.").  The United States Court of Appeals for the Second Circuit discussed prejudice under Rule 19(b), but courts have repeatedly recognized that the analysis of the first 19(b) factor overlaps significantly with the 19(a) analysis. *See Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 320 (3d Cir. 2010) (quoting *Gardiner v. Virgin Islands Water & Power Auth.*, 145 F.3d 635, 641 n.4 (3d Cir. 1998)).

Having reviewed the factors under Rule 19(a), it does not appear that Clauss is necessary to this action.  But admittedly, Rule 19(a)(1)(B) does not impose a necessary level of certainty; it is enough that dismissal *may* impact Clauss's ability to protect his interests or *may* leave an existing party subject to inconsistent obligations.[63]  Therefore, to be sure, I turn to the next step of the analysis – whether Clauss is indispensable under Rule 19(b).

### 2.   Rule 19(b) Analysis

The Rule 19(b) test requires the Court to decide whether, through the lens of "equity and good conscience," the action should proceed without Clauss or be dismissed.  Turning to the first factor, and as previously noted, it is unclear whether any true prejudice would come to Clauss, the other Plaintiffs, or the Defendants from dismissing Clauss.[64]  Plaintiffs assert that when any preclusion principles would impair a party's interests, they should be considered indispensable.[65]  But again, Plaintiffs have not shown that Clauss would be precluded in subsequent litigation.  Their briefing says little else about this factor, and the Court otherwise sees minimal risk of prejudice to Clauss.

Clauss would need to relitigate his claims, true, but that does not appear to prejudice him.  Instead, dismissal would seem to relieve him from what is currently

---

[63] *Rashid v. Kite*, 957 F. Supp. 70, 73-74 (E.D. Pa. 1997).

[64] I simply acknowledge again that the first factor under Rule 19(b) "overlaps considerably with the Rule 19(a) analysis," insofar as it considers the prejudice to the parties. *Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 320 (3d Cir. 2010).

[65] Doc. 162 at 11-12.

a bill approximating $280,000 in attorneys' fees.[66]  And while counsel for Plaintiffs suggested during argument that Judge Caputo made some rulings favorable to Clauss and the other Plaintiffs, it is clear to this Court that on balance, Judge Caputo's holdings benefited Defendants more.[67]  If and when Clauss relitigates, he will either win (in which case he will be in a better position) or he will lose again (and be in a similar position to the other Defendants).

And while Plaintiffs assert that inconsistent holdings might prejudice Clauss, it is unclear that this is even the sort of prejudice that Rule 19 contemplates. Again, inconsistent *holdings* alone are not sufficient to support a finding that a party is indispensable.  As the Eastern District of Pennsylvania noted in *Micheel v. Haralson*, Rule 19 does not mandate joinder of a party simply due to the possibility of "diverse holdings."[68]  Otherwise, the distinction between Rule 19 and Rule 20's permissive joinder would collapse.[69]  Particularly given the independent nature of the claims brought by the various Plaintiffs, there does not seem to be any risk to Clauss that he would suffer any inconsistent obligations as related to his own claims.  He would simply be dismissed from this action and free to pursue his interests as he chooses.

---

[66] The Court acknowledges that the matter is currently on appeal and that Clauss would be unlikely to be responsible for the entirety of that sum.  Of course, as a practical matter, Clauss is unlikely to pay any of this bill.  Either I sever Clauss from the case, or the action must be dismissed in its entirety; it seems he will be released from that obligation in both circumstances.

[67] Indeed, Plaintiffs are the parties who appealed Judge Caputo's holdings.

[68] 586 F. Supp. 169, 171 (E.D. Pa. 1983).

[69] *Id.*

Next, I consider whether the remaining Plaintiffs would be prejudiced by dismissing Clauss.  Although Plaintiffs' brief does not parse out potential prejudice as between the individual Plaintiffs, counsel for Plaintiffs has represented that the only possible prejudice to the other Plaintiffs is the possibility of inconsistent decisions.[70]  But again, inconsistent holdings by themselves do not justify dismissing the action in its entirety.  And finally, Defendants have indicated their willingness to take on whatever risk of inconsistent obligations they may incur, so the Court will not impede their autonomy in this regard.  In sum, the first factor under Rule 19(b) favors dismissing Clauss because none of the parties stand to suffer any significant prejudice if he is removed from the litigation.

Moving to the second factor, the Court has already found that there is no real prejudice to any of the parties if it severs Clauss.  But to the extent there would be any prejudice, the Court acknowledges that there is no obvious way to lessen or avoid that prejudice because Clauss would be dismissed, final judgment has already been entered, and the matter is currently pending appeal.  There is little this Court could do to mitigate any prejudice, if there was any.

I now consider the third factor: the adequacy of the judgment, absent Clauss.  Plaintiffs claim that "a judgment here absent Mr. Clauss would not be adequate, as

---

[70]   *See* Hr'g Tr. 45:11-16 ("Mr. Vanaskie: It only prejudices them by the risk of inconsistent judgments -- inconsistent decisions because Mr. Clauss would now go to the Court of Common Pleas of Wayne County and litigate his claim there. And he could get a result that would be different than the result obtained here. That's the only prejudice I see, Your Honor.").

'the most efficient resolution of this contractual dispute would be a single action in which [contract parties] all are parties.'"[71]  And it is perhaps true that the most efficient resolution would be one global action, but Rule 19 asks whether the judgment would be *adequate*.  It does not necessarily follow that anything other than the most efficient resolution is inadequate.[72]  "Rule 19 does not apply merely because dispute resolution would be more efficient with [Clauss's] participation."[73]  And beyond their somewhat conclusory assertion, Plaintiffs had nothing to say on this factor.

The judgment would remain fully in effect as to the remaining Plaintiffs.  That lends some credence to the idea that the judgment would be adequate.  This third Rule 19(b) factor is one where the posture of the motion makes evaluating the adequacy of any judgment difficult.  In most cases, courts are considering whether dismissing a defendant will allow a plaintiff to make full recovery.  But here, the question is whether dismissing a plaintiff would allow for an adequate judgment absent that one individual.  "Certainly with respect to [all plaintiffs but Clauss], the court can resolve [their] claim in the present action and this factor weighs" in favor of dismissing Clauss.[74]

---

[71]  Doc. 162 at 12 (quoting *Rashid v. Kite*, 957 F. Supp. 70, 74 (E.D. Pa. 1997)).
[72]  Counsel for Plaintiffs acknowledged that the requirement of an "adequate" judgment is not the same thing as the "most efficient resolution." *See* Hr'g Tr. 46:10-19.
[73]  *Nanko Shipping, USA v. Alcoa, Inc.*, 850 F.3d 461, 464-65 (D.C. Cir. 2017).
[74]  *Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 321 (3d Cir. 2007).

And finally, the parties agree that Pennsylvania's savings statute would provide an adequate remedy if the action were dismissed.[75]  This factor therefore "weighs slightly in favor of dismissing this matter, but not unequivocally."[76]  This consideration is stronger when a Court might worry that dismissal would prevent a plaintiff from seeking recourse against a defendant in another forum.  But here, as much as all Plaintiffs would have a remedy in state court if the action is dismissed, so would Clauss himself if he is severed.  He will not be time-barred or otherwise prevented from asserting the same claim independently from the other Plaintiffs.  And in any event, the consideration of the adequate remedy in state court "is far outweighed by the unfairness [] and the harm to judicial economy resulting from dismissal."[77]  This is especially true, if, as Defendants suggest, Plaintiffs could simply refile the same lawsuit in this forum because they have maintained diversity of citizenship from Defendants.[78]

---

[75]  *See* 42 Pa. C.S.A. § 5103.

[76]  *Rashid*, 957 F. Supp. at 75.

[77]  *CP Sols. PTE, Ltd. v. Gen. Elec. Co.*, 553 F.3d 156, 161 (2d Cir. 2009).

[78]  Plaintiffs did not seem to dispute this point in briefing.  If all Plaintiffs are still currently diverse from the Defendants, the decision becomes even easier.  As the Third Circuit has noted, considerations of finality, efficiency, and judicial economy are "particularly relevant where . . . the contract at the heart of this litigation is between [now] diverse parties who could refile an identical suit in the same federal forum." *Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 421 (3d Cir. 2010).  And to the extent one could suggest that, in either event, a court will adjudicate one new lawsuit (and that therefore this Court should dismiss the case wholesale), it should be clear that from the perspective of conserving judicial resources, managing a case between one plaintiff and two defendants is much less onerous than managing a case between 117 plaintiffs and two defendants, even when the large group of plaintiffs is represented by the same attorneys.

In equity and good conscience, this matter should proceed on its appeals without Clauss. There appears to be almost no prejudice to any of the parties – other than Defendants, who have indicated their willingness to take on that risk – and "considerations of efficiency, fairness, and judicial economy weigh against a wholesale dismissal of the action at this stage."[79]

## III.    CONCLUSION

Plaintiffs' motion for relief from judgment is denied. Although this Court did not have subject-matter jurisdiction when the case began, I will exercise the Court's authority to dismiss Mr. Clauss from the case, thereby preserving diversity of citizenship and subject-matter jurisdiction.

An appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[79]   *Zambelli v. Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 420-21 (3d Cir. 2010).